SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiffs Emmanuel Cornet,*
*Justine De Caires, Grae Kindel, Alexis Camacho,*
*and Jessica Pan, on behalf of themselves*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TWITTER, INC.<br><br>                    Defendant. | Case No. 3:22-cv-06857<br><br>**PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER**<br><br><u>Hearing</u>:<br>Date:<br>Time:<br>Place:<br>Judge:    Hon. Sallie Kim<br><br>ACTION FILED: November 3, 2022 |

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan move this Court on an emergency basis for a protective order pursuant to Fed. R. Civ. P. 23(d), to prevent Defendant Twitter, Inc. from seeking releases from employees it is laying off without notifying them of the pendency of this lawsuit, the claims brought here on their behalf, and contact information for Plaintiffs' counsel.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, sworn declarations, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 5

III.    ARGUMENT ..................................................................................................... 7

        A.      Now That This Class Action has Been Filed, This Court Should Prohibit Twitter From Seeking Releases From Employees Without Their Knowledge of Their Rights and That This Case Has Been Filed on Their Behalf ............................................................................................ 7

        B.      The Court Should Also Enter an Order Invalidating Any Releases That Twitter May Obtain Before This Motion Is Heard ................................ 15

IV.     CONCLUSION ................................................................................................ 18

i

**TABLE OF AUTHORITIES**

**Cases**

Ali v. Sugarland Petroleum,
  2009 WL 5173508 (S.D. Tex. Dec. 22, 2009)................................................. 9

Am. Pipe & Constr. Co. v. Utah,
  414 U.S. 538 (1974)............................................................................... 4, 12

Austen v. Catterton Partners V, LP,
  831 F. Supp. 2d 559 (D. Conn. 2011) ...................................................... 12

Belt v. Emcare, Inc.,
  299 F. Supp. 2d 664 (E.D. Tex. 2003) ................................................. 12, 13

Billingsley v. Citi Trends, Inc.,
  560 F. App'x. 914 (11th Cir. 2014) ........................................................... 16

Brown v. Mustang Sally's Spirts & Grill, Inc.,
  2012 WL 4764585 (W.D.N.Y. Oct. 5, 2012) ............................................ 12

Burford v. Cargill, Inc.,
  2007 WL 81667 (W.D. La. Jan. 9, 2007) ............................................... 3, 13

Burrell v. Crown Cent. Petroleum, Inc.,
  176 F.R.D. 239 (E.D. Tex. 1997)............................................................... 10

Camp v. Alexander,
  300 F.R.D. 617 (N.D. Cal. 2014)........................................................... 5, 15

Cheverez v. Plains All American Pipeline, LP,
  2016 WL 861107 (C.D. Cal. March 3, 2016) ............................................ 16

Conde v. Open Door Marketing, LLC,
  2016 WL 1427641 (N.D. Cal. April 12, 2016)............................................. 8

County of Santa Clara v. Astra USA, Inc.,
  2010 WL 2724512 (N.D. Cal. July 8, 2010)........................................ passim

Davis v. Four Seasons Hotel Ltd.,
  2011 WL 4590393 (D. Haw. Sept. 30, 2011) .............................................. 8

Davis v. Novastar Mortg., Inc.,
  408 F. Supp. 2d 811 (W.D. Mo. 2005) ........................................................ 9

Dondore v. NGK Metals Corp.,
  152 F. Supp. 2d 662 (E.D. Pa. April 9, 2001) ................................. 4, 12, 13

Espinoza v. Galardi S. Enterprises, Inc.,
  2015 WL 9592535 (S.D. Fla. Dec. 31, 2015) ......................................... 3, 16

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Friedman v. Intervet Inc.,
    730 F. Supp. 2d 758 (N.D. Ohio 2010)...................................................................... 13

Gonzalez v. Preferred Freezer Servs. LBF, LLC,
    2012 WL 4466605 (C.D. Cal. Sept. 27, 2012) .............................................................. 4

Guifu Li v. A Perfect Day Fran., Inc.,
    270 F.R.D. 509 (N.D. Cal. 2010).................................................................... 2, 10, 18

Gulf Oil Co. v. Bernard,
    452 U.S. 89 (1981)........................................................................................................ 7

Gunderson v. Alta Devices, Inc.,
    2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ............................................................ 1

Haffer v. Temple Univ. of Commonwealth Sys. Of Higher Educ.,
    115 F.R.D. 506 (E.D. Pa. 1987).......................................................................... 11, 13

Hampton Hardware, Inc. v. Cotter & Co.,
    156 F.R.D. 630 (N.D. Tex. 1994)............................................................................... 11

Henry v. New Orleans Louisiana Saints L.L.C.,
    2016 WL 2901775 (E.D. La. May 18, 2016)................................................................ 8

Hernandez v. Immortal Rise, Inc.,
    2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ............................................................ 8

In re Currency Conversion Fee Antitrust Litig.,
    361 F. Supp. 2d 237 (S.D.N.Y. 2005)................................................................... 5, 15

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
    55 F.3d 768 (3d Cir. 1995)........................................................................................... 4

In re McKesson HBOC, Inc. Sec. Litig.,
    126 F. Supp. 2d 1239 (N.D. Cal. 2000) .................................................................. 9, 10

Janvey v. Alguire,
    647 F.3d 585 (5th Cir. 2011) ....................................................................................... 8

Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.,
    238 F. Supp. 2d 151 (D.D.C. 2002).......................................................................... 10

Kleiner v. First Nat. Bank of Atlanta,
    751 F.2d 1193 (11th Cir. 1985) ........................................................................ passim

Kutzman v. Derrel's Mini Storage, Inc.,
    2018 WL 6625791 (E.D. Cal. Dec. 18, 2018) ........................................................... 13

Lynch v. Tesla, Inc.,
    2022 WL 4295295 (W.D. Tex. Sept. 16, 2022)...................................................... passim

