MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001

Attorneys for Defendant
TWITTER, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant. | Case No. 3:22-cv-06857-JD<br><br>**DEFENDANT TWITTER, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**<br><br>Date:   December 8, 2022<br>Time:   3 p.m.<br>Judge:   Hon. James Donato |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Plaintiffs Each Signed and Agreed to Be Bound by Twitter's Dispute Resolution Agreement............................................................................................ 2

    B. On November 4, 2022, Twitter Notified Impacted Employees of a Reduction in Force in Compliance with the Requirements of the federal and California WARN Acts. ................................................................................ 3

    C. Plaintiffs File a "Preemptive" Complaint Asserting Legally and Factually Baseless Claims under the federal and California WARN Acts. ........................... 4

    D. Plaintiffs Amend Their Complaint to Add Meritless Breach of Contract and Promissory Estoppel Claims and File the Instant "Emergency" Motion. ............... 5

III. ARGUMENT ................................................................................................................... 6

    A. The Court Should Deny Plaintiffs' Motion Because Plaintiffs Signed Binding Arbitration Agreements with Class Waivers............................................. 6

        1. Plaintiffs Lack Standing to Seek Relief on Behalf of any Putative Class ............................................................................................................ 8

        2. The Purported Rule 23(d) Rights of the Putative Class Are Illusory.......... 8

        3. Granting Relief under Rule 23(d) Before Deciding Twitter's Motion to Compel Individual Arbitration Would be Improper and Unprecedented............................................................................................ 9

    B. Granting Plaintiffs' Requested Relief Under Rule 23(d) Would Unfairly Undermine Potential Class Members' Interests and Lead to Confusion .............. 11

    C. The Court Should Deny Plaintiffs' Motion Because Any Such Notice Will Result in Misleading Employees.......................................................................... 14

- i -

MORGAN, LEWIS &
BOCKIUS UK LLP
ATTORNEYS AT LAW
LONDON

DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF
THE DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
   No: 17-cv-2366-BAS, 2022 WL 686963 (S.D. Cal. Mar. 8, 2022) .......................................... 9

*In re Blackbaud, Inc.*,
   No. 3:20-MN-2972-JMC, 2022 WL 1137885 (D. S.C. April 18, 2022) (Childs, J.) .................................................................................................................................. 13

*County of Santa Clara v. Astra USA, Inc.*,
   No. C 05-3740-WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ...................................... 14

*Crispo v. Musk*,
   CA No. 2022-0666-KSJM, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022) .............................. 13

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................................ 10

*Droesch v. Wells Fargo Bank, N.A.*,
   No. 20-cv-6751-JSC, 2021 WL 2805604 (N.D. Cal. July 6, 2021) ........................................ 12

*Edwards v. Chartwell Staffing Servs., Inc.*,
   No. CV 16-9187 PSG (KSX), 2017 WL 10574360 (C.D. Cal. May 30, 2017) ....................... 8

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ............................................................................................................ 10

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) .................................................................................................................... 8

*Guifu Li v. A Perfect Day Fran., Inc.*,
   270 F.R.D. 509 (N.D. Cal. 2010) ............................................................................................ 14

*Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*,
   304 F.3d 476 (5th Cir. 2002) ................................................................................................... 10

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ................................................................................................... 9

*Hoffman LaRoche v. Sperling*,
   493 U.S. 165 (1989) ................................................................................................................ 15

*Holman v. Bath & Body Works, LLC*,
   No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021) ....................... 8

*Hughes v. S.A.W. Entertainment, LTD*,
    No. 16-cv-03371-LB, 2017 WL 6450485 (N.D. Cal. Dec. 18, 2017) ............................ 7, 8, 11

*Janvey v. Alguire*,
    647 F.2d 585 (5th Cir. 2011) .................................................................................................. 11

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) .................................................................................................. 11

*Lynch v. Tesla, Inc.*,
    No. 1:22-cv-597, 2022 WL 4295295 (W.D. Tex. Sept. 16, 2022) ..................................... 1, 10

*Marian Bank v. Elec. Payment Servs., Inc.*,
    No. 95-614-SLR, 1999 WL 151872 (D. Del. Mar. 12, 1999) ................................................ 15

*Marino v. CACAFE, Inc.*,
    No. 16-cv-6291, 2017 WL 1540717 (N.D. Cal. April 28, 2017) ........................................... 14

*Marsoft, Inc. v. United LNG, L.P.*,
    2014 WL 1338707 (S.D. Tex. Mar. 31, 2014) ....................................................................... 11

*Mish v. TForce Freight, Inc.*,
    No. 21-CV-4094-EMC, 2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ................................... 12

*O'Connor v. Uber Technologies, Inc.*,
    904 F.3d 1087 (9th Cir. 2018) .................................................................................................. 9

*Pan. Am. World Airways, Inc. v. U.S. Dist. Ct. for Central District of Cal.*,
    523 F.2d 1073 (9th Cir. 1975) ................................................................................................ 15

*Retiree Support Group of Contra Costa County v. Contra Costa County*,
    2016 WL 4080294 (N.D. Cal. July 29, 2016) .......................................................................... 9

*Sandbergen v. Ace Am. Ins. Co.*,
    No. 18-cv-4567-SK, 2019 WL 13203944 (N.D. Cal. June 17, 2019) .................................... 11

*Sateriale v. RJ Reynolds Tobacco, Co.*,
    No. 2:09-cv-8394, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) .......................................... 13

**Statutes**

29 U.S.C. § 2101(a)(5), (6) ............................................................................................................ 4

Cal. Labor Code § 1400(c) ........................................................................................................ 4, 5

California WARN Act ............................................................................................................. 4, 13

California Worker Adjustment and Retraining Notification Act .................................................. 1

FAA ..................................................................................................................................... 7, 8, 10

Fair Labor Standards Act ................................................................................................... 7

Federal Arbitration Act ...................................................................................................... 3

Plaintiffs' WARN Act ...................................................................................................... 12

WARN Act .......................................................................................................................... 4

WARN Act and California WARN Act ............................................................................ 6

**Other Authorities**

Rule 12(b)(6) ..................................................................................................................... 12

Rule 23 ..................................................................................................................... 7, 9, 15

Rule 23(a) .......................................................................................................................... 12

Rule 23(b) .......................................................................................................................... 12

Rule 23(d)(2) ..................................................................................................................... 15

## I. INTRODUCTION

As set forth in Twitter's pending motion to compel arbitration, Plaintiffs each signed binding and enforceable arbitration agreements containing class action waivers, a fact that precludes their participation in this case, disqualifies them as class representatives, and renders moot their motion for a protective order under Federal Rule of Civil Procedure 23(d). Ignoring the effect of these arbitration agreements, Plaintiffs have filed a baseless "preemptive" civil lawsuit and moved for a protective order, the effect of which has been to cause confusion and delay the payment of promised severance benefits to Twitter employees who were impacted by the lawful reduction in force on November 4, 2022.

Granting Plaintiffs' requested relief would not only improperly incentivize future plaintiffs to ignore their binding arbitration agreements and crowd the courts with meritless Rule 23(d) motions, it would also be unprecedented. With one exception, no court has ever granted relief under Rule 23(d) when the named plaintiffs—like Plaintiffs here—signed enforceable arbitration agreements at the beginning of their employment. The one exception was a recent magistrate judge's decision in *Lynch v. Tesla, Inc.*, No. 1:22-cv-597, 2022 WL 4295295, at *4 (W.D. Tex. Sept. 16, 2022), and while Plaintiffs repeatedly cite this decision, they relegate to a cursory footnote the fact that Tesla's objections to the magistrate judge's Rule 23(d) order were pending when District Court Judge Robert Pitman stayed the order, compelled the plaintiffs' claims to arbitration, dismissed the lawsuit in its entirety, and denied the plaintiffs' motion for reconsideration of the dismissal order. Twitter agrees with Plaintiffs that the *Lynch* case is important, but for entirely different reasons: the same ultimate result in *Lynch* is similarly warranted in this case.

Setting aside these dispositive arbitration issues, Plaintiffs' filing of this lawsuit raises serious concerns about its appropriateness under the applicable pleading rules. Plaintiffs alleged in their Original Complaint only that Twitter violated the federal Worker Adjustment and Retraining Notification ("WARN") Act and the California Worker Adjustment and Retraining Notification Act ("California WARN Act") in connection with its November 4, 2022 reduction in force. *See* ECF No. 1. But such claims were baseless. Plaintiffs Justine De Caires and Jessica

1  Pan have submitted sworn declarations admitting that they received 60-days' notice of their
2  termination along with the accompanying pay and benefits in compliance with the federal and
3  California WARN Acts. Plaintiff Grae Kendall also received 60-days' notice of their discharge.
4  Plaintiff Emmanuel Cornett was terminated for cause prior to the November 4 reduction in force
5  at issue and Plaintiff Alexis Camacho is a current Twitter employee; thus neither has any claim
6  under the federal or California WARN Acts. In rushing to file their Complaint, Plaintiffs ignored
7  the fact that their claims would be undermined by their own later-filed declarations.

8        Plaintiffs then filed a First Amended Complaint, which fails to allege any ascertainable
9  classes and includes additional meritless and uniquely individualized claims for alleged breach of
10 contract and promissory estoppel. Simply put, Plaintiffs are desperately searching for a cause of
11 action where none exists in order to further their own personal interests (and the interests of their
12 counsel) to the detriment of the hundreds of Twitter employees who were impacted by a lawful
13 reduction in force, received appropriate WARN notice, and are now anxiously awaiting details of
14 their promised severance. The Court end to this uncertainty by compelling Plaintiffs' claims to
15 individual arbitration pursuant to the arbitration agreements each of them signed at the outset of
16 their employment, denying the unprecedented relief Plaintiffs seek in their Motion, and allowing
17 Twitter to send out the severance agreements as Twitter had planned to do prior to Plaintiffs
18 disrupting that process by filing this lawsuit. Plaintiffs' motion should be denied in its entirety.

19 **II.     BACKGROUND**
20       **A.     Plaintiffs Each Signed and Agreed to Be Bound by Twitter's Dispute Resolution Agreement.**

21       Twitter has a well-established alternative dispute resolution program that is binding on
22 each of the Plaintiffs in this case. *See* ECF No. 18. Twitter makes clear that this program is not
23 a mandatory condition of employment and is entirely voluntary. *Id*. Upon hire, Twitter
24 provides its employees with an opportunity to opt-out of the dispute resolution program
25 altogether. Each of the Plaintiffs executed a Dispute Resolution Agreement and agreed to be
26 bound by its terms; none of them opted out. *Id*. The Dispute Resolution Agreements are
27 governed expressly by the Federal Arbitration Act ("FAA") and require Plaintiffs to submit
28 "any dispute arising out of or related to [their] employment with Twitter" to binding arbitration.

*Id*.  The Dispute Resolution Agreements also contain an express class action waiver, pursuant to which Plaintiffs and Twitter agreed "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis" and that "there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action . . . ." *Id*.  There is a broad delegation clause in the Dispute Resolution Agreements stating that the "Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration" and that "all such disputes [are] to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial." *Id*.  As a result, Twitter has moved to compel Plaintiffs' claims to individual arbitration and dismiss the class action claims.

Plaintiffs are aware of the fact they signed arbitration agreements containing class action waivers, as evinced by the concession in their Motion that Twitter may "claim that all or most employees are bound by an arbitration agreement," and their counsel has already informed the media that they will pursue the claims "individually in arbitration, if necessary."[1]

### B. On November 4, 2022, Twitter Notified Impacted Employees of a Reduction in Force in Compliance with the Requirements of the federal and California WARN Acts.

On April 25, 2022, X Holdings I, Inc. and X Holdings II, Inc. entered into an Agreement and Plan of Merger with Twitter ("Merger Agreement").  Request for Judicial Notice ("RJN") Ex. A; Decl. of Fix Conti, at ¶ 2.  The merger closed in October, 2022 and, as part of a strategic reorganization to improve the health of the company, Twitter made the decision to reduce the size of its workforce.  *Id*., at ¶ 3.  Twitter was, at all times, mindful of and in compliance with its obligations under the WARN Act and all similar state laws, including the California WARN Act.  *Id*., at ¶ 5.  On November 4, 2022, Twitter notified approximately 2,600 employees, including Plaintiffs Justine De Caires, Grae Kindel, and Jessica Pan, that they were being involuntarily discharged as part of a reduction in force and that their last day of employment

---

[1] Beverly Banks, *Ex-Twitter Workers Seek Protective Order From Releases*, Law360 Nov. 10, 2022 8:56 PM https://www.law360.com/articles/1548731/ex-twitter-workers-seek-protective-order-from-releases (Last visited Nov. 21, 2022 at 08:00 AM).

with Twitter will be January 4, 2023 – more than 60 days after such notice.[2] *Id.*, at ¶ 4. Consistent with its obligations under the WARN Act and applicable state law, Twitter also timely notified all applicable state and local authorities of the November 4 reduction in force, including authorities in San Francisco, San Jose, and Los Angeles. *Id.*, at ¶ 5.  In addition to being provided with at least 60-days' notice, employees who were notified of their discharge on November 4 were also promised a discretionary severance package equivalent to one month's pay, in addition to the jurisdiction-compliant full pay and benefits they will receive between the date they were notified of the layoff and their termination date.  All of these severance packages were offered on a discretionary basis.

Plaintiff Alexis Camacho did not receive notice because they are currently employed and were not a part of the November 4 reduction in force.  Plaintiff Emmanuel Cornet also was not a part of the November 4 reduction in force because he had been terminated for cause on November 1.  RJN Ex. B. Current employees and employees who have been terminated for cause have not experienced an "employment loss" and so are not "affected employees" for WARN notification purposes; nor have these employees been "separat[ed] from a position for lack of funds or lack of work" and so experienced a "layoff" for California WARN Act notification purposes.  *See* 29 U.S.C. § 2101(a)(5), (6); Cal. Labor Code § 1400(c).

    **C.**    <u>**Plaintiffs File a "Preemptive" Complaint Asserting Legally and Factually Baseless Claims under the federal and California WARN Acts.**</u>

On November 3, 2022, Plaintiffs' Counsel "preemptively"[3] filed this lawsuit which wrongly presupposed that Twitter would violate the WARN and California WARN Acts in connection with the November 4 reduction in force. ECF No. 1.  Plaintiffs' claims in the Original Complaint, based almost entirely on what Plaintiffs' Counsel *guessed* might happen, were legally and factually baseless.  *Id*.  Critically, Plaintiffs did not serve their Original Complaint on Twitter.  Instead, over the next week, Plaintiffs' Counsel regularly scheduled

---

[2] Impacted employees in states with longer notice requirements were given a different end-date of employment consistent with all requirements of applicable state law.

[3] Irene Spezzamonte, *Ex-Twitter Employees Sue Company Over Firings*, Law360, (Nov. 4, 2022 at 2:11 PM) https://www.law360.com/articles/1546696/ex-twitter-employees-sue-company-over-firings  (last visited Nov. 21, 2022 at 8:00 AM).

media interviews, including one in which she approvingly discussed Twitter's compliance with its WARN obligations, saying she was "pleased to learn that at least some employees will continue being paid until Jan. 4."[4]  Well before serving Twitter, Plaintiffs' Counsel appeared to be trying the case to the media and social media, scheduling no fewer than ten interviews during that time, while Plaintiffs regularly discussed the matter with anyone who would listen. RJN, Ex. C.  The only example provided of any Twitter employee not receiving 60 days' notice is Cornet, however, Twitter had terminated Cornet for cause on November 1 and he was therefore neither part of the November 4 reduction in force nor otherwise entitled to WARN notice.  RJN, Ex. B.   (Cornet Tweet Nov. 1, 2022: "Got first dibs at being fired!  But I'm kind of proud of the reason(s)").

### D. Plaintiffs Amend Their Complaint to Add Meritless Breach of Contract and Promissory Estoppel Claims and File the Instant "Emergency" Motion.

After learning that Twitter had, in fact, complied with the federal and California WARN Acts in conducting the November 4 reduction in force, Plaintiffs amended their Complaint (ECF No. 6) and filed an "emergency" motion for a protective order.  ECF No. 7.  In the Amended Complaint, Plaintiffs minimize the WARN Act and California WARN Act allegations, abandon the class definitions they used in the Original Complaint, and focus instead on newly-asserted breach of contract and promissory estoppel claims related to the payment of severance benefits and Twitter's work from home policy.

The only express contract referenced by Plaintiffs in the pleadings regarding the payment of severance benefits, however, is the Merger Agreement.  While Plaintiffs attach an excerpt from Section 6.9 the Merger Agreement at Exhibit D to their Motion, they conveniently exclude sub-section (e), which, among other things, allows Twitter the absolute discretion to modify or terminate any employee benefit plan or program post-closing and states that nothing in Section 6.9 creates any third-party beneficiary rights:

---

[4] Josh Eidelson, *Twitter Sued for Mass Layoffs Without Notice; Musk Trying to Comply, Lawyer Says*, Bloomberg (Nov. 4, 2022 at 9:34 PM) https://www.bloomberg.com/news/articles/2022-11-04/twitter-sued-for-mass-layoffs-by-musk-without-enough-notice?leadSource=uverify%20wall (last visited Nov. 21 at 8:00 AM).

(e) Nothing contained in this Section 6.9, expressed or implied, shall (i) be treated as the establishment, amendment or modification of any Company Benefit Plan, Post-Closing Plan or other employee benefit plan or constitute a limitation on rights to amend, modify, merge or terminate after the Effective Time any Company Benefit Plan, Post-Closing Plan or other employee benefit plan, (ii) give any Company Service Provider (including any beneficiary or dependent thereof) or other Person any third-party beneficiary or other rights or (iii) obligate Parent or any of its Affiliates to (A) maintain any particular Company Benefit Plan, Post-Closing Plan or (B) retain the employment or services of any Company Service Provider.

*See* RJN, A.

Plaintiffs also choose to ignore Section 9.7 of the Merger Agreement titled "No Third-Party Beneficiaries," which further confirms that neither Plaintiffs nor any employees whom they seek to represent have any rights under the Merger Agreement. *Id*. Plaintiffs identify no non-discretionary policy or plan entitling them to any severance benefits apart from those which they have already been promised as part of the reduction in force. Similarly, Plaintiffs identify no non-discretionary policy or program entitling employees to work remotely that would not be subject to change, given the at-will nature of their employment and new business environment. There can be no reliance or damages to an employee under such circumstances and, regardless, any alleged reliance would necessarily involve highly individualized inquiries that would predominate over any supposed common issues and preclude any class-wide resolution.

### III. ARGUMENT
#### A. The Court Should Deny Plaintiffs' Motion Because Plaintiffs Signed Binding Arbitration Agreements with Class Waivers.

Plaintiff's complaint and "emergency" motion for a protective order appear designed to disrupt Twitter's previously planned lawful reduction in force and intent to offer of severance to impacted employees. Plaintiffs are attempting to use the artifice of a class action complaint and immediately Rule 23(d) motion to force Twitter to include a "built in" advertisement for Plaintiffs' Counsel's services when presenting affected employees with release agreements. Plaintiffs acknowledge they are trying to make an end-run around the FAA and the Supreme Court's repeated approval of class waivers in arbitration agreements with their candid admission that, "should the Court ultimately compel arbitration, Plaintiffs will argue that notice should issue before arbitration proceedings begin." ECF No. 7 at 8-9, n.9. That statement—buried in

a page-long footnote—explains what this case and Plaintiffs' "emergency" motion are all about: trying to obtain "class" notice and relief in contravention of the FAA before Twitter has even responded to the complaint or the Court has decided Twitter's pending motion to compel arbitration.

The Court should not condone this misuse of Rule 23(d). Because Plaintiffs are bound by arbitration agreements with enforceable class waivers, Plaintiffs have no standing to seek relief under Rule 23, and thus the supposed Rule 23(d) rights of putative class members are illusory. The Court should rule on Twitter's motion to compel arbitration *prior to* addressing Plaintiffs' Motion and *prior to* considering whether any relief under Rule 23 would be appropriate. *See, e.g., Hughes v. S.A.W. Entertainment, LTD*, No. 16-cv-03371-LB, 2017 WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017) (rejecting plaintiffs' request to issue 216(b) notice to members of a Fair Labor Standards Act collective prior to deciding the defendants' pending motion to compel the plaintiffs' claims to arbitration). As the court in *Hughes* noted, the existence of binding arbitration agreements is a threshold matter that a court should decide before reaching the question of whether any requested class/collective notice has merit. *See Hughes* 2017 WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017) ("the issue of whether the named plaintiffs can litigate their claims in a court or must arbitrate their claims is a threshold issue.") (citing *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 1798926, at *2 (N.D. Cal. Apr. 17, 2015)). This is so because once the Court compels Plaintiffs' claims to individual arbitration, Plaintiffs claims will no longer be before the Court, their Motion will be moot, and the members of the putative class will have no Rule 23(d) rights to protect. Issuing any relief under Rule 23(d) during the pendency of a motion to compel all of the named plaintiffs claims to individual arbitration would be inconsistent with the FAA and the abundant case law enforcing class waivers. As a practical matter, it would also set a dangerous precedent that incentivizes plaintiffs who signed arbitration agreements to run to court and file emergency motions under Rule 23(d) at the outset of a case, which would undermine the efficiencies and purpose of arbitration and—like in this case—allow a plaintiff to disrupt lawful business conduct based on procedural rights the plaintiff has waived.

### 1. Plaintiffs Lack Standing to Seek Relief on Behalf of any Putative Class.

In light of the class waivers in their arbitration agreements, Plaintiffs lack standing to represent any proposed class(es). This Court should dismiss Plaintiffs' class claims because a litigant must have a "personal stake in the outcome of the controversy, and the court [can]not redress [their] claimed injuries because [they] agreed to pursue [their] claims in an exclusively arbitral forum." *See Holman v. Bath & Body Works, LLC*, No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468, at *13 (E.D. Cal. Dec. 8, 2021) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The dismissal or striking of Plaintiffs' class claims will result in their present Motion being moot. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) ("In the absence of any claimants opting in, respondent's suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action . . . the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."); *Edwards v. Chartwell Staffing Servs., Inc.*, No. CV 16-9187 PSG (KSX), 2017 WL 10574360, at *7 (C.D. Cal. May 30, 2017) ("as a matter of federal procedure, courts granting a motion to compel individual arbitration simultaneously render the individual's class claims moot."). In *O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087, 1095 (9th Cir. 2018), the Ninth Circuit reversed the district court's order denying plaintiffs' motion to compel and, in turn, held that the "the Rule 23(d) orders [issued by the district court] are moot and without foundation."[5] *Id*. Here, because Plaintiffs' claims are subject to binding arbitration with class waivers, they have no standing to represent the proposed classes in this Court and their pending Rule 23(d) Motion should be denied as moot without further analysis.

### 2. The Purported Rule 23(d) Rights of the Putative Class Are Illusory.

The purpose of Rule 23(d) is to protect the due process rights of absent class members. *Retiree Support Group of Contra Costa County v. Contra Costa County*, 2016 WL 4080294, at *3 (N.D. Cal. July 29, 2016) ("[t]hose courts that have invoked Rule 23 as the basis for

---

[5] While Plaintiffs rely in their Motion on a district court decision from the *O'Connor* case, they fail to notify this Court that the Rule 23(d) relief ordered by the district court in *O'Connor* was reversed as moot after the Ninth Circuit held that the arbitration agreements signed by the plaintiffs were enforceable.

authority [over absent class members] have relied on the Court's duty, under Rule 23(d), to protect the due process rights of absent class members through accurate notice procedures."). Relief under Rule 23(d) is warranted only if it "would advance class members due process rights to fair representation in the class action." *Al Otro Lado, Inc. v. Mayorkas*, No: 17-cv-2366-BAS, 2022 WL 686963, at *6 (S.D. Cal. Mar. 8, 2022); *see also In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1126–27 (9th Cir. 1977).

Here, the only risk to the rights of absent class members is depriving them of their promised severance benefits and misleading them into thinking they may be able to recover potential damages in this soon-to-be-dismissed lawsuit.  Once the Court compels Plaintiffs' claims into individual arbitration, there will be no basis for the Court to issue any relief under Rule 23(d) because the due process rights of absent class members will not be implicated in any way.  Plaintiffs' Rule 23(d) Motion should be denied in its entirety as a result.

### 3. Granting Relief under Rule 23(d) Before Deciding Twitter's Motion to Compel Individual Arbitration Would be Improper and Unprecedented.

Other than the above-referenced *Lynch* case—which has been dismissed and compelled to arbitration without any relief issuing under Rule 23(d)—Plaintiffs do not identify any authority authorizing the Court to issue any form of relief under Rule 23(d) before ruling on a pending motion to compel individual arbitration, and to Twitter's knowledge, no such authority exists. This absence of authority makes sense because requiring the issuance of notice of a lawsuit to absent class members—virtually all of whom, like all of the named-plaintiffs, signed arbitration agreements precluding their participation in this case—or granting any other relief under Rule 23(d), a class action mechanism, prior to deciding a pending motion to compel individual arbitration, is inconsistent with and circumvents the FAA and its "liberal federal policy favoring arbitration agreements." *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal citations omitted).  "The congressional purpose of the FAA is to 'move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 489 (5th

Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).  Thus, courts must "rigorously enforce agreements to arbitrate," which must necessarily include deciding pending motions to compel individual arbitration before deciding to issue any notice of a lawsuit to potential class members under Rule 23(d).  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

To find otherwise, would incentivize litigants, like Plaintiffs, to file lawsuits in federal district court, despite having signed arbitration agreements with class action waivers, for the purpose of using the court as a conduit to solicit potential plaintiffs who also signed arbitration agreements.  This result is untenable, improper, and entirely inconsistent with the FAA and a veritable mountain of binding authority interpreting same from the United States Supreme Court and the Ninth Circuit Court of Appeals. Other than *Lynch*, all of the other cases on which Plaintiffs rely that in any way involve arbitration are distinguishable, as they involve either a defendant who rolled out arbitration agreements to plaintiffs or putative class members as a strategic reaction and in response to pending litigation—which is not true here—or a situation in which a plaintiff moved for a preliminary injunction on their own claim to preserve the status quo and the meaningfulness of arbitration where a court granted a preliminary injunction to maintain the status quo of an individual plaintiff's claim pending arbitration.  *See* ECF No. 7 at 8 n. 6.  *See e.g.*, *Marsoft, Inc. v. United LNG, L.P.*, 2014 WL 1338707, at *11 (S.D. Tex. Mar. 31, 2014) (granting preliminary relief pending the court's decision on arbitration after Plaintiff had pleaded the requisite elements and the defendant had not articulated any harm that would issue).  Moreover, each of these cases are contrary to the holding of *Hughes* 2017 WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017) (the existence of binding arbitration agreements is a threshold matter) and other similar cases where courts considered arbitrability before evaluating the merits of a class or collective action.

For example, unlike the plaintiff in the *Janvey v. Alguire*, 647 F.2d 585, 595 (5th Cir. 2011), Plaintiffs here have not pleaded or attempted to establish any of the factors to obtain a preliminary injunction to maintain the status quo pending arbitration and instead ask the Court to issue relief under Rule 23(d) in lieu of arbitration.  *See* ECF No. 7 at 8.  Plaintiffs requested

relief under Rule 23(d)—which includes potentially issuing notice of this lawsuit to individuals who, like Plaintiffs, signed arbitration agreements and who are not members of any certified or identifiable class—before ruling on Twitter's pending motion to compel individual arbitration does nothing to maintain the status quo or the meaningfulness of arbitration and instead stirs up litigation and risks the multiplicity of suits, which is plainly prescribed by applicable precedent. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (cautioning that courts "may not use their discretion to facilitate the notice process merely to stir up litigation."); *Sandbergen v. Ace Am. Ins. Co.*, No. 18-cv-4567-SK, 2019 WL 13203944, at *4 (N.D. Cal. June 17, 2019) (holding that "where, as here, there is no dispute that certain individuals cannot participate in the collective action, sending such individuals notice would [not] be merely inefficient. It would be frivolous."); *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-6751-JSC, 2021 WL 2805604, at *2 (N.D. Cal. July 6, 2021) (observing that "the Seventh and Fifth Circuits have . . . both concluded that it is not appropriate to send notice to employees with valid arbitration agreements.").

### B. Granting Plaintiffs' Requested Relief Under Rule 23(d) Would Unfairly Undermine Potential Class Members' Interests and Lead to Confusion.

Plaintiffs' Motion represents an unprecedented use of Rule 23(d) given the circumstances and timing around Twitter's reduction in force and planned distribution of severance agreements. This is simply not a case where Twitter – in reaction to the filing of a putative class complaint – initiated a strategic campaign to wipe out the class by seeking releases. The chronology is exactly the opposite. Consistent with its standard process with respect to reductions in force, Twitter was in the process of preparing to send severance and release agreements to impacted employees *prior to* Plaintiffs filing their Complaint. Yet, Plaintiffs filed their "preemptive strike" lawsuit right in the middle of Twitter's planned severance process and used Rule 23(d) as a weapon to disrupt that process. And, while Plaintiffs have amended their complaint to add breach of contract and promissory estoppel claims, these claims, like Plaintiffs' WARN Act claims, are legally and factually baseless and fail satisfy applicable pleading standards. Plaintiffs do not even attempt to define classes, make any factual showing of the Rule 23(a) factors, and are silent on what Rule 23(b) provision they will attempt to satisfy, which makes their pleading completely deficient under the *Iqbal-Twombly* pleading standard. *See e.g.*, *Mish v. TForce Freight, Inc.*, No. 21-CV-

4094-EMC, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (granting defendant's Rule 12(b)(6) motion because "district courts do dismiss class allegations on a 12(b)(6) motion, applying the *Twombly/Iqbal* standard, where the complaint lacks *any factual allegations* and reasonable inferences that establish the plausibility of class allegations.") (emphasis added).

As for the merits, the Court need look no further than Plaintiffs' own declarations and the publicly available information showing that Twitter provided notice of the November 4, 2022 reduction in force to all applicable state and local authorities to understand that Plaintiffs' federal and California WARN Act claims are groundless and arguably brought in bad faith. Plaintiffs' breach of contract claim appears to be predicated on the Merger Agreement—which, among other things, grants Twitter the unilateral discretion to modify or terminate any severance benefit plans and includes two "no third-party beneficiary" provisions that expressly preclude Plaintiffs from asserting any breach of the Merger Agreement. *See Crispo v. Musk*, CA No. 2022-0666-KSJM, 2022 WL 6693660, at *5 (Del. Ch. Oct. 11, 2022), (rejecting the claims of certain shareholders under a third-party beneficiary theory to the Merger Agreement at issue here, finding that Section 9.7 contained an express "no third-party beneficiaries" provision which evidenced a knowing and deliberate rejection of the plaintiffs as third-party beneficiaries).

Plaintiffs' promissory estoppel claim regarding Twitter's remote work appears to be based on a fundamental misunderstanding of the difference between being granted the discretionary permission to work remotely from home in a location near one's assigned office and working from anywhere in the world until the end of time with no limitations. In any event, Plaintiffs' promissory estoppel claim, which requires proof of reasonable reliance, will necessitate highly individualized inquiries that make such claim inappropriate for class treatment. *See e.g.*, *Sateriale v. RJ Reynolds Tobacco, Co.*, No. 2:09-cv-8394, 2014 WL 7338877, at *12 (C.D. Cal. Dec. 19, 2014) (denying class certification as to plaintiffs' promissory estoppel claim because "determining whether any given member relied on [the defendant's] promise . . . would require an inquiry into each class member's state of mind. Such individualized inquiries would undermine any efficiencies that might be achieved by adjudicating this claim on a class-wide basis.").

Given the totality of the circumstances here, granting relief under Rule 23(d) is neither warranted nor appropriate and would, in fact, harm Twitter employees who will continue to be deprived of the severance payments they were promised as part of the lawful reduction in force based solely on the pendency of this baseless class action lawsuit. *See In re Blackbaud, Inc.*, No. 3:20-MN-2972-JMC, 2022 WL 1137885, at *3 (D. S.C. April 18, 2022) (Childs, J.) (explaining that "court[s] must strive to avoid authorizing injurious class communications that later prove unnecessary" and that notice to class members should not issue if a "certification decision is not imminent or it is unlikely that a class will in fact be certified.").

The remainder of the cases on which Plaintiffs rely involve defendants rolling out release agreements or opt-out forms *after* the filing of the lawsuit and as a *strategic reaction* to the lawsuit with the goal of extinguishing class wide liability—which is undisputedly not what happened here. For example, in *Guifu Li v. A Perfect Day Fran., Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010), the court invalidated opt-out agreements that the employer only sought to obtain after the lawsuit was filed through the use of "coercive tactics" which included "required, one-on-one meetings with managers during work hours and at the workplace." In *Marino v. CACAFE, Inc.*, No. 16-cv-6291, 2017 WL 1540717, at *1-2 (N.D. Cal. April 28, 2017) the court required curative notice to be sent when a defendant, in reaction to a plaintiff filing a collective action, sent release offers to members of the putative class while warning the putative class members that the company was in a "restructuring" process and that the offer was to "ensure there is no outstanding issue based on your contractual relationships with the Company . . . ." *Id*. In *County of Santa Clara v. Astra USA, Inc.*, No. C 05-3740-WHA, 2010 WL 2724512, at *5-6 (N.D. Cal. July 8, 2010), the court invalidated releases sought from putative class members *as a strategic defense tactic in response to* the lawsuit was filed. Simply put, Plaintiffs have cited to no case in which a Court has granted relief under Rule 23(d) or required the issue of notice of a lawsuit where, as here, the employer was engaged in a lawful reduction in force and in the process of sending severance and release agreements when the plaintiffs filing of a preemptive lawsuit intended to disrupt that process. As a result, the cases invalidating releases or requiring curative notice under Rule 23(d) are inapposite to the present unique factual situation.

### C. The Court Should Deny Plaintiffs' Motion Because Any Such Notice Will Result in Misleading Employees.

Plaintiffs' counsel apparently seeks to improperly circumvent the binding arbitration agreements each Plaintiff has signed in order to use the Rule 23(d) "corrective/curative" notice process as a conduit to solicit clients about a likely soon-to-be-dismissed lawsuit. This result is not contemplated by or appropriate under Rule 23(d) and is contrary to binding Ninth Circuit precedent. *Pan. Am. World Airways, Inc. v. U.S. Dist. Ct. for Central District of Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975) (holding that a class action should be certified before "notice for the purpose of bringing clams of unnamed members of the plaintiff class before the court" is appropriate). In fact, "the Advisory Committee Notes to Rule 23 expressly caution against using Rule 23(d)(2) for 'the undesirable solicitation of claims.'" *See Marian Bank v. Elec. Payment Servs., Inc.,* No. 95-614-SLR, 1999 WL 151872, at *2 (D. Del. Mar. 12, 1999) (citing FED R. CIV. P. 23 Advisory Committee Notes) ("Courts have agreed that providing such notice" to members of an uncertified class "is in a sense merely soliciting a client for plaintiff's counsel under the aegis of the court."); *see also Hoffman LaRoche v. Sperling*, 493 U.S. 165, 174 (1989) (emphasizing that when exercising authority over the notice-giving process, "courts must be scrupulous to respect judicial neutrality."). Requiring notice of this lawsuit within the severance agreements provided to impacted employees would be misleading to them because, among other things, it would inform them of a lawsuit that will be compelled to arbitration and that they will be unable to join because they themselves signed arbitration agreements precluding their participation in any class – a result that is completely inconsistent with the purpose Rule 23(d).

### IV. CONCLUSION

The Court should first consider and rule upon Twitter's pending motion to compel arbitration and, in doing so, order Plaintiffs' claims to individual arbitration and dismiss the putative class claims. The ruling on that motion should moot Plaintiffs' motion for protective order. Even apart from the arbitration issue, however, Plaintiffs have failed to demonstrate that their requested relief would be appropriate under the unique circumstances presented by this

case. As a result, the Court should deny Plaintiffs' motion in its entirety, and order all relief in favor of Twitter that the Court finds appropriate.

Dated:  November 21, 2022　　　　　　　　MORGAN, LEWIS & BOCKIUS LLP

　　　　　　　　　　　　　　　　　　　　　　　/s/ Eric Meckley
　　　　　　　　　　　　　　　　　　　　Eric Meckley
　　　　　　　　　　　　　　　　　　　　Brian Berry
　　　　　　　　　　　　　　　　　　　　Ashlee Cherry
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　Twitter, Inc.