1  SHANNON LISS-RIORDAN (SBN 310719)
   (sliss@llrlaw.com)
2  THOMAS FOWLER (*pro hac vice* forthcoming)
   (tfowler@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
4  729 Boylston Street, Suite 2000
   Boston, MA 02116
5  Telephone:     (617) 994-5800
   Facsimile:     (617) 994-5801
6
7  *Attorneys for Plaintiffs Emmanuel Cornet,*
   *Justine De Caires, Grae Kindel, Alexis Camacho,*
8  *and Jessica Pan, on behalf of themselves*
   *and all others similarly situated*
9

10

                    **UNITED STATES DISTRICT COURT**
11                  **NORTHERN DISTRICT OF CALIFORNIA**
12                    **SAN FRANCISCO DIVISION**

13

14  EMMANUEL CORNET, JUSTINE DE          | Case No. 3:22-cv-06857-JD
    CAIRES, GRAE KINDEL, ALEXIS
15  CAMACHO, AND JESSICA PAN, on behalf of
16  themselves and all others similarly situated,  | **PLAINTIFFS' OPPOSITION TO**
                                          | **TWITTER'S MOTION TO COMPEL**
17                Plaintiffs,             | **ARBITRATION AND STRIKE AND/OR**
                                          | **DISMISS CLAIMS**
18
          v.                             | Hearing:
19                                        | Date:      January 12, 2022
20  TWITTER, INC.                         | Time:      10:00 AM, PST
                                          | Place:     Courtroom 11
21                Defendant.              | Judge:     Hon. James Donato
22
                                          | ACTION FILED: November 3, 2022
23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND .................................................................................. 2

      A.  Procedural History ..................................................................... 2

III.  ARGUMENT ........................................................................................ 4

      A.  The Court Should Defer Deciding this Motion Until it Has Decided
          Plaintiffs' Emergency Motion for a Protective Order ................. 4

      B.  Twitter's Motion to Dismiss and Compel Individual Arbitration Should be
          Denied ......................................................................................... 5

          1.  The arbitration agreements are procedurally unconscionable ........................... 6

          2.  The arbitration agreements are substantively unconscionable ........................... 8

IV.  CONCLUSION .................................................................................... 13

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLAIMS

1

## TABLE OF AUTHORITIES

2

**Cases**

3

A & M Produce Co. v. FMC Corp.
    135 Cal. App. 3d 473 (1982) ....................................................................... 9

4

5

Adolph v. Uber Technologies
    S274671 (Cal. Aug. 1, 2022) ................................................................... 13

6

Armendariz v. Found. Health Psychcare Servs., Inc.
    24 Cal. 4th 83 (2000) ...................................................................... 2, 5, 8

7

8

AT & T Mobility LLC v. Concepcion
    563 U.S. 333 (2011) .................................................................................. 9

9

Balan v. Tesla Motors, Inc.
    2019 WL 2635903 (W.D. Wash. June 27, 2019) .................................. 2, 10

10

11

Balan v. Tesla, Inc.
    840 Fed. Appx. 303 (9th Cir. 2021) ...................................................... 10

12

Caire v. Conifer Value Based Care LLC
    982 F. Supp. 2d 582 (D. Md. 2013) ......................................................... 6

13

14

Carbajal v. CWPSC, Inc.
    245 Cal. App. 4th 227 (2016) ................................................... 1, 2, 6, 7

15

16

Carlson v. Home Team Pest Defense, Inc.
    239 Cal. App. 4th 619 (2015) .................................................................. 6

17

Correa v. Firestone Complete Auto Care
    2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) ......................................... 9

18

19

DeGraff v. Perkins Coie LLP
    2012 WL 3074982 (N.D. Cal. July 30, 2012) ....................................... 11

20

Duran v. Discover Bank
    2009 WL 1709569 (Cal. Ct. App. June 19, 2009) .................................. 8

21

22

Gentry v. Superior Court
    42 Cal. 4th 443 (2007) ............................................................................ 8

23

24

Gunderson v. Alta Devices, Inc.
    2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ....................................... 3

25

Hoober v. Movement Mortgage, LLC
    382 F. Supp. 3d 1148 (W.D. Wash. 2019)............................................ 10

26

27

28

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLAIMS

<u>Iskanian v. CLS Transp. Los Angeles, LLC</u>
    59 Cal. 4th 348 (2014) ....................................................................................... 2, 11, 12

<u>Kinkel v. Cingular Wireless LLC</u>
    223 Ill.2d 1 (Ill. 2006) ................................................................................................ 10

<u>Lanigan v. City of Los Angeles</u>
    199 Cal. App. 4th 1020 (2011) ..................................................................................... 7

<u>Luna v. Household Finance Corp. III</u>
    236 F. Supp. 2d 1166 (W.D. Wash. 2002) .................................................................... 9

<u>MacClelland v. Cellco Partnership</u>
    --- F. Supp. 3d ---, 2022 WL 2390997 (N.D. Cal. July 1, 2022) ...................................... 5

<u>McKee v. AT & T Corp.</u>
    164 Wash. 2d 372, 191 P.3d 845 (2008) ....................................................................... 9

<u>Narayan v. The Ritz-Carolton Development Co., Inc.</u>
    140 Hawai'i 343 (2017) ................................................................................................ 10

<u>Ohan v. AmeriFirst Financial, Inc.</u>
    2015 WL 13757759 (C.D. Cal. Jan. 20, 2015) .............................................................. 4

<u>OTO, L.L.C. v. Kho</u>
    8 Cal. 5th 111 (2019) ................................................................................................ 1, 7

<u>Perry v. Thomas</u>
    482 U.S. 483 (1987) ................................................................................................... 1, 5

<u>Raglani v. Ripken Prof. Baseball</u>
    939 F. Supp. 2d 517 (D. Md. 2013) ............................................................................. 6

<u>Ramos v. Superior Court</u>
    28 Cal. App. 5th 1042 (2018) ................................................................................ 2, 9, 10

<u>Roe v. SFBSC Mgmt., LLC</u>
    2015 WL 930683 (N.D. Cal. Mar. 2, 2015) ................................................................. 8

<u>Sakkab v. Luxottica Retail North America, Inc</u>
    803 F.3d 425 (9th Cir. 2015) .................................................................................... 2, 11

<u>Schnuerle v. Insight Commc'ns Co., L.P.</u>
    376 S.W.3d 561 (Ky. 2012) ......................................................................................... 9

<u>Sprague v. Houseld Intern.</u>
    473 F. Supp. 2d 966 (W.D. Mo. 2005) ........................................................................ 9

<u>Storms v. Paychex, Inc.</u>
    2022 WL 2160414 (C.D. Cal. Jan. 14, 2022) ............................................................... 10

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLAIMS

Ting v. AT&T
        319 F.3d 1126 (9th Cir. 2003) ........................................................ 10

Viking River Cruises, Inc. v. Moriana
        142 S. Ct. 1906 (2022) ................................................................ 13


**Statutes**

29 U.S.C. § 2101 *et seq.* ................................................................... 1, 2, 3

Cal Lab. Code § 1400 *et seq.* .............................................................. 1, 2, 3

Cal. Lab. Code § 201 ........................................................................ 3

Cal. Lab. Code § 203 ........................................................................ 3

Cal. Lab. Code § 227.3 ...................................................................... 3

Federal Arbitration Act ("FAA")
        9 U.S.C. §§ 1 *et seq.* ................................................................ 1, 5

Private Attorneys General Act of 2004 ("PAGA")
        Cal. Lab. Code § 2698 *et seq.* ...................................................... *passim*

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLAIMS

# I.      INTRODUCTION

This case is brought on behalf of individuals who have worked for Defendant Twitter, Inc. ("Twitter"), and who allege claims against Twitter for breach of contract, promissory estoppel, and violation of the federal and California WARN Acts, 29 U.S.C. § 2101 *et seq.*, Cal Lab. Code § 1400 *et seq.* In its Motion to Compel Arbitration and Strike And/Or Dismiss Claims (Dkt. 18), Twitter asks this Court to ignore Plaintiffs' Emergency Motion for a Protective Order (Dkt. 7) that was filed on November 9, 2022, and instead dismiss Plaintiffs' claims and compel them to arbitration.  As Plaintiffs explained in their emergency motion, the Court should decide Plaintiffs' motion **<u>before</u>** addressing Twitter's attempt to compel arbitration.  Also, Plaintiffs have moved to amend their complaint to add named plaintiffs who opted out of arbitration (Dkt. 28), so the protective order must be addressed, regardless of the Court's ruling on this motion.

But, in any event, the Court should reject Twitter's effort to compel arbitration. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, an arbitration agreement is enforceable unless there are grounds for revocation under applicable state law. <u>See</u> 9 U.S.C. § 2; <u>Perry v. Thomas</u>, 482 U.S. 483, 493 n.9 (1987). Here, as Twitter has conceded, the applicable state law is that of California. Twitter's arbitration agreements cannot be enforced because they are both procedurally and substantively unconscionable under California law.

The agreements are procedurally unconscionable for several reasons. To begin, the arbitration agreements signed by Plaintiffs Kindel, Camacho, and De Caires do not select an arbitral forum or rules to apply, and although the agreements signed by Plaintiffs Pan and Camacho select JAMS, they do not include copies of the procedural rules at issue. These efficiencies represent unfair oppression and surprise that support a finding of procedural unconscionability <u>See</u> <u>Carbajal v. CWPSC, Inc.</u>, 245 Cal. App. 4th 227, 243 (2016). Furthermore, the agreements do not make clear that Twitter will be the party responsible for paying arbitration and arbitrator's fees, meaning that the agreement lacks sufficient clarity as to an essential term. <u>See</u> <u>OTO, L.L.C. v. Kho</u>, 8 Cal. 5th 111, 128 (2019). Adding to the procedural

1

unconscionability is the inherent economic pressure that employees have to enter into the agreement (and not opt out) in order to avoid drawing the ire of a new employer. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 115 (2000); Carbajal, 245 Cal. App. 4th at 243.

The agreements are also substantively unconscionable. They require confidentiality, which courts in California and elsewhere have routinely found to unfairly benefit employers. See Ramos v. Superior Court, 28 Cal. App. 5th 1042 (2018); Balan v. Tesla Motors, Inc., 2019 WL 2635903, at *3 (W.D. Wash. June 27, 2019) (holding Tesla's arbitration agreement substantively unconscionable based on its confidentiality requirement). Also, the agreements signed by Plaintiffs Kindel and Camacho include waivers of representative actions under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Waivers of PAGA representative claims are unconscionable and unenforceable under California law. See Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425, 435 (9th Cir. 2015); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 384-88 (2014).

## II.     BACKGROUND

### A.     Procedural History

Plaintiffs filed this class action lawsuit on November 3, 2022.  They filed their First Amended Complaint (Dkt. 6) on November 8, 2022. Plaintiffs challenge the company's breach of contract with its workforce regarding benefits and severance, assert claims of promissory estoppel, and challenge the company's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), as well as the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (First Am. Compl. ¶ 1, Dkt. 6.)

As Plaintiffs have alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce. (First Am. Compl. ¶ 2, Dkt. 6.) Prior to Musk's purchase of the company, Twitter employees had been promised that, should layoffs occur after the sale, they would be entitled to the same severance and benefits that employees had previously

received. (First Am. Compl. ¶ 4, Dkt. 6.) However, after Musk took control of the company, Twitter reneged on this promise. (First Am. Compl. ¶¶ 2-4, Dkt. 6.) Plaintiffs have also alleged that Twitter did not provide 60 days advance written notice to all employees who were laid off, in violation of the federal and California WARN Act. (First Am. Compl. ¶ 3, Dkt. 6.)[1]

On November 8, 2022, Plaintiffs filed an Emergency Motion for a Protective Order (Dkt. 7), pursuant to Fed. R. Civ. 23(d), requesting that the Court enter a protective order that would bar Twitter from seeking separation agreements from employees it is laying off without giving them sufficient notice of this action and ample opportunity to learn of their claims and pursue them, as well as invalidate any releases that Twitter may have obtained from putative class members prior to Plaintiffs' Emergency Motion being heard and decided.

Twitter responded to Plaintiffs' Emergency Motion by filing its Motion to Compel Arbitration on November 21, 2022 (Dkt. 18), and an Opposition to Plaintiffs' Emergency Motion (Dkt. 20). Twitter also moved the Court (Dkt. 19) to shorten the time for Plaintiffs to respond to its Motion to Compel Arbitration, so that motion could be heard at the same time as Plaintiffs' Emergency Motion on December 8, 2022. Plaintiffs opposed the motion to shorten time (Dkt. 24), because the Court should here the Emergency Motion before the Motion to Compel Arbitration, and there was nothing urgent about the Motion to Compel. The Court agreed and denied the motion to shorten time (Dkt. 27), setting the hearing date for the Motion to Compel on January 12, 2013.

Plaintiffs filed a Motion for Leave to File Second Amended Complaint (Dkt. 28) on November 28, 2022. The proposed amended complaint would add three named plaintiffs who opted out of Twitter's arbitration agreement. See Proposed Second Amended Complaint (Dkt. 28-1). The complaint would also add a count under Cal. Lab. Code §§ 201, 203, and 227.3,

---

[1]     As a result, those employees are entitled to, as damages, the compensation that they would have received during the required 60 day notice period.  See 29 U.S.C. § 2104(a); Cal. Lab. Code § 1402(a)(1); see also Gunderson v. Alta Devices, Inc., 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021) ("Under both the federal and California WARN Acts, Plaintiffs and the Class are entitled to up to sixty days of backpay plus certain other benefits if applicable.").

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

alleging that Twitter failed to provide all wages, benefits, and expense reimbursement due to employees upon termination. See Proposed Second Amended Complaint, Count VI.[2]

## III.    ARGUMENT

### A.    The Court Should Defer Deciding this Motion Until it Has Decided Plaintiffs' Emergency Motion for a Protective Order

As Plaintiffs have explained in their Reply in Support of their Emergency Motion for a Protective Order (Dkt. 30 at 4-10), Twitter is seeking to compel arbitration with the goal of sending Plaintiffs' claims to private, confidential arbitration so that thousands of putative class members will never learn of the existence of this lawsuit or the claims that have been asserted on their behalf. Plaintiffs have sought a protective order maintaining the status quo prior to any decisions being made about arbitration, so that Twitter cannot unduly undermine the putative class members' ability to pursue their claims.  Plaintiffs hereby reiterate the arguments they have made in their Emergency Motion (Dkt. 7) and Reply (Dkt. 30), urging the Court to decide their motion for protective order before ruling on Twitter's motion to compel arbitration.

Plaintiffs also note their Motion for Leave to file a Second Amended Complaint (Dkt. 28), if granted, would moot Twitter's Motion to Compel. See Ohan v. AmeriFirst Financial, Inc., 2015 WL 13757759, at *1 (C.D. Cal. Jan. 20, 2015). Importantly, the proposed amended complaint (Dkt. 28-1) would add several named plaintiffs who explicitly opted out of Twitter's arbitration agreement, which would make it impossible for the Court to grant a renewed motion to compel arbitration with respect to all plaintiffs.

---

[2]    Plaintiffs have now moved for their Motion for Leave to File Second Amended Complaint be heard together with their Emergency Motion (Dkt. 34). Plaintiffs made this request because Twitter has argued that their Emergency Motion should be denied, given that all plaintiffs in this case should be compelled to arbitration. While Plaintiffs disagree that the possibility that claims may be ultimately compelled to arbitration have any bearing on the appropriateness of the Court granting the protective order that they have sought, in order to mitigate this issue, Plaintiffs have sought to add named plaintiffs who opted out of the arbitration agreement. As such, Plaintiff contend that the Court should hear both of Plaintiffs' pending motions together.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

**B.**     **Twitter's Motion to Dismiss and Compel Individual Arbitration Should be Denied**[3]

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). Thus, an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state. See Perry, 482 U.S. at 493 n.9. Twitter has argued, and Plaintiffs agree, that California contract law applies.

Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Armendariz, 24 Cal. 4th at 88 (internal quotation marks omitted). Courts use a "sliding scale" in analyzing these two elements: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. Courts have held that arbitration agreements that contain only a few unconscionable terms can be so permeated with illegality as to render the entire arbitration agreement unenforceable. See Id. at 124 (holding that two unconscionable clauses rendered entire arbitration agreement unenforceable); see also MacClelland, 2022 WL 2390997, at *15 ("[T]he California Supreme Court in *Armendariz* was

---

[3]     Twitter has argued that its arbitration agreements delegate questions of arbitrability to the arbitrators.  Plaintiffs contend that this delegation clause is specifically unenforceable. "In general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." MacClelland v. Cellco Partnership, --- F. Supp. 3d ---, 2022 WL 2390997, at *3 (N.D. Cal. July 1, 2022) (internal citations and quotation marks omitted). The delegation clauses, however, are not clear and unmistakable. For example, in the agreements signed by Plaintiffs De Caires, Pan, and Cornet, the delegation clause states only that "Disputes covered by this Agreement include, without limitation, disputes arising out of or relating or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." (Paragraph 1 of the De Caires, Pan, and Cornet arbitration agreements, Dkt. 28-1, Exhibits C-E to Callaghan Decl.) This provision does not actually state that questions of arbitrability are delegated to the arbitrator.

Furthermore, as explained below, the agreements require courts of competent jurisdiction to determine the enforceability of the PAGA waiver, which is included in the arbitration agreements signed by Plaintiffs Kindel and Camacho. (Paragraph 5 of the Kindel and Camacho arbitration agreements, Dkt. 28-1, Exhibits A-B to Callaghan Decl.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

also concerned with whether there something in the arbitration agreement – **such as the fact of more than one unlawful provision** – which suggested that the party in the superior bargaining position as trying to impose arbitration not as an alternative to litigation but rather as an inferior forum.") (emphasis added).

As set forth below, Twitter's arbitration agreements are both procedurally and substantively unconscionable.

> **1. The arbitration agreements are procedurally unconscionable**

Twitter's arbitration agreements are procedurally unconscionable for at least three reasons.

**First**, courts have held that where an arbitration agreement fails to provide rules of an arbitration forum that will govern the dispute, there is a degree of procedurally unconscionability. See Carbajal, 245 Cal. App. 4th at 244. The version of Twitter's arbitration agreement that Plaintiffs Kindel and Camacho signed (Dkt. 28-1, Exhibits A and B to Callaghan Decl.) do not select an arbitral forum **at all**. As courts have held, the parties are denied access to a neutral forum where an arbitration agreement fails to specify what set of rules will govern the arbitration proceeding. See e.g., id. (holding that an arbitration agreement's degree of oppression for the purposes of unconscionability is increased when an employer not only fails to provide rules "but also fails to clearly identify which rules will govern so the employee could locate and review them"); Carlson v. Home Team Pest Defense, Inc., 239 Cal. App. 4th 619, 633 (2015) (holding that the failure to disclose an arbitration disputes "applicable rules also constitute[s] surprise" supporting a finding of unconscionability); Raglani v. Ripken Prof. Baseball, 939 F. Supp. 2d 517, 525 (D. Md. 2013); Caire v. Conifer Value Based Care LLC, 982 F. Supp. 2d 582, 595 (D. Md. 2013). For example, in Raglani, 939 F. Supp. 2d at 525, the arbitration agreement simply stated that the rules of the arbitration would be subject to the FAA. The court found this language to be insufficiently vague because the FAA does not contain any arbitration rules. Id. According to the court, "the lack of any neutral arbitrator selection mechanism,

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

combined with this vagueness [about the arbitration rules], casts serious doubt that the agreement would guarantee a fair process by which to arbitrate [plaintiff's] claims." Id. Thus, because Plaintiff Kindel's and Camacho's agreement failed to specify arbitral rules that would apply they are procedurally unconscionable. While the agreements signed by Plaintiffs De Caires, Pan, and Cornet (Dkt. 28-1, Exhibits C-E to Callaghan Decl.) have selected JAMS as the arbitral forum, Twitter has not included copies of the JAMS Employment Rules of Arbitration in the agreement, meaning that those arbitration agreements are likewise procedurally unconscionable. See Carbajal, 245 Cal. App. 4th at 244.

**Second**, the agreements are not sufficiently clear that Twitter must pay the cost of the arbitration and arbitrator's fees. Although each of the agreements state that "in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees," (Paragraph 6 of arbitration agreements, Dkt. 28-1, Exhibits A-E to Callaghan Decl.), this language does not make clear that such is the case here. In OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 128 (2019), the California Supreme Court held that similar language contributed to procedural unconscionability:

> Although the agreement anticipates that the "controlling case law" of Armendariz would prevail over the statutory default rule, One Toyota's obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities. . . . This example illustrates the difficulty a layperson would have in deciphering key terms . . . . Under these circumstances, Kho's signature attesting to have read and understood the agreement appears formulaic rather than informed.

Here, Plaintiffs would have no way to know at the time that they executed the agreement whether they would be required to cover the costs of arbitration fees and the fees of the arbitrator – the question with respect to costs is whether the agreement was unconscionable **at the time it was signed.** See Lanigan v. City of Los Angeles, 199 Cal. App. 4th 1020, 1035 (2011) ("The court determines unconscionability with reference to the time the contract is entered into.").

**Third**, the agreements have a degree of economic coercion, "[a]s the [California] Supreme Court repeatedly has explained, 'in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute . . . ." Carbajal, 245 Cal. App. 4th at 243 (quoting Armendariz, 24 Cal. 4th at

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

115). Here, the arbitration agreements accompanied Twitter's offer employment to the employees. See Offer Letters and Arbitration Agreements, Dkt. 28-1, Exhibits A-E to Callaghan Decl. While Twitter points out that the arbitration agreements contained an option to opt out of the agreement, such a provision does not inoculate an employee against the economic pressure to accept the agreement when trying to avoid drawing the ire of a new employer. See Gentry v. Superior Court, 42 Cal. 4th 443, 471 (2007) ("Given the inequality between employer and employee and the economic power that the former wields over the latter . . . it is likely that [the defendant's] employees felt at least some pressure not to opt out of the arbitration agreement.") (citing Armendariz, 24 Cal. 4th at 115) Duran v. Discover Bank, 2009 WL 1709569, at *5 (Cal. Ct. App. June 19, 2009) ("[E]ven a contract with an opt-out provision can be a contract of adhesion."). Moreover, the offer letters Twitter provided to Plaintiffs Kindel, Camacho, and De Caires did not even mention that the employees could opt out of the arbitration agreement: "We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy. A copy of the Dispute Resolution Policy is enclosed with this letter." (Paragraph 14 of the Offer Letters Provided to Plaintiffs Kindel, Camacho and Decaires, Dkt. 28-1, Exhibits A-C to Callaghan Decl.) With respect to those Plaintiffs, it is not until near the end of the arbitration agreement itself that the ability to opt out is even mentioned. At bottom, the economic coercion inherent in the employment relationship supports a finding of procedural unconscionability.

### 2.      The arbitration agreements are substantively unconscionable

Twitter's arbitration agreements also contain significant elements of substantive unconscionability. Substantive unconscionability focuses on the harshness and one-sidedness of a contract's substantive terms. See Roe v. SFBSC Mgmt., LLC, 2015 WL 930683, at *6 (N.D. Cal. Mar. 2, 2015) (citing Correa v. Firestone Complete Auto Care, 2013 WL 6173651, at *3

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

(N.D. Cal. Nov. 25, 2013); <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486–87 (1982)).

    **<u>First</u>**, the agreements include a confidentiality provision stating that "neither a party nor an Arbitrator may disclose the existence, content, or result of any arbitration hereunder without the prior written consent of all parties." (Paragraph 7 of the arbitration agreements, Dkt. 28-1, Exhibits A-E to Callaghan Decl.) Courts in California and elsewhere around the country have held that confidentiality in arbitration agreements in the employment context are substantively unconscionable, because such clauses provide employers unfair advantages. <u>See, e.g.</u>, <u>Ramos v. Superior Court</u>, 28 Cal. App. 5th 1042 (2018) (holding in an employment discrimination case that confidentiality "unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights . . ."); <u>McKee v. AT & T Corp.</u>, 164 Wash. 2d 372, 398, 191 P.3d 845, 858 (2008), abrogated on other grounds by <u>AT & T Mobility LLC v. Concepcion</u>, 563 U.S. 333 (2011) (explaining that "[c]onfidentiality unreasonably favors repeat players such as AT & T" and "secrecy conceals any patterns of illegal or abusive practices" and "hampers plaintiffs in learning about potentially meritorious claims and serves no purpose other than to tilt the scales in favor of AT & T" while "[m]eanwhile, consumers are prevented from sharing discovery, fact patterns, or even work product, such as briefing, forcing them to reinvent the wheel in each and every claim, no matter how similar") (internal citations omitted)).[4]

---

[4]     <u>See also, e.g.</u>, <u>Schnuerle v. Insight Commc'ns Co., L.P.</u>, 376 S.W.3d 561, 578 (Ky. 2012) (observing that while "it is well-established that confidentially agreements may be enforceable to protect, for example, personal information or trade secrets; in situations like here, where such concerns are not present, the provision is wholly one-sided, protecting only the company that prepared the contract with no reciprocal benefit to the consumers"); <u>Sprague v. Houseld Intern.</u>, 473 F. Supp. 2d 966, 975 (W.D. Mo. 2005) (finding confidentiality provision in an arbitration agreement unconscionable, because "[a]lthough it appears that [defendant] has had related disputes with consumers in the past, the Plaintiffs will not have access to the details of those proceedings – for example, to see how fees and waiver requests have been handled or to determine whether an agreement to arbitrate is even wise, given the track record of [defendant's] success during arbitration"); <u>Luna v. Household Finance Corp. III</u>, 236 F. Supp. 2d 1166, 1180 (W.D. Wash. 2002) ("a lack of public disclosure may systematically favor companies over individuals" and "the unavailability of arbitral decisions also may prevent potential plaintiffs from locating the information necessary to build a case of intentional misconduct or to establish a pattern or practice of discrimination by particular companies") (internal quotations omitted). <u>See also</u> <u>Hoober v. Movement Mortgage, LLC</u>, 382 F. Supp. 3d 1148, 1160-61 (W.D. Wash.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

Indeed, in another recent case, a court evaluated a similar arbitration agreement and noted that "[i]n this case, the Agreement requires 'all disputes, claims or causes of action' to be resolved 'by final, binding, and <u>confidential arbitration</u>.'" <u>Balan</u>, 2019 WL 2635903, at *3 emphasis in original) (rev'd on other grounds in <u>Balan v. Tesla, Inc.</u>, 840 Fed. Appx. 303, 304-05 (9th Cir. 2021)). The court concluded that this provision was substantively unconscionable, noting that "[a]lthough facially neutral, confidentiality provisions usually favor companies over individuals . . . ," and that "[t]his broad confidentiality clause leads to the harsh, one-sided result that Tesla may publicly attack Plaintiff while she may not publicly defend herself." <u>Id.</u> (quoting <u>Ting v. AT&T</u>, 319 F.3d 1126, 1151 (9th Cir. 2003)).

Although the <u>Balan</u> court analyzed the agreement under Washington law rather than California law, California law requires the same result.  In <u>Ramos</u>, the California Court of Appeal examined the Washington case law and explained that the concerns regarding confidentiality are equally salient for the purposes of California law – that it would give the employer an unfair advantage, would inhibit employees' ability to engage in informal discovery that would undergird more formal discovery efforts, and that it would make it more difficult for employees to accrue evidence of companywide malfeasance. See <u>Ramos</u>, 28 Cal. App. 5th at 1066-67. <u>See also</u> <u>Storms v. Paychex, Inc.</u>, 2022 WL 2160414, at *15-16 (C.D. Cal. Jan. 14, 2022) (holding that a broad confidentiality provision was substantively unconscionable "particularly in the context of an employer-employee relationship"); <u>DeGraff v. Perkins Coie</u>

_____

2019) (following <u>McKee</u> and holding the confidentiality provision to be substantively unconscionable); <u>Narayan v. The Ritz-Carolton Development Co., Inc.</u>, 140 Hawai'i 343, 355 (2017) (finding that a confidentiality provision in an arbitration agreement was unconscionable, because "[i]n addition to detrimentally affecting the plaintiffs' ability to investigate their claims, the confidentiality provision insulates the defendants from potential liability"); <u>Kinkel v. Cingular Wireless LLC</u>, 223 Ill.2d 1, 42 (Ill. 2006) (finding that confidentiality provision "burden's an individual's ability to vindicate statutory claims" explaining, "the strict confidentiality clause that prohibits Cingular, the claimant, and the arbitrator from disclosing 'the existence, content, or results of any arbitration,' means that even if an individual claimant recovers on the illegal-penalty claim, neither that claimant nor her attorney can share that information with other potential claimants," and "Cingular, however, can accumulate experience defending these claims").

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

LLP, 2012 WL 3074982, at *4 (N.D. Cal. July 30, 2012) ("However, with respect to the confidentiality provision, Plaintiff has made a showing that this provision unfairly benefits Perkins Coie. Perkins Coie has institutional knowledge of prior arbitrations. In contrast, individual litigants, such as Plaintiff, are deprived from obtaining information regarding any prior arbitrations. Thus, Perkins Coie is the only party who would obtain any benefit from this provision without receiving any negative impact in return. Accordingly, the Court finds that the confidentiality provision is substantively unconscionable."). That Twitter's arbitration agreement calls for confidentiality puts Twitter at an unfair advantage and renders the agreement substantively unconscionable.

**Second**, the arbitration agreements signed by Plaintiffs Kindel and Camacho include a waiver of the right to pursue a PAGA representative action. (Paragraph 5 of Kindel and Camacho arbitration agreements, Dkt. 28-1, Exhibits A and B to Callaghan Decl.) The agreements state that "[t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ("Private Attorney General Waiver"). See id.

It is well-settled law that such PAGA waivers in arbitration agreements are illegal and unenforceable. See Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 384-88 (2014); Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425, 435 (9th Cir. 2015). As the Ninth Circuit explained in Sakkab, 803 F.3d at 430, "pre-dispute agreements to waive PAGA claims are unenforceable under California law," because "allowing employees to waive the right to bring PAGA actions would disable one of the primary mechanisms for enforcing the Labor Code," and that "because such an agreement has as its object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law, it is against public policy." Id. (citing Iskanian, 59 Cal. 4th at 383). Furthermore, enforcing such an agreement would violate California Civil Code § 3513, which "codifies the general principle that a law established for a public reason may not be contravened by private agreement." Id. at 431. Indeed, "agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor

11

Code and in receiving the proceeds of civil penalties used to deter violations." Id. (quoting

Iskanian, 59 Cal. 4th at 383. The Ninth Circuit has held that this Iskanian rule is a "generally

applicable" contract defense, which is not preempted by the FAA. Id. at 432-33. The inclusion of

the PAGA waiver contributes to the substantive unconscionability of the arbitration agreements.

And importantly, the arbitration agreements state that the question of whether the Private

Attorney General Waiver is unconscionable "may be determined only by a court of competent

jurisdiction and not by an arbitrator." (Paragraph 5 of Kindel and Camacho arbitration

agreements, Dkt. 28-1, Exhibits A and B to Callaghan Decl.) Further, the agreement states that if

a court finds that such a waiver is unenforceable, "[i]n such instances and where the claim is

brought as a private attorney general, such private attorney general claim must be litigated in a

civil court of competent jurisdiction." (Paragraph 5 of Kindel and Camacho arbitration

agreements, Dkt. 28-1, Exhibits A and B to Callaghan Decl.)

   Here, Plaintiffs Camacho and Cornet[5] have already submitted to the California Labor &

Workforce Development Agency ("LWDA"), detailing their California claims against Twitter on

November 16, 2022, and intend to move (following the requisite waiting period) to amend the

complaint to assert a representative claim seeking civil penalties against Twitter under the

---

[5] Plaintiff Cornet's arbitration agreement contains different language that does not purport to waive PAGA claims:

> **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims.

(Plaintiff Cornet arbitration agreement at ¶ 5, Dkt. 28-1, Exhibit E to Callaghan Decl.) (emphasis in original).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

PAGA. Plaintiffs. As such, their anticipated PAGA claims in this matter cannot be compelled to arbitration.[6]

## IV.   CONCLUSION

For the foregoing reasons, and for the reasons articulated in Plaintiffs' Emergency Motion for a Protective Order (Dkt. 7) and Plaintiffs' Reply in support thereof (Dkt. 30), the Court should defer deciding Twitter's Motion to Compel Arbitration and Strike And/Or Dismiss Claims until after it has addressed Plaintiffs' request for a protective order. After the Court has entered a protective order, it should proceed to deny Twitter's Motion to Compel Arbitration and Strike And/Or Dismiss Claims.

---

[6]     Twitter may argue that the Supreme Court's decision in Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906 (2022), renders its arbitration agreement enforceable. In Viking River, the United States Supreme Court held that Iskanian was preempted by the FAA to the extent that it prohibited **individual** PAGA claims from being arbitrated. See Viking River, 142 S. Ct. at 1924. However, the arbitration agreements make no mention of compelling Plaintiffs to arbitrate individual PAGA claims – they address only PAGA *representative* claims. (Paragraph 5 of the Arbitration Agreements, Dkt. 28-1, Exhibits A-E to Callaghan Decl.) Therefore, Viking River is not applicable here. And in any event, the Supreme Court interpreted Iskanian to establish a rule prohibiting the division of PAGA actions into individual actions (which could be arbitrated) and non-individual claims (which could not be arbitrated). See Viking River, 142 S. Ct. at 1924 ("We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate."). However, and importantly, Viking River also concluded that Iskanian was not preempted to the extent that it precludes an arbitration agreement from including a "wholesale waiver of PAGA claims." Id. at 1924-25. Nonetheless, the Supreme Court concluded that the representative aspect of the claim had to be dismissed from Court because the plaintiff lacked standing to advance a representative claim in the absence of also asserting an individual claim in court. Id. at 1925. However, it is now an open question of law in California whether Plaintiffs could then still pursue the *representative* aspect of their claims in court. This question is currently pending before the California Supreme Court in Adolph v. Uber Technologies, S274671, Order Granting Review (Cal. Aug. 1, 2022). Therefore, the anticipated addition of these PAGA claims also casts in further doubt the specter that this entire case could ultimately be dismissed (or stayed) by virtue of Twitter's motion to compel arbitration. Indeed, in her Viking River concurrence, Justice Sotomayor expressly acknowledged that the Viking River court may have interpreted California law incorrectly on this point, and that the state courts are free to correct this non-binding mischaracterization. See 142 S. Ct. at 1925-26 (Sotomayor, J., concurring).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

Dated:        December 5, 2022

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that on December 5, 2022, a true and accurate copy of this document was served on Defendant Twitter, Inc. via filing on the Court's CM/ECF system.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLAIMS