SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:      (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiffs Emmanuel Cornet,*
*Justine De Caires, Grae Kindel, Alexis Camacho,*
*Jessica Pan, Emily Kim, Miguel Barreto,*
*and Brett Menzies Folkins, on behalf of*
*themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>TWITTER, INC.<br><br>          Defendant. | Case No. 3:22-cv-06857<br><br>**PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE AND/OR MOTION TO DISMISS**<br><br>Date:          February 23, 2023<br>Time:          10:00 AM, PST<br>Place:         Courtroom 11<br>Judge:        Hon. James Donato |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ...................................... 3

III. ARGUMENT.................................................................................................. 5

      A.   The Court Should Not Transfer This Case ......................................... 5

      B.   The Court Should Deny Twitter's Motion to Dismiss Under Rule 12(b)(6).......... 9

            1.   Legal Standard ......................................................................... 9

            2.   The Court should not dismiss Plaintiffs' federal and California WARN Act claims (Counts IV and V), as well as Plaintiffs' California Labor Code Claim (Count VI), but instead allow Plaintiffs to substitute into their complaint one or more new lead plaintiffs who can advance those claims...................................... 9

            3.   The Court should deny Twitter's premature request to dismiss Plaintiffs' class allegations ..................................................... 10

IV.  CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Aguilar v. Boulder Brands, Inc.,
       2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) .................................................. 10

Akaosugi v. Benihana Nat. Corp.,
       282 F.R.D. 241 (N.D. Cal. 2012) ...................................................................... 13

Amparan v. Plaza Home Mortgage, Inc.,
       2009 WL 2776486 (N.D. Cal. Aug. 28, 2009) ................................................... 2

Bates v. Leprino Foods Co.,
       2022 WL 3371584 (E.D. Cal. Aug. 16, 2022) ................................................. 10

Bell Atl. Corp. v. Twombly,
       550 U.S. 544 (2007) ............................................................................................ 9

Bromlow v. D & M Carriers, LLC,
       438 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................................. 8

Campbell v. Facebook Inc.,
       315 F.R.D. 250 (N.D. Cal. May 18, 2016) ...................................................... 14

Chavez v. Wal-Mart Stores, Inc.,
       2014 WL 12591252 (C.D. Cal. June 2, 2014) ................................................. 14

Clerkin v. MyLife.Com,
       2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) ................................................ 10

Coffelt v. Kroger Co.,
       2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ................................................ 15

Credit Suisse Securities (USA) LLC v. Hilliard,
       469 F. Supp. 2d 103 (S.D.N.Y. 2007) ........................................................... 1, 8

Cruz v. Sky Chefs, Inc.,
       2013 WL 1892337 (N.D. Cal. May 6, 2013) ............................................. 10, 11

Curwood Inc. v. Prodo-Pak Corp.,
       2008 WL 644884 (E.D. Wis. March 7, 2008) .............................................. 1, 8

Deposit Guaranty Nat'l Bank v. Roper,
       445 U.S. 326, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980) .................................. 11

DeSoto v. Yellow Freight Sys., Inc.,
       957 F.2d 655 (9th Cir. 1992) ........................................................................... 12

ii
PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

Doninger v. Pac. Nw. Bell, Inc.,
   564 F.2d 1304 (9th Cir. 1977) ................................................................... 11

eBay Inc. v. Digital Point Solutions, Inc.,
   608 F. Supp. 2d 1156 (N.D. Cal. 2009) ...................................................... 6

Gillibeau v. City of Richmond,
   417 F.2d 426 (9th Cir. 1969) ................................................................... 11

Gray v. Golden Gate Nat. Recreational Area,
   279 F.R.D. 501 (N.D. Cal. 2011) ............................................................ 14

Gulf Oil Corp. v. Gilbert,
   330 U.S. 501 (1946) ................................................................................... 6

Harland Clarke Holdings Corp. v. Milken,
   997 F. Supp. 2d 561 (W.D. Tex. 2014) ...................................................... 6

In re Wal-Mart Stores, Inc. Wage and Hour Litig.,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................ 11, 12

James v. Uber Technologies Inc.,
   338 F.R.D. 123 (N.D. Cal. 2021) ........................................................ 13, 14

Jayson Co. v. Vertical Market Software,
   2006 WL 1374039 (D.N.J. May 18, 2006) ............................................. 1, 8

Jue v. Costco Wholesale Corp.,
   2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ............................................ 12

Khanal v. San Francisco Hilton, Inc.,
   681 Fed. Appx. 624 (9th Cir. 2017) ............................................................ 8

King v. National General Insurance Co.,
   2021 WL 2400899 (N.D. Cal. June 11, 2021) ....................................... 2, 12

Lou v. Belzberg,
   834 F.2d 730 (9th Cir. 1987) ................................................................... 1, 5

Marlo v. United Parcel Serv.,
   639 F.3d 942 (9th Cir. 2011) ................................................................... 11

Nguyen v. Barnes & Nobel, Inc.,
   763 F.3d 1171 (9th Cir. 2014) ................................................................... 6

Ocegueda on behalf of Facebook v. Zuckerberg,
   526 F. Supp. 3d 637 (N.D. Cal. 2021) ....................................................... 9

Ogola v. Chevron Corp.,
        2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ...................................... 3, 11, 12

Ott v. Mortgage Investors Corp. of Ohio, Inc.,
        65 F. Supp. 3d 1046 (D. Or. 2014) ................................................................ 15

Parducci v. Overland Sols, Inc.,
        2019 WL 3220282 (N.D. Cal. July 17, 2019)................................................ 11

Paulsen v. CNF Inc.,
        559 F.3d 1061 (9th Cir. 2009) ......................................................................... 7

Perkins v. LinkedIn Corp.,
        53 F. Supp. 3d 1190 (N.D. Cal. June 12, 2014)............................................. 15

Phillips v. Ford Motor Co.,
        435 F.3d 785 (7th Cir. 2006) ......................................................................... 10

Piper Aircraft Co. v. Reyno,
        454 U.S. 235 (1981).................................................................................... 1, 5

Rivera v. County of San Bernardino,
        2017 WL 5643148 (C.D. Cal. May 8, 2017) ............................................... 1, 5

Socialcom, Inc. v. Arch Ins. Co.,
        2020 WL 6815039 (C.D. Cal. July 7, 2020).................................................... 9

Stickrath v. Globalstar, Inc.,
        2008 WL 5384760 (N.D. Cal. 2008) ............................................................. 10

TAAG Linhas Aareas de Angola v. Transamerica Airlines, Inc.,
        915 F.2d 1351 (9th Cir. 1990) ......................................................................... 6

TopDevz, LLC v. LinkedIn Corp.,
        2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ................................................. 12

U.S. Small Bus. Ass'n. v. Chimicles,
        447 F.3d 207 (3d Cir. 2006............................................................................ 1, 8

Vinole v. Countrywide Home Loan, Inc.,
        571 F.3d 935 (9th Cir. 2009) ...................................................................... 2, 11

Volks USA, Inc. v. A2 Hosting, Inc.,
        2016 WL 6808113 (C.D. Cal. Nov. 16, 2016)................................................. 6

Wal-Mart Stores, Inc. v. Dukes,
        564 U.S. 338 (2011)....................................................................................... 14

<u>Walters v. Famous Transports, Inc.</u>,
    488 F. Supp. 3d 930 (N.D. Cal. 2020) ................................................................ 6

<u>Weiner v. Dannon Co., Inc.</u>,
    255 F.R.D. 658 (C.D. Cal. 2009) ...................................................................... 10

<u>Whittlestone, Inc. v. Handi–Craft Co.</u>,
    618 F.3d 970 (9th Cir. 2010) ........................................................................... 11

**Statutes**

California Labor Code §201 ............................................................................... 2, 5

California Labor Code §203 ............................................................................... 2, 5

California Labor Code §227.3 ............................................................................ 2, 5

California WARN Act,
    Cal. Lab. Code § 1400 *et seq.* .............................................................. passim

Declaratory Judgment Act,
    28 U.S.C. §§ 2201 ........................................................................................ 5, 8

Worker Adjustment and Retraining Notification Act,
    29 U.S.C. § 2101 *et seq.* (the "WARN Act") ......................................... passim

**Other Authorities**

Manual for Complex Litigation,
    Fourth § 21.222 ........................................................................................... 14

**Rules**

Fed R. Civ. P. 8(a)(2) ......................................................................................... 9

Fed. R. Civ. P. 21 ............................................................................................... 9

Fed. R. Civ. P. 23 ("Rule 12") ................................................................... passim

Fed. R. Civ. P. 23 ("Rule 23") .................................................... 10, 11, 13, 14

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

I.      **INTRODUCTION**

This case is brought on behalf of Twitter employees who have been laid off in the wake of the purchase of the company by multi-billionaire Elon Musk.[1]

Twitter dedicates the majority of its Motion to Transfer Venue and/or Motion to Dismiss to arguing that the Court should transfer this entire action to the United States District Court for the District of Delaware, because the merger agreement that effectuated Musk's acquisition of Twitter contained a forum selection clause. There is no reason for the Court to transfer this entire action. Only one of the seven counts that Plaintiffs have alleged relies on the merger agreement. Specifically, in Count II, Plaintiffs have alleged that Twitter breached the merger agreement and that Plaintiffs, as third-party beneficiaries to the agreement, are entitled to enforce that agreement. Here, given the fact that Twitter argues that the merger agreement expressly disclaims third-party beneficiary status, the Court cannot transfer the case at this stage. The Court would have to first determine whether Plaintiffs had third-party beneficiary status after discovery. Moreover, even if the forum selection clause is enforceable with respect to Count II, it cannot be wielded to defeat otherwise the strong presumption in favor of Plaintiffs' chosen forum. See Rivera v. County of San Bernardino, 2017 WL 5643148, at *3 (C.D. Cal. May 8, 2017) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 265-66 (1981); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)). Indeed, courts have routinely declined to afford forum selection clauses the excessively broad reach for which Twitter advocates here. See, e.g., U.S. Small Bus. Ass'n. v. Chimicles, 447 F.3d 207, 210-11 (3d Cir. 2006); Credit Suisse Securities (USA) LLC v. Hilliard, 469 F. Supp. 2d 103, 107-08 (S.D.N.Y. 2007); Curwood Inc. v. Prodo-Pak Corp., 2008 WL 644884, at *6 (E.D. Wis. March 7, 2008); Jayson Co. v. Vertical Market Software, 2006 WL 1374039, at *5 (D.N.J. May 18, 2006). Rather than transferring this matter as a whole,

---

[1]     On January 13, 2023, the Court granted Twitter's motion to compel arbitration (Dkt. 52). The plaintiffs who signed arbitration agreements (Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan) have filed or are in the process of filing arbitration demands. They recognize that their claims are stayed now in this Court, and they will proceed in arbitration. They will raise issues or claims in this Court if there are issues with them being able to proceed with their claims in arbitration.

the Court should simply sever Count II and transfer it to the District of Delaware, or alternatively, dismiss Count II without prejudice.

Next, Twitter argues that the Court should dismiss Plaintiffs' claims alleging violations of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") (Count IV), California WARN Act, Cal. Lab. Code § 1400 *et seq.* (Count V), and the California Labor Code §§ 201, 203, and 227.3) (Count VI). As Twitter points out, the Plaintiffs who were advancing those claims have had their claims compelled to arbitration. Nevertheless, the Court should defer dismissing those claims from this class action complaint and instead allow Plaintiffs to substitute in one or more additional Plaintiffs who have opted out of Twitter's arbitration agreement (or are otherwise not bound by the agreement) and thus can advance those claims on behalf of the putative class. Courts have routinely permitted the amendment of complaints to add named plaintiffs in similar circumstances in order to continue to advance the rights of absent class members, as this Court did in granting leave to file the Second Amended Complaint. See also Amparan v. Plaza Home Mortgage, Inc., 2009 WL 2776486, *2 (N.D. Cal. Aug. 28, 2009).

Finally, Twitter argues that Plaintiffs' class action allegations should be dismissed or stricken, because they were insufficiently pled. Twitter's argument is premature and unsupported by law. Courts in the Ninth Circuit have taken an "overwhelmingly negative" view of motions challenging the sufficiency of class allegations at the Rule 12 stage. King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021). As the Ninth Circuit has explained, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole v. Countrywide Home Loan, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted). Thus, courts only dismiss class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL 4145408,

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

at *2 (N.D. Cal. Aug. 21, 2014). Such is not the case here. Plaintiffs have plausibly alleged that Twitter is liable to its employees on a classwide basis,[2] and Twitter cannot misuse Rule 12 to launch a preemptive effort to defeat class certification.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this class action lawsuit on November 3, 2022. With leave of the Court, Plaintiffs filed the current complaint (Dkt. 40) on December 9, 2022.

As Plaintiffs have alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce. (Second Am. Compl. ¶¶ 2, 33, Dkt. 40.) In April 2022, after it was announced that Elon Musk would be purchasing Twitter, Twitter employees raised concerns regarding Twitter regarding the company's policies following the acquisition, and how they would be impacted by possible layoffs. (Second Am. Compl. ¶¶ 23-24, Dkt. 40.) In order to allay employees' concerns, and in an effort to prevent employees from leaving Twitter to work at other companies, Twitter made various promises to employees, including that: (1) if there were layoffs within a year of the acquisition, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided; and (2) employees would be able to continue working remotely for at least a year after Musk's acquisition. (Second Am. Compl. ¶¶ 25-28, Dkt. 40.) Twitter communicated these promises orally (including at periodic "all-hands" meetings) and in writing by Twitter's management. (Second Am. Compl. ¶¶ 25-28, Dkt. 40.)

Twitter made these promises in consideration for the employees' continued willingness to work for Twitter, and many employees, including the named Plaintiffs, relied on these promises and maintained their employment at Twitter, rather than seeking job opportunities elsewhere. (Second Am. Compl. ¶¶ 23-31, 42-43 Count I, Dkt. 40.) After Musk completed his acquisition of Twitter in late October 2022, he quickly reneged on these promises. (Second Am. Compl. ¶¶ 32-

---

[2]      As explained in note 10 *infra*, should the Court disagree, Plaintiffs should be permitted leave to amend their complaint to remedy any issues the Court may have with the current complaint.

41, Dkt. 40.) First, Twitter initiated a mass layoff and announced that the laid off employees would receive less favorable benefits and severance than Twitter had previously provided.[3] (Second Am. Compl. ¶¶ 33, 39-40, Dkt. 40.) Second, Musk announced that he was ending Twitter's remote work policy that employees who were not laid off would need to begin working at company offices, with few exceptions. (Second Am. Compl. ¶ 34, Dkt. 40.) Plaintiffs allege that, in making these promises to its employees in consideration of their continuing to work for Twitter, Twitter entered a contract with its employees, which it then breached when it reneged on the promises. (Second Am. Compl., Count I, Dkt. 40.) Plaintiffs also allege that Twitter is liable to its employees under the doctrine of promissory estoppel, since they relied on Twitter's promises to their detriment. (Second Am. Compl., Count III, Dkt. 40.)

Separately, Plaintiffs allege that they are third-party beneficiaries of the merger agreement through which Elon Musk purchased Twitter. (Second Am. Compl. ¶ 29, Count II, Dkt. 40.) The merger agreement stated that for at least a year after the acquisition became effective, Twitter would "provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period that are no less favorable than those applicable to the Continuing Employee" prior to the acquisition. (Second Am. Compl. ¶ 29, Dkt. 40.) Plaintiffs allege that Twitter breached this provision of the merger agreement and is liable to its employees as third-party beneficiaries. (Second Am. Compl., Count II, Dkt. 40.)

Plaintiffs have also alleged that Twitter did not provide 60 days advance written notice to all employees who were laid off, in violation of the federal WARN Act and, for employees who worked out of California, the California WARN Act. (Second Am. Compl. ¶ 35-37, Counts IV and V, Dkt. 40.) Plaintiffs also alleged that Twitter did not provide all terminated employees with their full final pay, accrued benefits, and expense reimbursement immediately upon

---

[3]      Twitter announced it would provide laid off employees one month's pay as severance. (Second Am. Compl. ¶ 39, Dkt. 40.) Twitter's previous policy had provided for at least two months' pay (or more depending on the employee's length of service), bonus plan compensation, cash value of equity that would have vested within three months from the separation date, and a cash contribution for health care continuation. (Second Am. Compl. ¶ 40, Dkt. 40.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

termination, as required by Cal. Lab. Code §§ 201, 203, and 227.3 (Second Am. Compl. ¶ 38, Count VII, Dkt. 40).[4]

On January 13, 2023, the Court compelled the claims of Plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan to arbitration. (Order Re Arbitration, Dkt. 52.) The claims of Plaintiffs Emily Kim, Miguel Barretto, and Brett Folkins will now proceed in this case in court, as those Plaintiffs opted out of Twitter's arbitration agreement. (Second Am. Compl. ¶¶ 14-16, Dkt. 40.)

## III.   ARGUMENT

### A.   The Court Should Not Transfer This Case

Twitter dedicates the bulk of its brief to arguing that the Court should transfer the entire case to the United States District Court for the District of Delaware, because Twitter's merger agreement that effectuated Musk's purchase of Twitter includes a mandatory forum selection provision. While Plaintiffs maintain that it is inappropriate to transfer Count II of Plaintiffs' Second Amended Complaint alleging that Twitter is liable to Plaintiffs (as third-party beneficiaries) for its breach of the merger agreement, it is beyond doubt that the Court should not transfer any other claim in this case, since those counts are not predicated on the merger agreement. Nevertheless, Twitter insists that this entire action must be transferred to the District of Delaware. Twitter's position should be rejected.

As Twitter cannot contest, "[t]here is a strong presumption in favor of a plaintiff's forum." Rivera, 2017 WL 5643148, at *3 (citing Piper Aircraft Co., 454 U.S. at 265-66; Lou, 834 F.2d at 739). Indeed, "where the relevant factors do not strongly favor transfer, the plaintiff's choice of forum should rarely be disturbed." Volks USA, Inc. v. A2 Hosting, Inc.,

---

[4]    Finally, Plaintiffs brought a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, seeking a declaratory judgment and an injunction prohibiting Twitter from soliciting employees to sign separation agreements that release their claims asserted by Plaintiffs without first informing them of their rights under the law and of the pendency of this case. (Second Am. Compl., Count VII.) This claim was effectively adjudicated through the Court's granting of Plaintiffs' Emergency Motion for a Protective Order on December 14, 2022 (Dkt. 42).

2016 WL 6808113, at *5 (C.D. Cal. Nov. 16, 2016) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946)).

The forum selection clause in Twitter's merger agreement states in relevant part that each party to the agreement "(i) expressly and irrevocably submits to the exclusive personal jurisdiction of the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware in the event any dispute arises out of this Agreement . . . ," and "(iii) agrees that it will not bring any action relating to this Agreement . . . in any court other than [the federal and state courts] of Delaware." (Merger Agreement § 9.10, Dkt. 46-2 at *71).

First, it is premature for the Court to decide whether the third party beneficiary claim should be transferred. Twitter maintains that the merger agreement includes an express disclaimer of Plaintiffs' status as third-party beneficiaries. See Twitter's Opposition to Plaintiffs' Motion for a Protective Order at 12, Dkt. 20. If Twitter is correct, then the merger agreement's forum selection clause cannot be applied to Plaintiffs here. The cases that Twitter relies on are off point because the parties seeking to enforce the forum selection agreements in those cases did not dispute the opposing parties' status as third-party beneficiaries.[5] Here, on the other hand, Twitter takes the inconsistent position that Plaintiffs are not third-party beneficiaries but are

_____

[5]     For example, Twitter relies on Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1179 (9th Cir. 2014), but in that case the defendant argued that the plaintiff was a third party beneficiary of Barnes and Nobel's terms of use, which contained an arbitration agreement. The Court held that plaintiff was not in fact a third-party beneficiary and refused to assume that he was a primary party the terms of use, because that question "lie[d] at the heart" of the dispute. Id. at 1179-80. Likewise, Twitter relies on Walters v. Famous Transports, Inc., 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020), but that case did not concern a breach of contract at all. Instead, the plaintiffs brought wage and hour claims that relied on the function of an operating agreement between two defendants to establish a joint employer theory. Defendants successfully argued that the operating agreement's arbitration clause was enforceable as to the plaintiffs, because it was necessary to analyze the operating agreement to answer the joint employer question. Id. at 937. Twitter cites eBay Inc. v. Digital Point Solutions, Inc., 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009); TAAG Linhas Aareas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990); and Harland Clarke Holdings Corp. v. Milken, 997 F. Supp. 2d 561, 585 (W.D. Tex. 2014), but in each of those cases, the parties seeking to enforce the forum selectin provisions unambiguously argued that the opposing parties were third-party beneficiaries.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

nevertheless bound by the agreement's forum selection clause. The Court cannot determine the enforceability of the forum selection clause at this stage, as the question of whether Plaintiffs were third-party beneficiaries to the agreement must first be determined. See Paulsen v. CNF Inc., 559 F.3d 1061, 1079 n.19 (9th Cir. 2009) (declining to decide whether a party was a third-party beneficiary to an agreement until after discovery).

Moreover, regardless of whether the Court believes Plaintiffs are third-party beneficiaries of the merger agreement, there is no reason to transfer any claims other than Count II. Twitter argues that because the forum selection clause covers any action "relating to" the merger agreement, it also covers Counts I (breach of contract) and Count III (promissory estoppel). The breach of contract claim Plaintiffs allege in Count I **does not** rely on the merger agreement. Instead, Plaintiffs allege that Twitter entered into contracts with its employees directly by making promises both orally and in writing that they would "receive the same benefits and severance pay following Elon Musk's purchase of the company, including being able to work remotely (for at least a year following the acquisition), as well as (in the event of layoffs) receiving severance pay and benefits that were no less favorable than what Twitter employees previously received," in consideration "for the employees' continued willingness to work for Twitter." (Second Am. Compl., Count I, Dkt. 40.) Claimant's promissory estoppel claim, Count III, alleges that Twitter is liable because it induced its employees rely on those promises to their detriment. (Second Am. Compl., Count III, Dkt. 40.)

As such Counts I and III of the Second Amended Complaint stand independent from Twitter's merger agreement. The fact that similar promises were made in the merger agreement and outside the merger agreement does not mean that the promises made outside the merger agreement "relate to" the merger agreement.[6] And despite the fact that the forum selection clause

---

[6]        Importantly, Plaintiff's direct breach of contract and promissory estoppel claims concern not only severance payments and benefits but also the continued ability to work remotely. (Second Am. Compl., Counts I and III, Dkt. 40.) Twitter's merger agreement makes no mention of the ability work remotely. See Merger Agreement § 6.9 at *51, Dkt. 46-2.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

employs broad "arising out of" and "related to" language, this language does not render the clause's scope limitless. Indeed, courts have rejected "the argument that a forum selection clause in one contract should be applied to a different, separately negotiated contract lacking such a clause," because such a reading "requires a much broader reading of 'arising out of' and 'related to'" than the law supports. <u>Credit Suisse Securities (USA) LLC</u>, 469 F. Supp. 2d at 107-08; <u>see also</u> <u>U.S. Small Bus. Ass'n.</u>, 447 F.3d at 210-11 (holding that the language "claims or disputes arising out of or relating to this Agreement" contained in one contract does not apply to claims arising out of a second contract); <u>Curwood Inc.</u>, 2008 WL 644884, at *6 ("Here, [plaintiff] is seeking contract, tort, and equitable remedies concerning a separate contract. Those claims do not concern the original agreement between the parties, and [plaintiff] never agreed to litigate them in New Jersey."); <u>Jayson Co.</u>, 2006 WL 1374039, at *5 (refusing to enforce forum selection clause, because "[i]n order to apply the forum selection clause to this dispute, this Court would have to find that the terms of [two separate agreements] are part of a single contract between the parties," which it could not do).[7]

Twitter makes no effort even to argue that Plaintiffs' other claims (the federal WARN Act claim (Count IV), the California WARN Act claim (Count V), the California Labor Code claim (Count VI), and the Declaratory Judgment Act claim (Count VII)) are related to the merger agreement. There is simply no justification to transfer those claims to Delaware.

Thus, rather than running roughshod over Plaintiffs' choice of forum by transferring this entire action to the District of Delaware, if the Court believes that the third-party beneficiary

---

[7]    To support the broad application of the merger agreement's forum selection clause to all of Plaintiffs' claims, Twitter relies only on <u>Bromlow v. D & M Carriers, LLC</u>, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020). That case is dissimilar from this one. In that case, the court enforced a forum selection clause with respect to California wage and hour law statutory claims, because determining the plaintiff's employment status would entail an analysis of the contract that contained the forum selection clause. <u>See id.</u> at 1028. Here, Plaintiffs' claims – other than Count II – do not require any analysis of the merger agreement. <u>Cf.</u> <u>Khanal v. San Francisco Hilton, Inc.</u>, 681 Fed. Appx. 624, 626 (9th Cir. 2017) (claims that are separate from, and do not rely on interpretation of, terms of collective bargaining agreement, can proceed in court and are not subject to CBA's arbitration requirement).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

claim should proceed in Delaware (it should not), the Court should simply sever Count II and transfer that count alone, pursuant to Fed. R. Civ. P. 21. See Socialcom, Inc. v. Arch Ins. Co., 2020 WL 6815039, at *4 (C.D. Cal. July 7, 2020) (enforcing forum selection clause as to some but not all claims in case by severing and transferring the covered claims to the appropriate forum). Alternatively, Plaintiffs request that the Court simply dismiss Count II without prejudice (and they may refile that claim in Delaware). See Ocegueda on behalf of Facebook v. Zuckerberg, 526 F. Supp. 3d 637, 649 (N.D. Cal. 2021) (considering the enforceability of a forum selection clause and holding that the court had discretion to sever the claims covered by the forum selection clause and dismiss the claims that were covered in favor of the other forum).

**B.    The Court Should Deny Twitter's Motion to Dismiss Under Rule 12(b)(6)**

**1.    Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Plaintiffs need only "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. Twombly, 550 U.S. at 555.

**2.    The Court should not dismiss Plaintiffs' federal and California WARN Act claims (Counts IV and V), as well as Plaintiffs' California Labor Code Claim (Count VI), but instead allow Plaintiffs to substitute into their complaint one or more new lead plaintiffs who can advance those claims**

Twitter argues that the Court should dismiss Plaintiffs' federal WARN Act claim (Count IV), California WARN Act claim (Count V), and claim under the California Labor Code (Count VI), because the Plaintiffs advancing those claims had their claims compelled to arbitration.

The Court should deny Twitter's motion to dismiss those class claims and allow Plaintiffs the opportunity to substitute in one or more plaintiffs who can advance those claims. Courts have consistently allowed plaintiffs to substitute in additional lead plaintiffs to serve as

class representatives in class claims (as this Court has already permitted in this matter). <u>See, e.g.</u>, <u>Bates v. Leprino Foods Co.</u>, 2022 WL 3371584, at *1-4 (E.D. Cal. Aug. 16, 2022) (permitting plaintiffs to substitute a new plaintiff in as the class representative); <u>Aguilar v. Boulder Brands, Inc.</u>, 2014 WL 4352169, at *7 (S.D. Cal. Sept. 2, 2014) (quoting <u>Phillips v. Ford Motor Co.</u>, 435 F.3d 785, 787 (7th Cir. 2006) for the proposition that "The courts . . . disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs."); <u>Weiner v. Dannon Co., Inc.</u>, 255 F.R.D. 658, 673 (C.D. Cal. 2009) (granting plaintiff leave to substitute proposed class representative after denying motion to certify the class for lack of typicality); <u>Stickrath v. Globalstar, Inc.</u>, 2008 WL 5384760, at *7 (N.D. Cal. 2008) (where "class representative was removed from the case due to mootness, . .. substitution or intervention may be possible").

Thus, rather than dismissing those claims, the Court should give Plaintiffs an opportunity to substitute in one or more new lead plaintiffs who would not be bound by Twitter's arbitration clause, in order to advance those claims on behalf of the putative class.[8]

### 3.   The Court should deny Twitter's premature request to dismiss Plaintiffs' class allegations

Twitter has taken the unusual step of moving to dismiss Plaintiffs' class allegations in this matter even before the parties have engaged in discovery and before Plaintiffs have moved for class certification. The Court should reject Twitter's premature and incorrect argument.

To begin, courts have routinely held that Rule 12(b)(6) is not an "appropriate vehicle to challenge class allegations." <u>Cruz v. Sky Chefs, Inc.</u>, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013). In <u>Clerkin v. MyLife.Com</u>, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011), the court held that such arguments are properly addressed through Fed. R. Civ. P. 23 ("Rule 23") for procedural reasons:

---

[8]      Plaintiffs' counsel now represent many former Twitter employees who opted out of arbitration, or otherwise appear not to be bound by Twitter's arbitration agreement. These employees are now putative class members in this case. Plaintiffs' counsel are in the process of identifying such potential substitute lead plaintiffs.

First, Rule 12(b)(6) permits a party to assert a defense that the opposing party has failed "to state a claim upon which relief can be granted." A class action is a procedural device, not a claim for relief. *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 331, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980). Second, other Federal Rules of Civil Procedure exist to address impertinent allegations and class certification. Thus, the use of Rule 12(b)(6) to address the same would create redundancies in the Federal Rules. Finally, the standard of review applied to orders granting motions to dismiss differs from that governing orders granting or denying class certification. The Ninth Circuit reviews *de novo* orders dismissing claims pursuant to Rule 12(b)(6). *Whittlestone, [Inc. v. Handi–Craft Co.,*] 618 F.3d 970, 974 [(9th Cir. 2010)]. Grants and denials of class certification, however, are reviewed for abuse of discretion. *Marlo v. United Parcel Serv.,* 639 F.3d 942, 946 (9th Cir. 2011).

As such, the Court should reject Twitter's argument for this procedural reason alone. See also Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969) ("[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim . . . .").

Moreover, even if the Court considers Twitter's Rule 12(b)(6) arguments, they still fail. "[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery." Cruz, 2013 WL 1892337, at *5. Courts only dismiss class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola, 2014 WL 4145408, at *2; see also Parducci v. Overland Sols, Inc., 2019 WL 3220282, at *4 (N.D. Cal. July 17, 2019) (same). "[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole, 571 F.3d at 942 (quoting Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)); see also In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and [] the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"). Courts have gone so far as to decline to address class allegations at the Rule 12 stage, even when the class allegations "are suspicious and may in fact be improper," because "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery . . . ." In re Wal-

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615-16; see also King, 2021 WL 2400899, at *15 (describing the attitude of courts within this District toward motions to strike class allegations at the Rule 12 stage as "overwhelmingly negative").

For its part, Twitter argues that Plaintiffs' allegations lack requisite specificity. Tellingly, however, Twitter fails to cite even a single case dismissing class allegations in circumstances similar to this one. Twitter begins by contending that Plaintiffs fail to define adequately an ascertainable class. However, Plaintiffs' Second Amended Complaint states that the claims are asserted by "all affected Twitter employees across the United States who have lost their jobs as a result of Twitter's mass layoffs." (Second Am. Compl. ¶ 17, Dkt. 40.) Moreover, in their requests for relief, Plaintiffs request relief based on each claim on behalf of similarly situated Twitter employees who suffered the injuries alleged in each Count.[9] (Second Am. Compl. at p. 15, Dkt. 40.) These allegations suffice to define the class at this stage. Twitter's demand for greater specificity is unsupported by law. Indeed, as one court explained, a defendant's argument regarding "ascertainability is best decided at the class certification stage with the benefit of more complete briefing and development of the record." TopDevz, LLC v. LinkedIn Corp., 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3, 2021).[10]

Next, Twitter contends that Plaintiffs have failed to "provide any factual allegations at all related to the requisite FRCP 23(a) factors." (Twitter's Motion at 14, Dkt. 45.) This statement is

---

[9]    Twitter may argue that the Court must at least dismiss Plaintiffs' class allegations with respect to the federal and California WARN Act claims, and the California Labor Code claim, because the Plaintiffs advancing those claims had their claims compelled to arbitration. However, as explained *supra*, Plaintiffs request that the Court allow them to substitute in one or more new lead plaintiffs who can advance those claims in court. Indeed, in Jue v. Costco Wholesale Corp., 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010), the court held in similar circumstances that it was "premature to evaluate the sufficiency of the class allegations in the current complaint" where all claims were dismissed, and "different factual allegations" were specifically anticipated in a future complaint.

[10]    Should the Court disagree with Plaintiffs, the Court should allow them leave to amend in order to supplement their allegations. See Ogola, 2014 WL 4145408, at *2 ("When a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.") (citing DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

patently false. Under Rule 23(a), Plaintiffs must demonstrate:

> (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity" requirement); (2) "there are questions of law or fact common to the class" ("commonality" requirement); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality" requirement); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy" requirement).

James v. Uber Technologies Inc., 338 F.R.D. 123, 129 (N.D. Cal. 2021).

Twitter has conceded that Plaintiffs have alleged that thousands of Twitter employees were affected by Twitter's unlawful conduct, obviously satisfying the numerosity requirement. See Akaosugi v. Benihana Nat. Corp., 282 F.R.D. 241, 253 (N.D. Cal. 2012) ("[C]ourts generally find the numerosity requirement satisfied when a class includes at least forty members."). Moreover, Plaintiffs' counsel already represents more than 50 former Twitter employees who believe they are not bound by the arbitration agreement (either because they opted out of arbitration or have been employed with the company since before it began its arbitration program). Thus, it appears clear at this stage that a sufficient number of class members may exist who are not bound by an arbitration clause, that would support class certification in this case (and discovery should uncover the actual number).

Further, while Twitter posits that Plaintiffs do not allege that any common questions of law and fact apply to putative class members, in fact Plaintiffs have made allegations of Twitter's company-wide conduct that similarly impacted putative class members, for which Twitter could be liable under Plaintiffs' counts of breach of contract, promissory estoppel, violation of the federal and California WARN Acts, and the California Labor Code. (Second Am. Compl. ¶¶ 1-8, 17, Dkt. 40.) As a matter of common sense, the facts and law that will establish liability for this alleged unlawful conduct will apply commonly across all putative plaintiffs. See James, 338 F.R.D. at 131 ("In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must 'affirmatively demonstrate' that their claims depend upon at least one common contention the truth or falsity of which 'will resolve an issue that is central to the validity' of each one of the class members' claims in one stroke.") (internal citation omitted).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

For similar reasons, Plaintiffs' complaint plausibly alleges typicality (which Twitter does not appear to contest). See id. ("Representative claims are 'typical' if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'").

Nor is Twitter correct that Plaintiffs' allegations fail to satisfy adequacy, as there is nothing within the complaint to indicate that Plaintiffs' interests conflict with those of putative class members. Id. ("A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class.").[11]

Finally, Twitter argues that Plaintiffs fail to allege which specific provision under Rule 23(b) they seek to satisfy. However, Plaintiffs' Second Amended Complaint makes clear that Plaintiffs are seeking monetary damages (Second Am. Compl. at p. 15, Dkt. 40), meaning that Rule 23(b)(3) is implicated. See Campbell v. Facebook Inc., 315 F.R.D. 250, 270 (N.D. Cal. May 18, 2016) ("The court . . . finds that, to the extent plaintiffs sought monetary damages, those damages were sought pursuant to a Rule 23(b)(3) class."). Under Rule 23(b)(3), Plaintiffs must demonstrate "the superiority of maintaining a class action and show that the questions of law or fact common to class members predominate over any questions affecting only individual members." James, 338 F.R.D. at 134. At this early stage, Plaintiffs' allegations suffice for the reasons described *supra* with respect to the Rule 23(a) factors. Indeed, courts have held that

---

[11]     Twitter has cited **no** authority to support its argument that class allegations must be pleaded with the specificity Twitter urges in the complaint. Instead, Twitter relies on authorities that concern the class certification stage, rather than the Rule 12 stage. For example, Twitter cites the MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.222 with respect to the requirements of a class definition. However, the sections it cites are located within chapter entitled "Deciding the Certification Motion" and "Certifying a Litigation Class." Similarly, Twitter cites Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011), and Gray v. Golden Gate Nat. Recreational Area, 279 F.R.D. 501, 508 (N.D. Cal. 2011). Both of these cases concern the class certification stage.
        Indeed, Twitter relies on only one Rule 12 decision, Chavez v. Wal-Mart Stores, Inc., 2014 WL 12591252, at *5 (C.D. Cal. June 2, 2014). The issue in Chavez, however, was entirely dissimilar to the arguments that Twitter makes here. In Chavez, the plaintiff lacked standing to make the statutory antitrust claims at issue in the case and instead sought to invoke standing from "absent class members who are statutorily authorized to sue." Id. at *4. Because no set of facts would permit the plaintiff to state a claim under those statutes, the claims were dismissed. Chavez had nothing to do with how specific class allegations must be at the pleading stage.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

because "predominance requires a qualitative assessment," such "predominance questions are, by their nature, ill-suited to resolution on a motion to strike." <u>Ott v. Mortgage Investors Corp. of Ohio, Inc.</u>, 65 F. Supp. 3d 1046, 1067 (D. Or. 2014) (quoting <u>Perkins v. LinkedIn Corp.</u>, 53 F. Supp. 3d 1190, 1221-22 (N.D. Cal. June 12, 2014)). Likewise, courts have held that "to the extent [a defendant's] Motion to Strike is grounded in . . . the superiority of classwide adjudication . . . , these arguments are better resolved at the class certification stage." <u>Coffelt v. Kroger Co.</u>, 2017 WL 10543343, at *10 (C.D. Cal. Jan. 27, 2017).

Twitter cannot overcome the mountain of authority making clear that the sufficiency of class allegations is not to be tested through a Rule 12(b)(6) motion to dismiss, and therefore its motion should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court should not grant Twitter's Motion to Transfer/Dismiss. The Court cannot decide the transfer question until it determines whether Plaintiffs were third-party beneficiaries of Twitters' merger agreement. Moreover, even if the Court believes that Count II must be prosecuted in Delaware, the Court should simply sever and transfer only Count II of the Complaint to the District of Delaware -- or, in the alternative, dismiss Count II without prejudice. The remainder of the claims in the Second Amended Complaint should remain before this Court.

With respect to Twitter's motion for dismissal under Rule 12(b)(6), the Court should deny Twitter's motion dismiss Plaintiffs' federal and California WARN Act claims, and Plaintiffs' claim under the California Labor Code, and allow Plaintiffs the opportunity to substitute in one or more named plaintiffs who can advance those claims in court.

Finally, the Court should reject Twitter's premature request to dismiss their class action allegations.

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

*Attorneys for Plaintiffs*

Dated:          January 20, 2023

16
PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on January 20, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE
AND/OR MOTION TO DISMISS