# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated,

                      Plaintiffs,

        v.

TWITTER, INC.

                    Defendant.

C.A. No. 1:23-cv-00441-CFC

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATION

Dated: June 7, 2023

Shannon Liss-Riordan (*pro hac vice*)
Bradley Manewith (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llraw.com
bmanewith@llrlaw.com
tfowler@llrlaw.com

Kate Butler, Bar I.D. No. 6017
Kate Butler Law LLC
1509 Gilpin Ave, Suite No. 3
Wilmington, DE 19806
Phone: (302) 966-9994
email: kate@katebutlerlaw.com

*Attorneys for Plaintiffs*

## **<u>TABLE OF CONTENTS</u>**

I.  NATURE AND STAGE OF PROCEEDINGS ...............................................1

II.  SUMMARY OF THE ARGUMENT................................................................1

III.  STATEMENT OF FACTS.........................................................................2

IV.  ARGUMENT.............................................................................................4

    A.  The Merger Agreement Has Contradictory Terms, Making it
        Ambiguous Regarding Plaintiffs' Third-Party Beneficiary
        Status. ...................................................................................................5

    B.  Plaintiffs Have Adequately Pled Additional Claims That Are
        Not Reliant on the Merger Agreement.................................................11

        1.  Plaintiffs' claims for breach of contract and promissory
            estoppel are not reliant on the Merger Agreement. .................11

        2.  Plaintiffs have adequately pled breach of contract (Count
            I). ............................................................................................14

        3.  Plaintiffs have adequately pled promissory estoppel
            (Count III). ..............................................................................17

    C.  Plaintiffs' Class Allegations Should Not Be Stricken. ........................18

V.  CONCLUSION ..........................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>California Credits Group, LLC v. Briad Restaurant Group, LLC</u>,
    2022 WL 19263331 (C.D. Cal. May 11, 2022)................................14

<u>Campbell v. Facebook Inc.</u>,
    315 F.R.D. 250 (N.D. Cal. May 18, 2016) ....................................19

<u>Corey v. Pierce County</u>,
    225 P.3d 367 (Wash. App. Div. 1 2010) ......................................17

<u>Crisco v. Bd. of Ed. of Indian River Sch. Dist.</u>,
    1988 WL 90821 (Del. Ch. Aug. 29, 1988) ....................................12

<u>Crispo v. Musk</u>,
    2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ...................................8

<u>Cybrary, Inc. v. Learningwise Educ., Inc.</u>,
    2023 WL 1778614 (D. Del. Feb. 6, 2023).......................................5

<u>Davis v. D.R. Horton, Inc.</u>,
    2020 WL 1244848 (D. Del. Mar. 16, 2020)........................... 18, 19

<u>DCV Holdings, Inc. v. ConAgra, Inc.</u>,
    889 A.2d 954 (Del. S. Ct. 2005)....................................................10

<u>Dolan v. Altice USA, Inc.</u>,
    2019 WL 2711280 (Del. Ch. Jun. 29, 2019) ........................ passim

<u>Drummond v. Akselrad</u>,
    2023 WL 3173780 (S.D.N.Y. May 1, 2023) ..................................16

<u>E.I. DuPont de Nemuors and Co. v. Rhone Poulenc Fiber and Resin
    Intermediates, S.A.S.</u>,
    269 F.3d 187 (3rd Cir. 2001) ....................................................1, 4

<u>Einhorn v. Fleming Food of Penn., Inc.</u>,
    258 F.3d 192 (3rd Cir. 2001) ...................................................5, 11

Garcia v. World Sav., FSB,
        107 Cal. Rptr. 3d 683 (Cal. App. 2d Dist. 2010)...........................................17

Graboff v. The Collern Firm,
        2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) ..................................................14

In re ADI Liquidation, Inc.,
        560 B.R. 105 (Bankr. D. Del. 2016)...............................................................6

James v. United Med. LLC,
        2017 WL 1224513 (Del. Super. Mar. 31, 2017) ...........................................13

Johnson v. Organo Gold Int'l, Inc.,
        2016 WL 2771124 (D. Del. May 13, 2016) ..................................................19

Kadem-Ouaffo v. Balchem Corp.,
        2018 WL 4386092 (S.D.N.Y. Sept. 14, 2018) .............................................14

Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.,
        125 F. Supp 3d 497 (D. Del. 2015) ....................................................... 12, 14

Moncada v. W. Coast Quartz Corp.,
        164 Cal. Rptr. 3d 601 (Cal. App. 6th Dist. 2013) .........................................17

Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburg, PA,
        83 A.3d 731 (Del. S. Ct. 2013).........................................................................5

P.V. v. Sch. Dist. Of Philadelphia,
        2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) ................................................18

Parker v. Columbia Pictures Industries,
        204 F.3d 326 (2d Cir. 2000) .........................................................................16

Pearce v. Manhattan Ensemble Theater, Inc.,
        528 F. Supp. 2d 175 (S.D.N.Y. 2007) ................................................... 17, 18

Sestrap v. Microsoft Corp.,
        2013 WL 1944463 (W.D. Wash. May 9, 2013) ............................................14

Thompson v. St. Regis Paper Co.,
        685 P.2d 1081 (Wash. 1984) ........................................................................18

Titus v. Wells Fargo Bank, N.A.,
    2016 WL 807806 (W.D. Wash. Mar. 2, 2016)................................................14

Toscano v. Greene Music,
    21 Cal. Rptr. 3d 732 (Cal. App. 4th Dist. 2004) ..........................................17

Twitter, Inc. v. Musk,
    Case No. 2022-0613-KSJM (Del. Ch.) ..........................................................8

U.S. v. Quillen,
    335 F.3d 219 (3rd Cir. 2003)..........................................................................6

**Rules**

Fed. R. Civ. P. 15(a)(2)..........................................................................................12

## I.   NATURE AND STAGE OF PROCEEDINGS

This case was transferred to this Court on April 19, 2023 (Dkt. 66). The operative claims in the current Second Amended Class Action Complaint ("SAC") (Dkt. 40) are: (1) breach of contract; (2) breach of contract as third-party beneficiaries to Twitter's Agreement and Plan of Merger ("Merger Agreement"); and (3) promissory estoppel.

Twitter has moved to dismiss these claims. For the reasons outlined herein, the Court should deny Twitter's motion.

## II.   SUMMARY OF THE ARGUMENT

While Twitter focuses its argument on the Merger Agreement, only one of Plaintiffs' three claims is based upon that agreement. Counts I and III (breach of contract and promissory estoppel) are independent of the Merger Agreement, and Plaintiffs have adequately pled both of those claims (see Section IV(B) below).

With respect to Plaintiffs' third-party beneficiary contract claim (Count II), Twitter now argues that Plaintiffs are not third-party beneficiaries of the Merger Agreement. However, if Plaintiffs are not third-party beneficiaries, then the Merger Agreement is not relevant to this case, and this case should not have been transferred to this Court, based upon the forum selection clause in that agreement. See E.I. DuPont de Nemuors and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187 (3rd Cir. 2001). Thus, this Court should first

decide whether Plaintiffs are third-party beneficiaries, and if they are not, the case should be transferred back to California.

As explained below in Section IV(A), Plaintiffs contend that they are third-party beneficiaries of the Merger Agreement. The agreement has conflicting provisions and thus will need to be examined by a factfinder, after discovery, to determine the parties' intent with respect to Plaintiffs' standing as third-party beneficiaries. See Dolan v. Altice USA, Inc., 2019 WL 2711280, *7 (Del. Ch. Jun. 29, 2019).

Finally, the Court should deny Twitter's request to strike class allegations at this early stage. (See Section IV(C)). Courts recognize that the sufficiency of class allegations is better addressed during the class certification process, after the parties have had an opportunity to engage in appropriate discovery. The SAC contains sufficient facts to show that a class action is plausible.

## III.  STATEMENT OF FACTS

In October 2022, Elon Musk purchased Twitter and immediately began laying off more than half of its workforce. (Dkt. 40, SAC ¶¶ 2, 33.) In April 2022, after it was announced that Elon Musk would be purchasing Twitter, Twitter employees raised concerns regarding the Company's policies following the acquisition and how they would be impacted by possible layoffs. (Dkt. 40, SAC ¶¶ 23-24.) To allay employees' concerns, and in an effort to prevent employees from

leaving Twitter, Twitter made various promises to employees, including that if there were layoffs within a year of the acquisition, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided. (Dkt. 40, SAC ¶¶ 25-28.) Twitter communicated these promises orally (including at periodic "all-hands" meetings) and in writing by Twitter's management. (Dkt. 40, SAC ¶¶ 25-28.) Additionally, the Merger Agreement likewise stated that for at least a year after the acquisition became effective, Twitter would "provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period that are no less favorable than those applicable to the Continuing Employee" prior to the acquisition. (Dkt. 40 – SAC ¶¶ 29; Dkt. 78-1, Merger Agreement at § 6.9(a).) The Merger Agreement also clearly stated that the obligation to pay such severance benefits would survive post-acquisition. (Dkt. 78-1, Merger Agreement at § 9.1.)

Twitter made these promises in consideration for the employees' continued willingness to work for Twitter, and many employees, including Plaintiffs, relied on these promises and maintained their employment at Twitter, rather than seeking job opportunities elsewhere. (Dkt. 40, SAC ¶¶ 23-31, 42-43 Count I.) After Musk completed his acquisition of Twitter in late October 2022, Twitter quickly reneged on these promises. (Dkt. 40, SAC ¶¶ 32-41.) Under Musk's direction, Twitter initiated a mass layoff and announced that the laid off employees would receive

less favorable benefits and severance than Twitter had previously provided. (Dkt. 40, SAC ¶¶ 33, 39-40.) As a result, Plaintiffs and Twitter's other laid off employees have not been paid the severance benefits they were promised.

## IV.   ARGUMENT

Twitter conflates Plaintiffs' breach of contract and promissory estoppel claims with their third-party beneficiary contract claim. The former two claims are independent of the Merger Agreement. Twitter already argued successfully that the Merger Agreement applies here, which led the original court in California to transfer the case here, based on the agreement's forum selection clause. Twitter's argument that the Merger Agreement applies, which led to this case being transferred to this Court, undercuts its argument now that Plaintiffs are not third-party beneficiaries to the agreement.

If Plaintiffs are not third-party beneficiaries, then this case was wrongly transferred, and it should be transferred back to California. See E.I. DuPont de Nemuors and Co., 269 F.3d 187 (3rd Cir. 2001) (party who is not a party or a third-party beneficiary to a contract cannot be subject to its venue provision, in that case, arbitration). Thus, the Court should address first the question of whether Plaintiffs may be third-party beneficiaries.

**A.    The Merger Agreement Has Contradictory Terms, Making it Ambiguous Regarding Plaintiffs' Third-Party Beneficiary Status.**

When interpreting a contract, ambiguity will exist if the contract's terms are reasonably susceptible to differing interpretations or different meanings. Cybrary, Inc. v. Learningwise Educ., Inc., 2023 WL 1778614, *3 (D. Del. Feb. 6, 2023). As this Court correctly recognized, Delaware requires contracts to be interpreted as a whole and "in such a way as to not render any of its provisions illusory or meaningless. Id. at *4. Moreover, a party's proposed interpretation of a contract need not be correct in order to defeat a motion to dismiss, but rather, only needs to be reasonable. Id. at *4-5 (denying motion to dismiss because defendant's interpretation of the contract would render certain terms meaningless).

Where a contract is ambiguous, the Court cannot dismiss a claim on a motion to dismiss because "the interpretation of [an ambiguous] term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations." Einhorn v. Fleming Food of Penn., Inc., 258 F.3d 192, 195 (3rd Cir. 2001). And the gathering of such extrinsic evidence will require discovery. Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 83 A.3d 731, 736 (Del. S. Ct. 2013) ("The parties must be allowed to conduct discovery to develop extrinsic evidence of the parties' intent . . . .").

Contrary to Twitter's assertions, the Merger Agreement is ambiguous about whether Plaintiffs, as "Continuing Employees," were intended third-party

beneficiaries. It has multiple conflicting provisions and thus is ambiguous, thereby precluding dismissal at the pleading stage.

As pled in the SAC, the Merger Agreement includes a promise that, for one year following Musk's acquisition of Twitter, all Continuing Employees whose employment is terminated (which includes Plaintiffs) shall be provided severance payments and benefits no less favorable than those applicable to the Continuing Employee immediately prior to Musk's acquisition. (Dkt. 40 – SAC ¶¶ 27-29; Dkt. 78-1, Merger Agreement at § 6.9(a).) Thus, a reasonable inference can be drawn that Plaintiffs are intended third-party beneficiaries.[1]

---

[1]     To demonstrate standing to enforce a contract as a third-party beneficiary, plaintiffs must plead facts that allow a reasonable inference that: (i) the contracting parties intended them to benefit from the contract; (ii) the benefit was intended as a gift or in satisfaction of a pre-existing obligation to them; and (iii) the intent to benefit them was a material part of the parties' purpose in entering into the contract. Dolan v. Altice USA, Inc., 2019 WL 2711280, *7 (Del. Ch. Jun. 29, 2019). Twitter focuses its argument solely on the first prong. Thus, it concedes Plaintiffs have adequately pled the remaining elements and has waived any arguments to the contrary. See U.S. v. Quillen, 335 F.3d 219, 224 (3rd Cir. 2003) ("arguments not raised in a [party's] opening brief are deemed waived.").

Notwithstanding Twitter's waiver of this argument, Plaintiffs adequately allege the remaining two elements to be third-party beneficiaries. Because Twitter's severance policy existed when the Merger Agreement was signed, the Court can reasonably infer that a pre-existing obligation existed to provide employees the severance payments and benefits. See In re ADI Liquidation, Inc., 560 B.R. 105, 108-09 (Bankr. D. Del. 2016). Alternatively, the severance benefits provided by Section 6.9(a) can reasonably be seen as a gift to employees for not leaving the Company prior to the merger closing.

Additionally, the intent to benefit the employees through Section 6.9(a) was material to the parties entering the Merger Agreement. The Merger Agreement obligated Twitter to conduct the business of the Company in the ordinary course of

Twitter argues that Plaintiffs cannot be third-party beneficiaries because the Merger Agreement states in Sections 6.9(e) and 9.7 the parties' intent not to confer third-party beneficiary rights to any Company Service Provider (which is defined to include Twitter's current and former employees). However, because Delaware courts must interpret contracts as a whole, third-party beneficiary status cannot automatically be determined solely by reviewing the language of one provision in isolation. <u>Dolan</u>, 2019 WL 2711280, *8-10. This is true, even if such a provision is customized to identify certain third-party beneficiaries but not plaintiffs. <u>Id.</u>

For example, in <u>Dolan</u>, 2019 WL 2711280, *4, the parties' merger agreement included terms obligating defendant to continue business operations per the existing business plan following the closing of the merger. The agreement also *disclaimed the existence of third-party beneficiaries* except for certain limited purposes. <u>Id.</u> Following the merger, defendants breached their obligations to follow the pre-merger business plan. <u>Id.</u> at 1. Plaintiffs, who were not parties to the merger agreement, and who were not named as third-party beneficiaries, nonetheless brought suit seeking to enforce the agreement's obligations regarding

---

business while the merger was being finalized and required Twitter to maintain in all material respects all business relationships with any Person (which would include employees). (Dkt. 78-1, Merger Agreement at § 6.1.) The Court can reasonably infer that Twitter could not meet these obligations without its workforce and that the parties included Section 6.9(a) to ensure employees did not leave *en masse* prior to the merger closing.

the post-merger operations. Ultimately, in denying defendant's motion to dismiss for lack of standing, the court found that extrinsic evidence was needed to determine the meaning of defendant's post-merger obligations and whether it could be enforced by plaintiffs as third-party beneficiaries. Id. at *8. Moreover, in reaching its conclusion, the court rejected defendant's interpretation of the interaction between the two provisions because such a reading would render the post-merger obligations "superfluous in the sense that it is entirely unenforceable-by anyone" and "meaningless." Id. at 9.[2]

Here, there is likewise a conflict between Twitter's post-merger obligation, on the one hand, to provide severance payments and benefits to Continuing Employees, as provided in Section 6.9(a), together with the expressly stated survival of such obligations post-closing, contained in Section 9.1, and the Merger

---

[2]     Twitter relies heavily on Crispo v. Musk, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022), which found that the same Twitter merger agreement at issue here did not confer third-party beneficiary rights to shareholders. Crispo is distinguishable. Namely, the Crispo court was reluctant to find the shareholders had third-party beneficiary rights because the company's board of directors had a fiduciary duty to maximize shareholder value and as such must maintain contracting freedom, including control over any litigation, to enforce the agreement. Id. at * 4. In fact, Twitter's board did bring its own suit against Elon Musk to enforce the Merger Agreement, thereby protecting the shareholders' rights and benefits. See Twitter, Inc. v. Musk, Case No. 2022-0613-KSJM (Del. Ch.). Here, unlike Twitter's shareholders, no one had a fiduciary duty following the merger closing to ensure that Continuing Employees, such as Plaintiffs, received the benefits provided to them under the Merger Agreement. Thus, it is reasonable to infer that the parties intended Continuing Employees, including Plaintiffs, to be third-party beneficiaries for the limited purpose of enforcing Section 6.9(a).

Agreement's disclaimer of third-party beneficiaries in Sections 6.9(e) and 9.7, on the other. Given the express language of Sections 6.9(a) and 9.1, it is reasonable to infer that Plaintiffs, as Continuing Employees, were intended third-party beneficiaries, especially given the express written and verbal promises made by Twitter's management outside the context of the Merger Agreement prior to the merger (see Dkt. 40 – SAC ¶¶ 28, 30).[3] If Plaintiffs are not third-party beneficiaries, there would be no mechanism for enforcing the rights granted to them in Section 6.9(a). Thus, because Section 6.9(a) only addresses the right of Continuing Employees (which would not include any employees terminated prior to, or hired after, the merger closed) to be paid their severance benefits for a short period after the merger, and it does not implicate enforcement of the entire Merger Agreement, it would be reasonable to interpret Section 6.9(a) as granting Plaintiffs' limited third party beneficiary rights, and modifying Sections 6.9(e) and 9.7, which generally disclaim third party beneficiary rights, just as in Dolan.

Moreover, Twitter's argument itself highlights the ambiguity of the Merger Agreement. Twitter accuses Plaintiffs of focusing solely on the language of Section 6.9(a), to the exclusion of Sections 6.9(e) and 9.7. However, Twitter relies

---

[3]    The Merger Agreement allowed Twitter to communicate with its employees about the Merger Agreement prior to closing, consistent with any plan previously agreed to between the parties. Thus, it is reasonable to infer that the parties approved all communications to employees about continued severance benefits.

solely on the language of Sections 6.9(e) and 9.7, without explaining the meaning of Section 6.9(a), and how it would be enforceable if Continuing Employees (including Plaintiffs) were not intended third-party beneficiaries.[4] Nor does Twitter account for the fact that the Merger Agreement explicitly states that the obligation in Section 6.9(a) to provide severance benefits shall survive after the merger closed. (Dkt. 78-1, Merger Agreement § 9.1.) Under Twitter's interpretation, the benefits provided in Section 6.9(a) would be illusory and superfluous because no one could enforce it.

---

[4]     Twitter attempts to disavow the promised benefits to Continuing Employees provided by Section 6.9(a) by pointing to Section 6.9(e)(i) which states that nothing contained in Section 6.9 shall limit the right to amend, modify, merge or terminate after the Effective Time any Company Benefit Plan. However, it is a well settled rule of contract construction that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954, 961 (Del. S. Ct. 2005). Here, Section 6.9(a) is the more specific provision as it only discusses obligations to continue certain benefits for Continuing Employees for one year, while Section 6.9(e)(i) generally discusses the right to amend, modify, merge or terminate Company Benefit Plans after the merger. Thus, Section 6.9(a) controls and qualifies the more general Section 6.9(e)(i).

Moreover, the two provisions can be read together so neither is meaningless. Namely, Section 6.9(a) qualifies Section 6.9(e)(1) by requiring Twitter to maintain equivalent Company Benefit Plans, including specifically severance, for Continuing Employees who were terminated within a year of the merger. Yet, under Section 6.9(e)(i) such Company Benefit Plans need not apply to any new employees hired after the merger. Likewise, because Section 6.9(a) would only apply for one year following the merger, Section 6.9(e)(i) reinforces that the obligations in Section 6.9(a) were not indefinite.

Thus, because it is not clear from the plain language of the Merger Agreement the meaning of Section 6.9(a) and how it is supposed to be enforced, the Merger Agreement is ambiguous with respect to whether Section 6.9(a) is enforceable by Plaintiffs as third-party beneficiaries. This ambiguity raises a question of fact, which can only be resolved by extrinsic evidence developed through discovery. See Einhorn, 258 F.3d at 195. Consequently, Twitter's motion to dismiss should be denied.

### B. Plaintiffs Have Adequately Pled Additional Claims That Are Not Reliant on the Merger Agreement.

#### 1. Plaintiffs' claims for breach of contract and promissory estoppel are not reliant on the Merger Agreement.

Plaintiffs' claims for breach of contract and promissory estoppel are independent of their third-party beneficiary contract claim and do not turn on the Merger Agreement.

Twitter implicitly recognizes that Plaintiffs' breach of contract claim (Count I could be independent from the Merger Agreement but faults Plaintiffs for not affirmatively alleging its independence. (Dkt. 78 at 10.) However, Twitter attempts to hold Plaintiffs to a higher burden than what is required at the pleading stage. Plaintiffs did not need to allege affirmatively that their breach of contract claim in Count I does not rely on the Merger Agreement but only needed to allege facts, when taking all reasonable inferences in their favor, that plausibly establish the

existence of a contract. <u>Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.</u>, 125 F. Supp 3d 497, 500 (D. Del. 2015).[5]

Plaintiffs have alleged that Twitter, through its former CEO and other executives, offered employees orally (including at periodic "all-hands" meetings) and in writing (*not* through the Merger Agreement), benefits and severance at least as favorable as Twitter previously provided (should there be layoffs after Musk acquired the company). (Dkt. 40, SAC ¶¶ 27-28.) Plaintiffs also pled that the offer was made to prevent employees from leaving Twitter prior to the acquisition closing. (Dkt. 40, SAC ¶ 25.)

Given these allegations, the Court may plausibly conclude that Twitter's oral and written statements to its employees, together with their acceptance of the offer by continuing to work, constitute a contract in and of themselves. <u>See</u> <u>Crisco v. Bd. of Ed. of Indian River Sch. Dist.</u>, 1988 WL 90821, *4 (Del. Ch. Aug. 29, 1988) (finding that promises outlined in employer's written policy, together with employee's continued work, constitutes a binding contract). The fact that the same promises were *also* included in the Merger Agreement gives rise to Plaintiffs' *separate* claim of breach of contract based on their third-party beneficiary status in the Merger Agreement (Count II); it does not foreclose the possibility that there

---

[5]    To the extent the Court believes the complaint needs to be clearer in disavowing reliance on the Merger Agreement for Counts I and III, Plaintiffs should be given leave to amend. <u>See</u> Fed. R. Civ. P. 15(a)(2).

were multiple contracts, one set forth in the Merger Agreement and another set forth through independent oral and written representations made to Plaintiffs.[6]

Likewise, Plaintiffs' promissory estoppel claim also does not rely on the Merger Agreement. While the complaint includes allegations about the Merger Agreement (which go to Count II), there are no allegations that Plaintiffs relied on the Merger Agreement itself, or that they were even given a copy of it and/or they reviewed it. Rather, Plaintiffs relied on the repeated oral and written statements made by Twitter's executives directly to Twitter's employees that the Company would pay them benefits and severance at least as favorable as Twitter previously provided (should there be layoffs after Musk acquired the company). (Dkt. 40, SAC ¶¶ 27-28.) In short, Twitter promised to abide by its then existing severance policy, which was originally created independent of the Merger Agreement, and employees relied on those separate promises. (See Dkt. 40, SAC ¶¶ 27, 28, 40, Count III). Thus, the Court can plausibly infer that Plaintiffs' promissory estoppel claim exists independent from the Merger Agreement.

---

[6]     While Twitter may argue Plaintiffs' claims in Counts I and III are essentially preempted by the Merger Agreement because the written and oral statements from its former CEO and other management employees are derived from the Merger Agreement, those are questions of fact that cannot be decided on a motion to dismiss. See James v. United Med. LLC, 2017 WL 1224513, *6 (Del. Super. Mar. 31, 2017) (determining how two potentially related contracts should be interpreted in the context of one another cannot be decided on a motion to dismiss).

### 2.      Plaintiffs have adequately pled breach of contract (Count I).

To survive a motion to dismiss for failure to state a breach of contract claim, plaintiffs need only allege facts which plausibly establish: (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiffs. <u>Micro Focus</u>, 125 F. Supp 3d at 500.[7] Here, Plaintiffs have adequately pled each element for a breach of contract claim.

The SAC alleges sufficient facts from which a breach of contract claim can plausibly be inferred.[8] It alleges that, in the months following the announcement of

---

[7]      The elements of a breach of contract claim are generally the same, regardless of which state's law applies. <u>Compare</u> <u>California Credits Group, LLC v. Briad Restaurant Group, LLC</u>, 2022 WL 19263331, *3 (C.D. Cal. May 11, 2022); <u>Kadem-Ouaffo v. Balchem Corp.</u>, 2018 WL 4386092, *12 (S.D.N.Y. Sept. 14, 2018); <u>Titus v. Wells Fargo Bank, N.A.</u>, 2016 WL 807806, *3 (W.D. Wash. Mar. 2, 2016). As such, because Plaintiffs filed this matter as a class action, they did not include specific allegations regarding the applicable law, which contrary to Twitter's assertion, was not improper. <u>See</u> <u>Graboff v. The Collern Firm</u>, 2010 WL 4456923, *8 (E.D. Pa. Nov. 8, 2010) ("courts within the Third Circuit have concluded that it is more appropriate to address the [choice-of-law] issue at a later stage in the proceedings.").

Notwithstanding, given that Twitter's severance offer was made by Twitter's management, including its former CEO (Dkt. 40, SAC ¶ 28), and that Twitter's corporate headquarters is in San Francisco (Dkt. 40, SAC ¶ 18), Plaintiffs would argue that California law likely should apply. However, for purposes of this opposition, there is no material difference between the law of contract under California law, and Washington or New York law, where the named plaintiffs worked.

[8]      A plaintiff is not required to identify the specific contract (or provision within a contract) giving rise to the obligation, so long as one can be reasonably inferred. <u>Sestrap v. Microsoft Corp.</u>, 2013 WL 1944463, *2 (W.D. Wash. May 9, 2013).

Musk's acquisition, Twitter offered to pay its employees severance payments and benefits at least as favorable to those provided by the Company prior to the acquisition, in the event of post-acquisition layoffs. (Dkt. 40, SAC ¶¶ 23-24, 28.) Additionally, the SAC identifies Twitter's pre-acquisition severance policy. (Dkt. 40, SAC ¶ 40.) Moreover, it can reasonably be inferred that Twitter's offer was made in exchange for employees' promise to continue working for the Company, that Plaintiffs were aware of the offer through management's various oral and written communications, and that they accepted the offer by continuing to work for Twitter until they were laid off shortly after Musk acquired Twitter. (See Dkt. 40, SAC ¶¶ 14, 16, 24, 25, 28, 31.)

Given these allegations and reasonable inferences, Plaintiffs have plausibly alleged a contract existed which obligated Twitter to pay severance and benefits as least as favorable as those provided prior to Musk's acquisition. Yet Twitter breached that contract by refusing to offer Plaintiffs (and its other laid off employees) the severance benefits provided by that policy. (Dkt. 40, SAC ¶¶ 39, 40.) Instead, they were offered significantly less, thereby depriving Plaintiffs of the full benefits of the contract. (Dkt. 40, SAC ¶ 39, 40.) Thus, Plaintiffs adequately plead a claim for breach of contract.[9]

_____

[9] Contrary to Twitter's argument, the analysis does not change under New York law simply because Plaintiff Barreto was an at-will employee. New York courts regularly uphold breach of contract claims brought by at-will employees

Twitter argues that Plaintiff Folkins does not have a claim because he voluntarily resigned. However, nowhere in the SAC does Folkins allege that he voluntarily resigned. Instead, Folkins alleges that he did not click "yes" to Musk's November 16th email ultimatum and was thereafter told that his employment would end on January 20, 2023. (Dkt. 40, SAC ¶ 52.) Additionally, the SAC alleges that Musk's ultimatum was in furtherance of his plan to lay off a large portion of Twitter's workforce and was sent with the intent to shed more workers. (Dkt. 40, SAC ¶ 51.) Musk's message itself stated that anyone who did not click "yes" by the next day would receive severance, which can be reasonably inferred to mean Twitter itself considered such employees to be laid off. (Dkt. 40, SAC ¶ 50.) Thus, taken as whole, the SAC plausibly alleges that Folkins was laid off and thus eligible for the contractually promised severance, like other employees who did not click "yes" to the November 16th ultimatum.

---

seeking to enforce the contractual promises made by their employers. See e.g., Parker v. Columbia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000) ("[u]nder New York law, an employer's virtually unfettered power to terminate an at-will employee does not negate its duty to abide by promises made prior to termination."). In fact, Drummond v. Akselrad, 2023 WL 3173780, *5 (S.D.N.Y. May 1, 2023), a case cited by Twitter, recognizes that an employer's ability to change the terms of employment of an at will employee is limited to *prospective* changes. Here, Twitter did not prospectively change the terms of its severance policy. Rather, Twitter notified its employees (including Barreto) of the revised severance amounts *after* it notified them of their termination. (Dkt. 40, SAC ¶ 39.)

Whether the factfinder will agree with the facts alleged here cannot be determined on a motion to dismiss. But Plaintiffs have clearly stated a claim for breach of contract, both for employees who were notified by Twitter of their lay-off on November 4, 2022, as well as others, such as those who were notified of their lay-off after they declined to click "yes" in response to Musk's November 16th ultimatum.

### 3. Plaintiffs have adequately pled promissory estoppel (Count III).

The elements of promissory estoppel are: (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed. Toscano v. Greene Music, 21 Cal. Rptr. 3d 732, 737 (Cal. App. 4th Dist. 2004).[10] Moreover, "to be enforceable, a promise need only be 'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" Garcia v. World Sav., FSB, 107 Cal. Rptr. 3d 683, 696 (Cal. App. 2d Dist. 2010) (internal citations omitted).

For example, in Moncada v. W. Coast Quartz Corp., 164 Cal. Rptr. 3d 601, 610 (Cal. App. 6th Dist. 2013), the court found that plaintiffs adequately pled a

---

[10]     There are not material differences between this standard and the law of Washington and New York. See Corey v. Pierce County, 225 P.3d 367, 377 (Wash. App. Div. 1 2010); Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007).

claim for promissory estoppel because defendant promised to pay plaintiffs a bonus sufficient for them to retire upon if they remained employed by defendant until it was sold. Here, Twitter likewise promised Plaintiffs that they would be paid severance benefits equivalent to those under the pre-merger policy if they remained employed by Twitter through the closing but were laid off within a year. (Dkt. 40, SAC ¶¶ 25-28, 30-31, 39-40, 42.) Thus, Plaintiffs have adequately pled a claim for promissory estoppel.

Courts have also recognized that "if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable." Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1088 (Wash. 1984). That is exactly what happened here.

Moreover, forgoing other employment opportunities based on an employer's representations is sufficient to state a claim for damages under a promissory estoppel theory. Pearce, 528 F. Supp. 2d at 181.

**C.     Plaintiffs' Class Allegations Should Not Be Stricken.**

Courts typically deny as premature motions to strike class allegations from a complaint. See, e.g., Davis v. D.R. Horton, Inc., 2020 WL 1244848, *4-5 (D. Del. Mar. 16, 2020). In P.V. v. Sch. Dist. Of Philadelphia, the court explained:

> Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the 'rigorous analysis' inherent in the class certification decision.

2011 WL 5127850, *4 (E.D. Pa. Oct. 31, 2011). Thus, class allegations should only be stricken in the rare case where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Davis, 2020 WL 1244848, *5.

Here, Plaintiffs' class allegations are sufficient. The SAC states that Plaintiffs' claims are asserted on behalf of "all affected Twitter employees across the United States who have lost their jobs as a result of Twitter's mass layoffs." (Dkt. 40, SAC ¶ 17.) Additionally, Plaintiffs allege company-wide conduct that similarly impacted putative class members, for which Twitter could be liable. (See Dkt. 40, SAC ¶¶ 25-33, 39-40, 42, 40, 47-51, 54.) Moreover, the SAC clearly requests monetary damages (Dkt. 40, SAC at 15,), meaning that Rule 23(b)(3) is implicated. See Campbell v. Facebook Inc., 315 F.R.D. 250, 270 (N.D. Cal. May 18, 2016). Thus, a class action is plausible.[11]

---

[11]   Twitter relies on Johnson v. Organo Gold Int'l, Inc., 2016 WL 2771124, *7 (D. Del. May 13, 2016). However, Johnson was one of those rare cases, unlike here, where the complaint itself demonstrated a class action could not be maintained because the plaintiff's claims were "markedly different from the class as a whole." Id. at *8.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Twitter's Motion to

Dismiss and Strike Class Allegations.


Dated: June 7, 2023                         Respectfully submitted,

                                            EMMANUEL CORNET, JUSTINE DE
                                            CAIRES, GRAE KINDEL, ALEXIS
                                            CAMACHO, JESSICA PAN, EMILY KIM,
                                            MIGUEL BARRETO, and BRETT
                                            MENZIES FOLKINS, on behalf of
                                            themselves and all others similarly situated,

                                            By their attorneys,

                                             /s/ Kate Butler
                                            Kate Butler, Bar I.D. No. 6017
                                            Kate Butler Law LLC
                                            1509 Gilpin Ave, Suite No. 3
                                            Wilmington, DE 19806
                                            Phone: (302) 966-9994
                                            Email: kate@katebutlerlaw.com

                                            Shannon Liss-Riordan (*pro hac vice*)
                                            Bradley Manewith (*pro hac vice*)
                                            Thomas Fowler (*pro hac vice*)
                                            LICHTEN & LISS-RIORDAN, P.C.
                                            729 Boylston Street, Suite 2000
                                            Boston, MA 02116
                                            (617) 994-5800
                                            Email: sliss@llrlaw.com
                                            bmanewith@llrlaw.com
                                            tfowler@llrlaw.com

## CERTIFICATE OF SERVICE

I, Kate Butler, hereby certify that a true and accurate copy was served on all counsel of record for Defendant on June 7, 2023, via filing on the Court's CM/ECF system.

/s/ Kate Butler
Kate Butler