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Marsoft, Inc. v. United LNG, L.P.,
    2014 WL 1338707 (S.D. Tex. March 31, 2014).................................................. 8

North American Deer Registry, Inc. v. DNA Solutions, Inc.,
    2017 WL 1426753 (E.D. Tex. April 21, 2017).................................................. 8

O'Conner v. Agilant Sols., Inc.,
    2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) ................................................ 16

O'Connor v. Uber Technologies, Inc.,
    2013 WL 6407583 (N.D. Cal. Dec. 5, 2013) ........................................... 12, 14

O'Connor v. Uber Technologies, Inc.,
    2014 WL 1760314 (N.D. Cal. May 2, 2014) ................................................. 12

Ojeda-Sanchez v. Bland Farms,
    600 F. Supp. 2d 1373 (S.D. Ga. 2009).................................................... 9, 12

Ontiveros v. Safelite Fulfillment, Inc.,
    2017 WL 6043078 (C.D. Cal. Oct. 16, 2017)................................................ 16

Pacheco v. Aldeeb,
    127 F. Supp. 3d 694 (W.D. Tex. 2015)....................................................... 3

Patel v. 7-Eleven, Inc.,
    322 F. Supp. 3d 244 (D. Mass. July 20, 2018) ............................................. 5

Payne v. Travenol Labs., Inc.,
    673 F.2d 798 (5th Cir. 1982) ............................................................... 10

Potts v. Nashville Limo and Transport LLC,
    2016 WL 1622015 (M.D. Tenn. April 19, 2016)............................................ 11

Ralph Oldsmobile, Inc. v. Gen. Motors Corp.,
    2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001)............................................... 4

Romero v. La Revise Assocs., L.L.C.,
    968 F. Supp. 2d 639 (S.D.N.Y. 2013)....................................................... 8

Sealy v. Keiser Sch., Inc.,
    2011 WL 7641238 (S.D. Fla. Nov. 8, 2011)................................................. 8

Slavkov v. Fast Water Heater Partners I, LP,
    2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ........................................ 5, 13, 15

Spence v. Irving Holdings, Inc.,
    2010 WL 5609023 (N.D. Tex. Dec. 15, 2010) ............................................. 3

Sylvester v. Wintrust Fin. Corp.,
    2013 WL 5433593 (N.D. Ill. Sept. 30, 2013) .............................................. 8

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Van Horn v. Nationwide Prop. & Cas. Ins. Co.,
   2009 WL 773869 (N.D. Ohio Mar. 19, 2009) ............................................... 10

Villatoro v. Kim Son Restaurant, L.P.,
   286 F. Supp. 2d 807 (S.D. Tex. 2003) ............................................... 9

Wang v. Chinese Daily News, Inc.,
   236 F.R.D. 485 (C.D. Cal. 2006) ............................................... 17

Westerfield v. Quizno's Franchise Co., LLC,
   2007 WL 1062200 (E.D. Wis. April 6, 2007) ............................................... 13

Whittington v. Taco Bell of America, Inc.,
   2011 WL 1772401 (D. Col. May 10, 2011) ............................................... 9

Williams v. Sake Hibachi Sushi & Bar, Inc.,
   2018 WL 4539114 (N.D. Tex. Sept. 21, 2018) ............................................... 3, 4, 5

Woods v. Club Cabaret, Inc.,
   140 F. Supp. 3d 775 (C.D. Ill. 2015) ............................................... 8

Wu v. Pearson Educ. Inc.,
   2011 WL 2314778 (S.D.N.Y. June 7, 2011) ............................................... 5

**Statutes**

California WARN Act,
   Cal. Lab. Code § 1400 *et seq.* ............................................... 1

Fair Labor Standards Act,
   29 U.S.C. 216(b) ............................................... 11

Fed. R. Civ. P. 23(c)(2)(B) ............................................... 9

Fed. R. Civ. P. 23(d) ............................................... passim

Worker Adjustment and Retraining Notification Act,
   29 U.S.C. § 2101 *et seq.* (the "WARN Act") ............................................... 1, 8

**Other Authorities**

Ashley Cullins,
   Elon Musk's Mass Twitter Layoffs Spur Legal Headaches, THE HOLLYWOOD
   REPORTER (November 9, 2022),
   https://www.hollywoodreporter.com/business/business-news/elon-musk-twitter-
   layoffs-lawsuits-1235258453/ ............................................... 6

Ivan Metha,
   After laying off half of its staff, Twitter might be asking some employees to come
   back, TECHCRUNCH (November 7, 2022),
   https://techcrunch.com/2022/11/07/after-laying-off-half-of-its-staff-twitter-might-
   be-asking-some-employees-to-come-back/ ............................................... 11

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Josh Eidelson,
  Elon Musk broke the law by suddenly eliminating 3,700 jobs at Twitter without
  required notice, lawsuit claims, FORTUNE (November 4, 2022),
  https://fortune.com/2022/11/04/twitter-sued-over-musk-plan-eliminate-3700-jobs-
  60-day-notice-mass-cuts/ ................................................................................................... 6

Kurt Wagner and Edward Ludlow,
  Twitter Now Asks Some Fired Workers to Please Come Back, BLOOMBERG
  (November 6, 2022), https://www.bloomberg.com/news/articles/2022-11-
  06/twitter-now-asks-some-fired-workers-to-please-come-back ...................................... 12

Scott Gleeson,
  Twitter sued for mass layoffs with zero notice days after Elon Musk's takeover,
  USA TODAY (November 4, 2022),
  https://www.usatoday.com/story/tech/2022/11/04/elon-musk-twitter-sued-
  layoffs/8264964001/ ............................................................................................................ 6

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case is brought on behalf of thousands of Twitter employees who have been laid off in recent days, following the purchase of the company by multi-billionaire Elon Musk. Plaintiffs challenge the company's breach of contract with its workforce regarding benefits and severance, assert claims of promissory estoppel, and challenge the company's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), as well as the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (First Am. Compl. ¶ 1, Dkt. 6.)

As Plaintiffs have alleged, Elon Musk recently purchased Twitter and immediately began laying off half of its workforce. (First Am. Compl. ¶ 2, Dkt. 6.) Prior to Musk's purchase of the company, Twitter employees had been promised that, should layoffs occur after the sale, they would be entitled to the same severance and benefits that employees had previously received. (First Am. Compl. ¶ 4, Dkt. 6.) However, after Musk took control of the company, Twitter reneged on this promise. (First Am. Compl. ¶¶ 2-4, Dkt. 6.) Plaintiffs have also alleged that Twitter did not provide 60 days advance written notice to all employees who were laid off, in violation of the federal and California WARN Act. (First Am. Compl. ¶ 3, Dkt. 6.)[1]

Plaintiffs now bring this Emergency Motion, pursuant to Fed. R. Civ. P. 23(d), for a protective order to prevent Twitter from seeking releases from the employees it is laying off, without them knowing that these claims have been brought on their behalf. Twitter has informed employees that it will begin distributing severance agreements this week, in which Twitter will seek a release of claims.[2] Plaintiffs urge the Court to hear this motion promptly, as they are very

---

[1]      As a result, those employees are entitled to, as damages, the compensation that they would have received during the required 60 day notice period. See 29 U.S.C. § 2104(a); Cal. Lab. Code § 1402(a)(1); see also Gunderson v. Alta Devices, Inc., 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021) ("Under both the federal and California WARN Acts, Plaintiffs and the Class are entitled to up to sixty days of backpay plus certain other benefits if applicable.").

[2]      Twitter has apparently begun distributing separation agreements already. (De Caires Decl. ¶ 10, Ex. B; Pan Decl. ¶ 10, Ex. C.)

concerned that employees may sign away their rights asserted here, without knowing of their rights or that these claims have been brought on their behalf and that there is an avenue for them to pursue them.

This is not the first time that a company led by Elon Musk has engaged in this type of deceptive tactic. Earlier this year, another company he owns, Tesla, engaged in mass layoffs without providing WARN Act notices and quickly sought to obtain releases of all federal and California WARN Act claims for just one or two weeks of severance pay, despite the fact that the employees had a claim for 60 days pay. See Lynch v. Tesla, Inc., 2022 WL 4295295, at *1-4 (W.D. Tex. Sept. 16, 2022). In that case, the court granted a similar motion for protective order as Plaintiffs seek here, ruling that Tesla' conduct was "misleading because [the separation agreements] fail to inform potential class members of this lawsuit and the rights that they are potentially giving up under the WARN Act." Id. at *4.

This Court should likewise not allow Twitter to short-circuit the claims that have been filed in this case by seeking to collect releases of those claims from employees before they are litigated – and without employees having any reason to know that they have legal claims to higher severance than Twitter is offering and that these claims have already been filed on their behalf. If left unchecked, Twitter may succeed in cutting off the rights of thousands of potential class members, without them even knowing about this case and their rights.

As numerous courts have held, Rule 23(d) prohibits such unsupervised and deceptive communications with putative class members, where a defendant in a pending case attempts to obtain releases from class members that do not inform the class members of what rights they have that are being released or that signing the agreement could prevent them from participating in a pending class action. See, e.g., Guifu Li v. A Perfect Day Fran., Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010) (holding that a defendant engaged in impermissible coercive conduct by obtaining class opt-out forms from employees on an *ex parte* basis); County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512, at *5-6 (N.D. Cal. July 8, 2010) (holding that a defendant's

effort to obtain settlements from putative class members' on an *ex parte* basis for less than the damages at issue in the case and without informing the putative class members of the case was impermissible).[3]

In effect, Twitter's efforts to obtain releases from putative class members is akin to soliciting employees to opt out of a class before class notice has been disseminated, which is impermissible. See Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1202 (11th Cir. 1985) ("When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . . Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule."); see also Pacheco v. Aldeeb, 127 F. Supp. 3d 694, 699 (W.D. Tex. 2015) (sanctioning Defendant's *ex parte* communication with class members designed to discourage participation in a collective action lawsuit and "allow[ing] Plaintiffs to send the corrective notice...to all [] class members by U.S. mail. The corrective notice [was required to] be posted by Defendants at their places of business in a location visible to employees. Defendants [were also required to] bear the cost of sending the corrective notice, and [to] further pay Plaintiffs' reasonable attorneys' fees incurred in bringing th[e] Motion."). Courts have curtailed defendants' ability to engage in these types of coercive and misleading communications with putative class members for good reason. Not only do they disrupt the

---

[3]     These courts have generally required defendants to provide the employees notice of the case, explanation of the claims brought, and contact information for Plaintiffs' counsel. For more examples of such cases, see Burford v. Cargill, Inc., 2007 WL 81667, at *2 (W.D. La. Jan. 9, 2007) (holding that releases obtained by the defendant from putative class members on an *ex parte* basis "are abusive and threaten the proper functioning of the instant litigation"); Williams v. Sake Hibachi Sushi & Bar, Inc., 2018 WL 4539114, at *5 (N.D. Tex. Sept. 21, 2018) (ordering corrective notice to members of a putative collective action who signed waivers in response to Defendant's *ex parte* communication and permitting such individuals to challenge the agreements as voidable); Espinoza v. Galardi S. Enterprises, Inc., 2015 WL 9592535, at *3 (S.D. Fla. Dec. 31, 2015) (refusing to enforce arbitration agreements distributed during the pendency of a collective action lawsuit); Spence v. Irving Holdings, Inc., 2010 WL 5609023, at *1 (N.D. Tex. Dec. 15, 2010) (courts have balanced parties' First Amendment rights with a court's role in regulating communication with potential class members "both before and after a class [is] conditionally certified under the FLSA" and have often prohibited misleading communications).

proper function of the class action, but they also implicate ethical prohibitions on communicating with represented parties. See Dondore v. NGK Metals Corp., 152 F. Supp. 2d 662, 666 (E.D. Pa. April 9, 2001).[4]

As set forth below, Twitter's anticipated communications with putative class members, through its separation agreement, are misleading if they do not inform the class members of the pending litigation and the rights that they are potentially giving up. See Williams, 2018 WL 4539114, at *3 (finding "that the settlement agreements neglect to mention the instant case by name or to give the putative class members any other information that would allow them to make an informed decision to waive their rights. Absent evidence to the contrary, these failures, in addition to the failure to provide sufficient information regarding damages, lead to the conclusion that the settlement agreements constitute misleading communications."); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (finding a waiver misleading where it did not include, *inter alia*, any information regarding the class action, the complaint, or plaintiff's counsel's contact information); County of Santa Clara, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (explaining that communication was misleading for various reasons, including failure to inform potential class members about actual effects of damages methodology); Ralph Oldsmobile, Inc. v. Gen. Motors Corp., 2001 WL 1035132, at *5 (S.D.N.Y. Sept. 7, 2001) (deeming proposed release notice inadequate where it did not state, *inter alia*, who may be in the class, whether a class was certified, information about the status of the action, or information about how a potential class member might obtain more details about the case or contact plaintiff's counsel).

Further, the communication is coercive because of the employment relationship between

---

[4]    As one court explained, "a class action is a 'truly representative suit,'" and "'class action representation' belongs to all parties, even 'asserted class members who were unaware of proceedings brought in their interest." Dondore, 152 F. Supp. 2d at 665 (quoting citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 551-52 (1974)). "Furthermore, putative class members stand at least in a fiduciary relationship with class counsel." Id. (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995)).

Twitter and its former employees. Employees who have lost their jobs are typically eager to get whatever additional pay that they can get and have no reason to know that they are entitled to more due to Twitter's alleged breaches of contract, broken promises that its employees relied on to their detriment, and violations of the WARN Act. In short, it is clear that Twitter hopes to buy off these class members' claims for less than they may be entitled (without them even knowing about this case or the claims that have been asserted on their behalf) outside the supervision of the Court. See Williams, 2018 WL 4539114, at *4 (quoting Wu v. Pearson Educ. Inc., 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011) ("[A] communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation.").

Therefore, Plaintiffs respectfully request the Court act promptly to prohibit such conduct. Plaintiffs urge the Court to enter a protective order prohibiting Twitter from seeking separation agreements without notifying employees of their rights and the pendency of this case, as well as invalidate any releases that Twitter may succeed in obtaining before this motion may be heard and decided. See Williams, 2018 WL 4539114, at *5 (ordering corrective notice to putative collective members who signed waivers in response to Defendant's *ex parte* communication and permitting such individuals to challenge the agreements as voidable); Slavkov v. Fast Water Heater Partners I, LP, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015); Camp v. Alexander, 300 F.R.D. 617, 625 (N.D. Cal. 2014); In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); cf. Patel v. 7-Eleven, Inc., 322 F. Supp. 3d 244, 253 (D. Mass. July 20, 2018) (noting that if plaintiffs ultimately prove their claims, then purported releases that the employer collected from putative class members could be void).

## II.   FACTUAL BACKGROUND

Plaintiffs filed this class action lawsuit on November 3, 2022, asserting that Twitter had violated the federal and California WARN Acts with respect to current and anticipated imminent

mass layoffs. (Compl., Dkt. 1.)[5] On November 8, 2022, Plaintiffs amended their Complaint to add claims for breach of contract and promissory estoppel. (First Am. Compl., Dkt. 6.)

In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing Twitter. In response to employee concerns regarding mass layoffs, and to prevent the employees from leaving Twitter to work at other companies, Twitter made various promises to its employees, which was communicated to them both orally and in writing by Twitter's management, including at periodic "all-hands" meetings. (Cornet Decl. ¶¶ 6-7, Ex. A; De Caires Decl. ¶¶ 6-7, Ex. B; Pan Decl. ¶¶ 6-7, Ex. C.) One promise Twitter made was that if there were layoffs, employees would receive severance and benefits at least as favorable as Twitter had previously provided. (Cornet Decl. ¶ 7, Ex. A; De Caires Decl. ¶ 7, Ex. B; Pan Decl. ¶ 7, Ex. C.) This promise was also included as a term of Twitter's merger agreement with Musk. (Merger Agreement, Section 6.9(a) at p. A-43-44, Ex. D.)

Plaintiffs allege that, following Musk's purchase of the company, in late October and early November 2022, Twitter initiated mass layoffs across the country. (First Am. Compl., Dkt. 6.) Twitter did not give 60 days advance written notice to all employees who were being laid off, as required by the federal and California WARN Acts, or pay in lieu of the notice. (Cornet Decl. ¶ 9, Ex. A.)

For other employees, Twitter informed them that they would be laid off in 60 days (and would be in "non-working status" until that time) and that they would receive one month of

---

[5]    The Complaint in this matter was filed on November 3, 2022, and the Amended Complaint was filed on November 8, 2022. Even prior to the lawsuit being formally served, it is clear that Twitter received notice of the lawsuit almost immediately after it was filed, given the significant press coverage of the case. See, e.g., Josh Eidelson, Elon Musk broke the law by suddenly eliminating 3,700 jobs at Twitter without required notice, lawsuit claims, FORTUNE (November 4, 2022), https://fortune.com/2022/11/04/twitter-sued-over-musk-plan-eliminate-3700-jobs-60-day-notice-mass-cuts/; Scott Gleeson, Twitter sued for mass layoffs with zero notice days after Elon Musk's takeover, USA TODAY (November 4, 2022), https://www.usatoday.com/story/tech/2022/11/04/elon-musk-twitter-sued-layoffs/8264964001/; Ashley Cullins, Elon Musk's Mass Twitter Layoffs Spur Legal Headaches, THE HOLLYWOOD REPORTER (November 9, 2022), https://www.hollywoodreporter.com/business/business-news/elon-musk-twitter-layoffs-lawsuits-1235258453/.

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

severance pay after their layoff. (De Caires Decl. ¶¶ 9-10, Ex. B; Pan Decl. ¶¶ 9-10, Ex. C.) In order to receive that one month of severance pay, they would need to sign a release. (FAQ, attached as Exhibit 2 to De Caires Decl., ¶¶ 9-10, Ex. B; Exhibit 2 to Pan Decl., ¶¶ 9-10, Ex. C.)

However, Twitter's previous policy had provided for more favorable severance pay and benefits for laid off employees, namely at least two months' pay (or more, depending on the employee's length of service), bonus plan compensation, cash value of equity that would have vested within three months from the separation date, and a cash contribution for health care continuation. (Twitter acquisition: Tweep FAQ, Updates as of October 24, 2022, attached as Exhibit 1 to De Caires Decl., Ex. B; Exhibit 1 to Pan Decl., Ex. C.)

Plaintiffs have alleged that Twitter's failure to provide them with this more favorable severance pay and benefits constitutes breach of contract, as well as breach of contract based upon a third party beneficiary theory (due to the promise being contained in Musk's purchase agreement), and also that employees had reasonably relied to their detriment on Twitter's earlier promise regarding severance pay and benefits. They alleged that, based on that promise, Twitter had persuaded employees not to seek or obtain employment elsewhere during the uncertain time period prior to Musk's purchase of the company. (Cornet Decl. ¶ 8, Ex. A; De Caires Decl. ¶ 8, Ex. B; Pan Decl. ¶ 8, Ex. C.)

## III.   ARGUMENT

### A.   Now That This Class Action has Been Filed, This Court Should Prohibit Twitter From Seeking Releases From Employees Without Their Knowledge of Their Rights and That This Case Has Been Filed on Their Behalf

Pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, this Court has broad authority to "require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members" and "impose conditions on the representative parties or intervenors." Fed. R. Civ. P. 23(d). In Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981), the Supreme Court recognized a court's broad discretion to manage communications in class actions. Id. at 100-01 ("Because of the potential for abuse, a district court has both the duty and the broad

7

authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.").

In nearly identical circumstances in a recent case against Elon Musk's other company – Tesla – a court issued a protective order just like the one Plaintiffs seek here. See Lynch v. Tesla, Inc., 2022 WL 4295295, at *1-4 (W.D. Tex. Sept. 16, 2022). There, Tesla engaged in mass layoffs but without, Plaintiffs alleged, providing the 60 days notice or pay required by the federal or California WARN Acts. Tesla then sought to obtain releases of claims from employees in exchange for payments less than the plaintiffs in the case alleged they were owed. See id. The court ordered that the employees should receive notice of the pending litigation, so that they would not be put in the position of being asked to sign away their rights when a class action had been filed on their behalf without them having reason to know they had legal claims and a viable way to pursue them. See id. at *4. The court held that Tesla's conduct was "misleading because [the separation agreements] fail to inform potential class members of this lawsuit and the rights that they are potentially giving up under the WARN Act." Id.[6]

_____

[6] Importantly, the court in Tesla ordered this notice be issued regardless of the fact that the employer contended that all or most of the employees had agreed to individual arbitration and thus would not ultimately be able to participate in a class action. See Tesla, 2022 WL 4295295, at *2. The court agreed with the plaintiffs that the request for protective order should be decided early in the case, prior to considering any motion to compel arbitration. See id. This conclusion followed a long line of cases that likewise determined that such issues should be addressed before arbitration-related issues. See Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011) ("the district court merely sought to preserve the status quo *before* deciding the motion to compel arbitration, and by doing so they sought to preserve the meaningfulness of any arbitration that might take place") (emphasis in original); North American Deer Registry, Inc. v. DNA Solutions, Inc., 2017 WL 1426753, at *2 (E.D. Tex. April 21, 2017) ("A district court can grant preliminary relief before deciding whether to compel arbitration."); Henry v. New Orleans Louisiana Saints L.L.C., 2016 WL 2901775, at *7 (E.D. La. May 18, 2016); Marsoft, Inc. v. United LNG, L.P., 2014 WL 1338707, at *11 (S.D. Tex. March 31, 2014) (granting preliminary relief "before [the court] considers Defendants' motion to compel arbitration"). This approach follows numerous cases that have held that certain class issues should be addressed prior to motions to compel arbitration. See, e.g., Conde v. Open Door Marketing, LLC, 2016 WL 1427641, *10 (N.D. Cal. April 12, 2016); Woods v. Club Cabaret, Inc., 140 F. Supp. 3d 775, 782-83 (C.D. Ill. 2015); Sylvester v. Wintrust Fin. Corp., 2013 WL 5433593, *9 (N.D. Ill. Sept. 30, 2013); Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013); Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, *5 (E.D.N.Y. Sept. 24, 2012); Sealy v. Keiser Sch., Inc., 2011 WL 7641238, *3 (S.D. Fla. Nov. 8, 2011); Davis v. Four Seasons Hotel Ltd., 2011 WL 4590393, *4 (D. Haw. Sept. 30, 2011); Whittington v. Taco Bell of America, Inc., 2011 WL 1772401 (D. Col.

The decision in the <u>Tesla</u> case follows a long line of precedent in which courts have ordered similar relief. <u>See</u> cases cited <u>supra</u> at pp. 2-3. Courts generally require that the party moving for a protective order under Rule 23(d) must make two showings: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper function of the litigation." <u>Ojeda-Sanchez v. Bland Farms</u>, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009). Both factors are met here. Twitter has already informed employees that it will begin sending out severance agreements this week in which employees will be asked to release their claims (and apparently has already started distributing the agreements) – despite Twitter having announced that the severance agreements will provide for less pay and benefits that Plaintiffs here contend the employees are owed. This form of communication is abusive and threatens the function of this litigation, since employees should not be put in the position of having to make a decision regarding whether to waive their rights, without knowing that this case has been filed on their behalf and that they have an avenue for pursuing their claims.

The Court's discretion to enter appropriate orders under Rule 23(d) facilitates the Court's obligation to "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The rule contemplates "that putative class members will make an informed decision about their decision to opt out of a class," <u>In re McKesson HBOC, Inc. Sec. Litig.</u>, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000), and thus imposes a duty

---

May 10, 2011); <u>Ali v. Sugarland Petroleum</u>, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009); <u>Davis v. Novastar Mortg., Inc.</u>, 408 F. Supp. 2d 811 (W.D. Mo. 2005); <u>Villatoro v. Kim Son Restaurant, L.P.</u>, 286 F. Supp. 2d 807 (S.D. Tex. 2003).

Here, Plaintiffs expect that Twitter may raise a similar argument and claim that all or most employees are bound by an arbitration agreement. As in <u>Tesla</u>, Plaintiffs will dispute that they should be bound to arbitrate their claims. In <u>Tesla</u>, after a magistrate judge entered the protective order and ordered that notice be issued, an order was later entered compelling the employees to arbitrate their claims, and the case was dismissed before the notice could be issued. Plaintiffs in that case (represented by the undersigned counsel) intend to appeal that dismissal. In any event, in this case, should the Court ultimately compel arbitration, Plaintiffs will argue that notice should issue before arbitration proceedings begin and that this court case may be stayed pending arbitration (unlike the court in <u>Tesla</u>, which dismissed the case).

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

upon the court "to ensure that all putative class members have a genuine choice" about whether or not to participate in an action. Id.; see also Van Horn v. Nationwide Prop. & Cas. Ins. Co., 2009 WL 773869, at *4 (N.D. Ohio Mar. 19, 2009) ("class members need to be able to make an informed decision on participation"); see generally Payne v. Travenol Labs., Inc., 673 F.2d 798, 841 (5th Cir. 1982) (noting the "trial court's affirmative duty as monitor and guardian for the interests of absent class members"). Seeking a release of claims from putative class members is no different from an employer soliciting employees to opt out of a class action. It is obvious that "there are a number of factors that class members are entitled to know before deciding whether or not to opt out of any class." In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d at 1243-44. As courts have recognized, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." Kleiner, 751 F.2d at 1203.

Courts that have ordered protective orders in similar circumstances have recognized that their authority to regulate communications under Rule 23(d) applies to putative class actions where a class has not yet been certified. For example, in Guifu Li, the court limited the defendant's communications with class members prior to class certification, noting that "the underlying rationale . . . does not depend on the certification of the class but instead on the inherent undermining of the class action process when opt-outs are solicited *ex parte*." Guifu Li, 270 F.R.D. at 518; see also County of Santa Clara, 2010 WL 2724512, at *5-6 (invalidating releases obtained through misleading *ex parte* communications with putative class members prior to class certification); Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23(d) provides authority for court to regulate communications between a party and class members, even before a class has been certified); Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239, 243 (E.D. Tex. 1997) (recognizing that Rule 23 permits a court to limit contact between defendants and a not yet certified class); Hampton Hardware, Inc.

v. Cotter & Co., 156 F.R.D. 630, 634 (N.D. Tex. 1994) (noting that"the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class"); Haffer v. Temple Univ. of Commonwealth Sys. Of Higher Educ., 115 F.R.D. 506, 512 (E.D. Pa. 1987) (same).

Here, the Court should exercise its authority to prohibit Twitter from seeking releases from the employees it is laying off, where it is offering less severance than Plaintiffs claim that the employees are entitled to, and where the employees have no reason to know yet of their rights or that this case has been filed on their behalf. Twitter's conduct presents the very real potential of depriving putative class members of their opportunity to participate in this case or otherwise vindicate their claims.[7] The dissemination of Twitter's separation agreement containing the release will, without a doubt, reduce the efficacy of Rule 23 by preventing the ability of class members to participate in litigation brought on their behalf and limiting Twitter's liability without court oversight. As such, this Court has the authority to act to prevent Twitter's contact with class members from impinging on their rights.

The need to protect these employees' ability to pursue these claims and participate in this case is particularly acute, because the release will be presented in an inherently misleading and coercive context.[8] Twitter's notice to employees regarding their layoffs does not inform them of

---

[7]      In an analogous situation in a collective action under the Fair Labor Standards Act, 29 U.S.C. 216(b), the court in Potts v. Nashville Limo and Transport LLC, 2016 WL 1622015, at *15 (M.D. Tenn. April 19, 2016), prohibited further communication by defendant with opt-in plaintiffs where defendant attempted to enter into settlement agreements without providing enough information for the opt-in plaintiffs to evaluate their claims.

[8]      That these releases would be sought in the context of an employer-employee raises intrinsic concerns about coercion. Employees who have just been notified that they are losing their jobs will be particularly anxious to secure compensation quickly. Further, some employees may sign this agreement in the hopes that they could later get their job back with Twitter, as the company has reportedly been calling some of the laid off employees back to work. Ivan Metha, After laying off half of its staff, Twitter might be asking some employees to come back, TECHCRUNCH (November 7, 2022), https://techcrunch.com/2022/11/07/after-laying-off-half-of-its-staff-twitter-might-be-asking-some-employees-to-come-back/; Kurt Wagner and Edward Ludlow, Twitter Now Asks Some Fired Workers to Please Come Back, BLOOMBERG (November

---

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the pendency of this case. Absent court intervention, Plaintiffs do not expect Twitter to inform them of this case when they are sent the severance agreements. In another similar circumstance, a court in this district entered a protective order requiring a defendant to provide corrective notice to putative class members. See O'Connor v. Uber Technologies, Inc., 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) ("Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit.") (collecting cases).[9]

These types of communications also implicate ethical rules prohibiting communication with represented parties. For example, one court explained that "[t]he 'truly representative' nature of a class action affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct." Dondore, 152 F. Supp. 2d at 666 (citing Am. Pipe & Constr. Co., 414 U.S. at 551). Further:

> As a practical matter, a court cannot decide the issue of class certification immediately upon the filing of the complaint. Discovery is often required and the preparation and study of briefs is necessary. Thus, certain benefits must be afforded the putative class members in the interim. As the tolling of limitations is needed to further the salutary purposes of class actions, restraints are likewise needed against communications with putative class members until the issue of class certification can be determined.

---

6, 2022), https://www.bloomberg.com/news/articles/2022-11-06/twitter-now-asks-some-fired-workers-to-please-come-back. Courts have recognized the real concerns of coercion in cases where employees are in, or may have hopes of returning to, an ongoing business relationship with the employer. See Ojeda-Sanchez, 600 F. Supp. at 1379-80 ("[W]here the . . . class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.") (quoting Belt, 299 F. Supp. at 688); see also Brown v. Mustang Sally's Spirts & Grill, Inc., 2012 WL 4764585, *6 (W.D.N.Y. Oct. 5, 2012); Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559, 568 (D. Conn. 2011) ("When a defendant is in an ongoing, current business relationship with members of a putative class, for example an employment relationship, it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims.").

[9]      As in the Tesla case cited above, that protective order requiring notice was issued at the outset of the O'Connor case, notwithstanding the fact that the defendant Uber contended that most putative class members had signed arbitration agreements. See O'Connor v. Uber Technologies, Inc., 2013 WL 6407583, at *2-3 (N.D. Cal. Dec. 5, 2013). The court addressed the protective order request before addressing the enforceability of those arbitration agreements. See id.

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Id.; see also Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667-70 (E.D. Tex. 2003) (sanctioning and enjoining the employer from communicating *ex parte* with potential class action members because the employer intentionally attempted to subvert the court's role in a FLSA collective action by unilaterally sending a misleading and coercive letter to potential plaintiffs that encouraged those persons not to join the case); Haffer, 115 F.R.D. at 512 (holding pre-certification communications by defense counsel urging potential class members not to meet with class counsel violated Model Code DR 7-104).

Courts frequently enter protective orders where defendants have sought to obtain releases that omit essential information regarding the claims and putative class actions at issue, because without this information, the defendants' communications are viewed as misleading and therefore abusive. See Tesla, 2022 WL 4295295, at *4; County of Santa Clara, 2010 WL 2724512 at *3-4; Kutzman v. Derrel's Mini Storage, Inc., 2018 WL 6625791, at *8 (E.D. Cal. Dec. 18, 2018) ("[T]he Court cannot countenance Defense counsel's actions in attempting to mislead and coerce Defendant's current and former employees into settling prior to certification, possibly adverse to their interests."); Slavkov, 2015 WL 6674575, at *2 ("courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action."); Friedman v. Intervet Inc., 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) ("A defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be 'misleading.'") (emphasis added); Westerfield v. Quizno's Franchise Co., LLC, 2007 WL 1062200, at *3 (E.D. Wis. April 6, 2007) ("A risk exists, then, that franchisees might sign the releases without knowing the implications vis-à-vis rights they might assert in the instant action."); Burford, 2007 WL 81667, at *2 ("[T]he Court finds that the use of the general receipt and release which is being used by the Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law.").

The circumstances here also closely resemble those in O'Connor v. Uber Technologies, Inc., 2013 WL 6407583, at *3-7 (N.D. Cal. Dec. 6, 2013). In O'Connor, following the filing of a class action alleging that Uber violated state wage and hour laws with respect to its drivers, Uber required its drivers to sign a new software agreement to continue using the Uber app – this new agreement included an arbitration clause that restricted their rights. See id. at *1-2. The court observed that "[h]ere, the risk of interfering with the pending class action and the need for a limitation on communication with the class that adversely affects their rights is palpable," because "[t]he arbitration provision at issue includes a class action waiver, purporting to contractually bar Uber drivers from participating and benefiting from any class actions." Id. at *6.

Here, Twitter will soon begin soliciting its employees to sign releases; it is clear that, absent a requirement that Twitter inform the employees about this case, those solicitations will be through misleading and coercive means. By presenting employees who are facing layoffs with a "separation agreement" that does not give or provide employees with any information about this lawsuit or their rights under the law, these employees, who are now (or will shortly be) out of work, also have great incentive to maintain a good relationship with Twitter so that they may be hired to work in other Twitter divisions or rehired to their current positions in the future. Thus, they face great pressure to sign the releases and lack the information to understand that they would be waiving their claims in this case. Furthermore, if Twitter is permitted to seek these releases without informing employees of this case, that may give it the ability to continue violating the law without facing any consequences for doing so. The Court should not permit Twitter to engage in this conduct.[10]

---

[10]     Plaintiffs urge that, in addition to being ordered to give employees notice of this lawsuit, Twitter should also be prohibited from engaging in other communications with putative class members that may otherwise undermine their rights in this lawsuit.

### B.   The Court Should Also Enter an Order Invalidating Any Releases That Twitter May Obtain Before This Motion Is Heard

As stated above, Rule 23(d) gives the Court broad authority to issue orders and "impose conditions on the representative parties" to protect class members and fairly conduct the action at any stage on the litigation. Courts applying this standard have found that *ex parte* communications soliciting releases or discouraging participation in a case undermine the purposes of Rule 23 and require curative action by the court. This action includes the power to strike any releases or exclusion agreements that result from impermissible communications. See, e.g., In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d at 252 (refusing to enforce arbitration agreements that would prevent putative class members from participating in case); Slavkov, 2015 WL 6674575 at *2 ("A curative notice shall also be sent to all recipients of the Defendants' communications, notifying them that the settlement agreements are invalid."); Camp v. Alexander, 300 F.R.D. at 625 (ordering opt-out declarations invalid and requiring corrective notice in the form prescribed by the court).

Plaintiffs have brought this motion on an emergency basis. They recognize, however, that it may not be practical for this Court to rule on this motion prior to Twitter obtaining releases from employees, since Twitter has stated that it will begin distributing those agreements this week (and apparently has already begin distributing agreements). Thus, Plaintiffs request that the Court further order that any releases obtained prior to this motion being heard and decided be declared invalid.[11]

Other courts have issued similar orders. For example, the Eleventh Circuit upheld the district court's invalidation of opt-out forms obtained through *ex parte* telephone calls to a defendant bank's customers in Kleiner, 751 F.2d at 1202-03. The court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to

---

[11]   Plaintiffs nevertheless urge this Court to hear the motion as soon as practicable. Should releases be obtained, it is harder to unwind them than preventing them from being signed in the first place. And even should this Court agree with the argument Plaintiffs have set forth here, there is the risk that an appellate court may not agree with invalidating the releases.

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

diminish the size of the class and thus the range of potential liability by soliciting exclusion requests ... [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." Id. at 1202-03; see also Ontiveros v. Safelite Fulfillment, Inc., 2017 WL 6043078, at *4 (C.D. Cal. Oct. 16, 2017) (invalidating releases that were intended to extinguish the claims at issue in the case because the releases did not include sufficient information about the case, and ordering defendant to send a curative notice); Cheverez v. Plains All American Pipeline, LP, 2016 WL 861107, at *6 (C.D. Cal. March 3, 2016) (because "Defendants' misleading actions clearly frustrate the purpose of Rule 23," the court invalidated the releases "to the extent they purport to immunize Defendants from paying full compensation to injured class members" and ordering defendants to provide "curative notice informing claimants of their right to participate in the litigation).[12]

Similarly, in a consumer class action, defendants sent letters and refunds to customers, including many putative class members, and characterized the payments as "accord and satisfactions" of claims related to the pending class claims. County of Santa Clara, 2010 WL 2724512, at *1. The court invalidated the releases. Id. at *6. Even though the letters were found to contain no actual misstatements, the court found them to be "inadequate to inform the putative class" because the letter omitted a summary of the plaintiffs' complaints and did not provide "an explanation of the claims of the plaintiffs, and the plaintiffs' counsel's contact information, or the current status of the case." Id. at *4. That decision emphasized the fact that "[t]he putative class members can be misled through omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." 2010 WL

---

[12]     Analogously, in Billingsley v. Citi Trends, Inc., 560 F. App'x. 914, 919, 924 (11th Cir. 2014) (unpublished), the court refused to enforce arbitration agreements that were obtained prior to the issuance of notice and would have prevented employees from participating in a collective action. See also O'Conner v. Agilent Sols., Inc., 2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) (finding arbitration agreements unenforceable where defendant circulated the agreements to putative collective members during the pendency of plaintiffs' conditional certification motion); Espinoza, 2015 WL 9592535, at *3 (refusing to enforce arbitration agreements that were distributed during the pendency of an FLSA collective action that would have prevented workers from pursuing their claims in the case).

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

2724512, *3. To avoid being misleading, the defendant cannot "conceal[] material information," and the defendant was "required to provide enough information so that the recipients would not be misled about the strength or extent of the claims and the purpose of Rule 23 was not frustrated." Id. at *4. The court further explained that "at a minimum" settlement offers in this context "should have explained the specific claims that plaintiffs allege against [the defendant], precisely how [the settlement offer amounts] were calculated, and how closely the new calculations aligned with plaintiffs' allegations." Id.

Here, striking or voiding the releases that Twitter may obtain prior to this motion being heard and decided is appropriate, particularly in the employment class action context, where the employer—Twitter—solicits and continues to solicit a release of claims during a pending class action. As the Eleventh Circuit observed, "[u]nsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of susceptible individuals on the other," Kleiner, 751 F.2d at 1206. Again, this is "especially true when the parties are engaged in an ongoing employer-employee relationship," Wang v. Chinese Daily News, Inc., 236 F.R.D. 485, 490 (C.D. Cal. 2006), and it has been widely reported that Twitter is now calling back to work some employees who had been laid off. See note 10.

Given the facts here – a release offered in exchange for one month's severance, despite the fact that the plaintiffs in this case contend that Twitter employees are owed more than that -- the Court's intervention is necessary to protect not only the claims of the proposed class members, but also the propriety and fairness of the class action proceeding. Therefore, in addition to granting a protective order prohibiting Twitter or its counsel from seeking releases from its employees it is laying off, the Court should strike any alleged releases that may be obtained since this case was filed and before this motion is heard and decided. The Court's authority includes the power to issue an order ameliorating the effect of past misleading, coercive communications between Twitter and the proposed class by striking the releases. See

Guifu Li, 270 F.R.D. at 517-19 (refusing to give effect to "opt-out" forms obtained by employer).

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter a protective order barring Twitter from seeking separation agreements from employees it is laying off without giving them sufficient notice of this action and ample opportunity to learn of their claims and pursue them. Employees should not be put in the position of unwittingly releasing claims that have already been filed on their behalf. The Court should also prohibit Twitter from engaging in other communications with employees that may undermine their rights in this case, and it should invalidate any releases that Twitter may obtain from putative class members prior to this motion being heard and decided.

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,

By their attorneys,

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

Dated:          November 9, 2022

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document will be served on Defendant Twitter, Inc., along with the First Amended Complaint in this matter by process server.

<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan

PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER