## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EMMANUEL CORNET, JUSTINE DE
CAIRES, GRAE KINDEL, ALEXIS
CAMACHO, JESSICA PAN, EMILY
KIM, MIGUEL ANDRES BARRETO,
and BRETT MENZIES FOLKINS,

                Plaintiffs,

      v.

TWITTER, INC.,

                Defendant.

C.A. No. 1:23-cv-00441-CFC

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*, TO INTERVENE FOR A LIMITED PURPOSE OR TO COORDINATE BRIEFING WITH RELATED CASE

Dated: June 12, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Proposed Amici
Wolfram Arnold, Erik Froese, Tracy
Hawkins, Joseph Killian, Laura Chan
Pytlarz, Andrew Schlaikjer, Isabelle
Cannell, Jaime Sena, and James Shobe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

Nature and Stage of the Proceedings ........................................................1

Preliminary Statement............................................................................3

Summary of Facts ................................................................................4

Argument............................................................................................7

  I.   THE COURT SHOULD ALLOW THE ARNOLD PLAINTIFFS TO FILE AN AMICUS BRIEF ...................................................................7

  II.  THE COURT SHOULD GRANT PROPOSED AMICI'S MOTION TO INTERVENE FOR A LIMITED PURPOSE ..................................................10

  III. IN THE ALTERNATIVE, THE COURT SHOULD COORDINATE BRIEFING ON PLEADINGS MOTIONS IN THE RELATED ACTIONS.12

Conclusion .......................................................................................13

## TABLE OF AUTHORITIES

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Appleton v. Comm'r,*
    430 F. App'x 135 (3d Cir. 2011)...........................................................................11

*Avellino v. Herron,*
    991 F. Supp. 730 (E.D. Pa. 1998)..........................................................................7

*Cleveland v. City of Montgomery,*
    300 F.R.D. 578 (M.D. Ala. 2014)..........................................................................13

*First Am. Bank Co. v. SJP Grp., Inc. Emp. Stock Ownership Tr.,*
    2018 WL 11246702 (D.N.J. Feb. 9, 2018) ....................................................8, 11

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) .........................................................................10, 11

*Liberty Res., Inc. v. Philadelphia Hous. Auth.,*
    395 F. Supp. 2d 206 (E.D. Pa. 2005)..............................................................7, 8

*Order, Prof'l Drug Co. Inc. v. Wyeth Inc.,*
    No. 3:11-cv-05479-JAP-LHG (D.N.J. Oct. 3, 2012) ...........................................7

*Panzer v. Verde Energy USA, Inc.,*
    2021 WL 2186422 (E.D. Pa. May 27, 2021)......................................................10

*Sciotto ex. rel. Sciotto v. Marple Newtown Sch. Dist.,*
    70 F. Supp. 2d 553 (E.D. Pa. 1999)....................................................................7

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. 1996) ................................................................................10

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972)............................................................................................10

*UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*,
  2020 WL 5810562 (D.N.J. Sept. 30, 2020) ........................................................11

*United States v. Alkaabi*,
  223 F. Supp. 2d 583 (D.N.J. 2002) ........................................................7

*Waste Management of Penna., Inc. v. City of York*,
  162 F.R.D. 34 (M.D. Pa. 1995) ........................................................8

*In re Weinstein Co. Holdings, LLC*,
  2020 WL 1320821 (D.Del. Mar. 20, 2020) ........................................................7

**Other Authorities**

Federal Rule of Civil Procedure 42(a) ........................................................12

Federal Rules of Appellate Procedure Rule 29 ........................................................8

Federal Rules of Civil Procedure Rule 24 ........................................................4

Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer (collectively, the "Arnold Plaintiffs"), along with Isabelle Cannell, James Shobe, and Jaime Sena (the "Arbitration Claimants" and, collectively with the Arnold Plaintiffs, "Proposed Amici") by and through their undersigned attorneys, respectfully submit this memorandum in support of their motion for leave to file a brief as *amicus curiae*, or in the alternative, to (a) intervene for the limited purpose of opposing Defendant's motion to dismiss, or (b) to coordinate briefing on pleadings-stage motions with the related case captioned *Arnold et al. v. X Corp. et al.*, Case No. 23-cv-568-CFC (the "Arnold Action") pending in this Court.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 3, 2022, Plaintiffs in this action (the "Cornet Plaintiffs") filed a putative class action complaint against Defendant Twitter, Inc. ("Twitter") in the Northern District of California (the "Cornet Complaint"), which has been amended, most recently on December 9, 2022. On April 19, 2023, District Court Judge James Donato transferred this action to this District.

On May 16, 2023, the Arnold Plaintiffs filed a complaint against X Corp. f/k/a Twitter, Inc.; X Holdings Corp. f/k/a X Holdings I, Inc. and Elon Musk, (the "Arnold Complaint"). The Arnold Complaint states claims that have certain commonalities with the Cornet Complaint, as more fully described below. Like the

1

Cornet Complaint, the Arnold Complaint alleges that the Arnold Plaintiffs are third-party beneficiaries under the merger agreement at issue, and that Twitter's separate representations to them about the protections provided by the merger agreement and the content of their severance created a contract between them and Twitter or support claims for promissory estoppel. The Arbitration Claimants have filed similar claims.

On May 17, 2023, Twitter moved in this action to dismiss for Failure to State a Claim and Lack of Standing Counts I, II and III of the Cornet Complaint, or, in the Alternative, Strike Plaintiffs' Class Action Allegations (the "Motion to Dismiss").

On June 7, 2023, the Cornet Plaintiffs filed a brief in opposition to the Motion to Dismiss (the "Cornet Opposition").

On June 8, 2023, the Arnold Plaintiffs requested that the Cornet Plaintiffs and Twitter consent to either (i) the Arnold Plaintiffs intervening in this action for the limited purpose of filing a brief in opposition to the Motion to Dismiss to preserve the Arnold Plaintiffs' rights or (ii) coordinating briefing on the pleadings in this action with the anticipated briefing on the pleadings in the Arnold Action.

Counsel for the Cornet Plaintiffs stated they would oppose a motion to intervene, but would consent to the Arnold Plaintiffs filing an amicus brief in

opposition to Twitter's Motion to Dismiss. Counsel for Twitter opposed

intervention and the filing of an amicus brief.

## PRELIMINARY STATEMENT

Proposed Amici submit this motion for a straightforward reason: the Court's

resolution in Twitter's favor of the legal issues posed by Twitter's motion to

dismiss, which asks the Court to deny Twitter employees standing as third-party

beneficiaries and to rule as a matter of law that Twitter's representations to them

cannot support claims for breach of contract or promissory estoppel, would

significantly impact their rights and claims. That is particularly true for the

Arbitration Claimants and the thousands of their colleagues who are bringing

similar claims against Twitter in arbitration; the arbitrators hearing such claims

would be very likely to defer to the ruling of a Delaware Court applying Delaware

law to a Delaware contract. Under the circumstances, Proposed Amici wish to be

certain that the Court will hear and consider the legal arguments on those issues

that their own counsel would raise, which are different from (though

complementary to) the arguments raised by the Cornet Plaintiffs in opposition to

the motion to dismiss, before ruling on these critical issues. To be clear, Proposed

Amici *do not care* by which mechanism the Court allows them to place their

arguments before the Court – whether by accepting the proposed brief submitted

herewith (Exhibit A) as an amicus filing, or granting limited intervention for

purposes of opposing the motion to dismiss, or consolidating the briefing schedule. But whichever path the Court chooses, it should allow Proposed Amici to protect their rights and claims by allowing – and then considering – the arguments contained in the proposed submission.

And the Court should do so. The Proposed Amici have a special interest in the issues to be decided and the arguments they propose the Court consider would be helpful to the Court's determination of the issues.  Moreover, as discussed in Section II below, Proposed Amici more than satisfy the criteria for intervention set out in Rule 24 of the Federal Rules of Civil Procedure. Finally, coordination of the briefing schedules in *Cornet* and *Arnold* would promote efficiency, given the significant overlap in issues. And none of the paths offered by this motion would in any way prejudice the *Cornet* parties. As such, the motion should be granted.

## SUMMARY OF FACTS

The Arnold Plaintiffs are each long-time former employees of Twitter (colloquially and hereinafter referred to as "Tweeps"), who collectively have more than 60 years of experience working for the company, and who were fired or constructively discharged by Twitter in the aftermath of Musk's acquisition of the company. Arnold Compl. ¶ 1.

The Arnold Plaintiffs brought the Arnold Action for a declaratory judgment that the merger agreement by which Musk acquired Twitter, and the related but

independent promises and representations to the Tweeps, entitle them to the promised severance, to recover that severance as well as punitive damages for Defendants' flagrant bad faith, to recover compensatory and punitive damages for Defendants' fraud, and to seek redress for Twitter's violations of the federal WARN, California WARN and New York WARN Acts and federal and state family leave laws, and the myriad California Labor Code violations in which Twitter engaged. *Id.* ¶ 10.

Twitter made the promises to pay severance many times and in many ways. Twitter made these promises in their initial offer letters to the plaintiffs. Twitter made this same promise explicit in its agreement to sell the company to Musk, negotiating for a clause in the agreement that protected its employees by ensuring that they would receive severance at least as favorable during the post-merger period as they had under the old management. And Twitter went out of its way to make additional promises and representations to its employees to allay their concerns in advance of its purchase by Musk and convince them to stay employed at Twitter pending the close of that transaction. *Id.* ¶ 30.

After Twitter published a FAQ document for its employees and held all-hands meetings in which Twitter specifically promised Tweeps that the Merger Agreement protected their severance, employees asked Twitter to commit its severance policy to writing, and Twitter did so. Twitter explicitly represented in a

5

May email that its severance policy was to provide "at a minimum" (1) two months base salary (or incentive-based salary for sales employees), (2) prorated performance bonuses as though all triggers for such bonuses had been hit, (3) the cash value of any RSUs that would have vested within three months of separation, and (4) a cash contribution for the continuation of healthcare coverage. Twitter later incorporated that communication into a June update to the Acquisition FAQ and repeated it in another update in October 2022, just days prior to the merger's close date. *Id.* ¶ 37.

After the close of the merger, Twitter laid off Arnold, Froese, Pytlarz, and Schlaikjer, and constructively discharged Plaintiffs Hawkins and Killian. Yet Defendants refused to provide them with the severance they promised. *Id.* ¶ 41. As reflected in the filings in *Anoke v. Twitter*, 3:23-cv-02217 (N.D. Cal.), the Arbitration Claimants have likewise raised similar claims. D.I. 1.

Proposed Amici's claims implicate the same arguments Twitter is making with respect to the merger agreement in the Motion to Dismiss: whether Twitter's "Continuing Employees" are third-party beneficiaries, and whether Twitter's representations to those employees in the pre-merger period support breach of contract and promissory estoppel claims. For the reasons set forth below, those issues in both cases should be decided in the light of not only the Cornet Plaintiffs' arguments but also Proposed Amici's arguments.

6

## ARGUMENT

## I.   THE COURT SHOULD ALLOW THE ARNOLD PLAINTIFFS TO FILE AN AMICUS BRIEF

"District courts have broad discretion to appoint amicus curiae." *Sciotto ex. rel. Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999) (quoting *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993)); *see also Avellino v. Herron*, 991 F. Supp. 730, 732 (E.D. Pa. 1998). "Although there is no rule governing the appearance of an amicus curiae in the United States District Courts," district courts in the Third Circuit have relied on the Federal Rules of Appellate Procedure for guidance in exercising their broad discretion. *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002).

District courts in this Circuit have applied a four-part standard in determining whether to grant a petitioner leave to participate as amicus curiae. *See, e.g., Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (citing *Sciotto*, 70 F. Supp. 2d at 555); *Order, Prof'l Drug Co. Inc. v. Wyeth Inc.*, No. 3:11-cv-05479-JAP-LHG (D.N.J. Oct. 3, 2012) (D.I. 187). These courts grant such leave to participate when: "(1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." *Liberty Res.*, 395 F. Supp. 2d at 209; *see also In re Weinstein Co. Holdings, LLC*, 2020 WL

7

1320821, at *1 n.3 (D.Del. Mar. 20, 2020) ("Courts will exercise their discretion to allow an *amicus curiae* brief to be filed if rule 29 of the Federal Rules of Appellate Procedure is satisfied by demonstrating, under the most lenient standard, that (1) the movant has an adequate interest in the appeal; (2) the information supplied is desirable; and (3) the information being provided is relevant").

Proposed Amici satisfy the criteria for allowing an *amicus curiae* brief considering the totality of the four-prong test. *First*, Proposed Amici have a special interest in this action because Twitter is moving to dismiss the Cornet Complaint in part on bases that will be used against Proposed Amici. This interest is specific rather than generalized. *See Liberty Res.*, 395 F. Supp. 2d at 209; *Waste Management of Penna., Inc. v. City of York*, 162 F.R.D. 34, 27 (M.D. Pa. 1995). The Court will be considering Twitter's arguments for the first time and without the benefit of arguments Proposed Amici will make in opposition to Twitter's arguments. For example, as set forth in Exhibit A, Proposed Amici's proposed brief in opposition to the Motion to Dismiss, the Proposed Amici argue that the merger agreement unambiguously identifies the Continuing Employees as third-party beneficiaries of the performance required by Section 6.9(a) of the agreement by directing that the performance be provided "to" and, *expressly*, "for" each of the Continuing Employees. Ex. A, Section I.A. Likewise, the proposed brief argues that the Continuing Employees are third-party beneficiaries under Delaware's rule

governing contract provisions that could only be enforced by the third-party to whom performance is owed. Ex. A, Section I.B. These arguments, and the others presented by Proposed Amici, are not adequately presented in the Cornet Opposition.

*Second*, Proposed Amici's interests are not adequately represented by the Cornet Plaintiffs. As noted, the Cornet Opposition fails to make arguments that the Proposed Amici believe are necessary to protect their rights as against Twitter and the other defendants in the Arnold Action.

*Third*, the arguments supplied by Proposed Amici are timely and useful. Twitter has not yet filed its reply brief and will have adequate time to respond to the arguments the Proposed Amici are advancing. The arguments are useful because without them, the Court may be left with a gap in its analysis of the relevant considerations and authority.

*Fourth*, Proposed Amici are neutral with respect to the outcome of the Motion to Dismiss, in that Proposed Amici will not be impacted if the motion is granted based on a pleading deficiency, and therefore take no position on whether the Cornet Plaintiffs adequately alleged the various underlying facts supporting the asserted claims; their interest is in addressing the purely legal viability of employees' claims to be third-party beneficiaries, or for breach of contract and promissory estoppel based on their decisions to continue employment with Twitter.

In any event, this factor is not dispositive. For example, in *Panzer v. Verde Energy USA, Inc.*, 2021 WL 2186422, at *4 (E.D. Pa. May 27, 2021), the Court granted leave to file an amicus brief after finding that "it is clear that [the proposed *amicus curiae*] is partial to a particular outcome in this case." Accordingly, and to the extent that the Court considers Proposed Amici "interested" for purposes of the fourth factor, Proposed Amici's interest in seeing the Motion to Dismiss denied is not sufficient basis to deny leave to file an *amicus* brief.

## II.    THE COURT SHOULD GRANT PROPOSED AMICI'S MOTION TO INTERVENE FOR A LIMITED PURPOSE

If the Court does not allow Proposed Amici to file an *amicus* brief, it should allow them to intervene for a limited purpose.

There should be no dispute that Proposed Amici satisfy the requirements of mandatory intervention; they have a clear interest in the transaction at issue (the Merger Agreement and Twitter's withholding of severance), are situated such that the Court's ruling may have a negative practical impact on their ability to protect that interest. *See Sierra Club v. Glickman*, 82 F.3d 106, 109–10 (5th Cir. 1996) (the stare decisis effect of an adverse judgment constitutes a sufficient impairment to compel intervention). *Cf. Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (referring to *Glickman* as "persuasive"). And as to adequacy, and with the greatest of respect for Plaintiffs' counsel, the Supreme Court has instructed that only a minimal showing is required, *Trbovich v. United Mine Workers of Am.*, 404

10

U.S. 528, 538 (1972), and the Third Circuit has held that the potential for differing imperatives is sufficient. *Kleissler*, 157 F.3d at 974.

But the Court need not address adequacy of representation at all, because even if Proposed Amici are not entitled to mandatory intervention, the Court should exercise its discretion to permit Proposed Amici to intervene under Rule 24(b)(1)(B). Federal Rule of Civil Procedure 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." This very situation – where additional parties with similar claims or defenses seek to intervene in order to present significant arguments not raised by the existing parties – is the paradigmatic situation in which permissive intervention should be granted. *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011) (District Court abused its discretion in denying permissive intervention where government's contributions were not "superfluous" and there was no undue delay);[1] *UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*, 2020 WL 5810562, at *3 (D.N.J. Sept. 30, 2020) (granting permissive intervention); *First Am. Bank Co. v. SJP Grp., Inc. Emp. Stock Ownership Tr.*, 2018 WL 11246702, at *2 (D.N.J. Feb. 9, 2018) (granting permissive intervention because intervenor "should have the opportunity to present

---

[1] The dissent in *Appleton* notably argued that intervention was improper because the District Court had allowed the government to protect its interest by filing an amicus brief. *Id.* at 140.

its arguments. Whether these arguments will ultimately prevail is a question for later in the proceedings").

Proposed Amici have timely moved for intervention and have claims that share with this action common questions of law with respect to the Motion to Dismiss. Specifically, as set forth in Proposed Amici's proposed brief in opposition to the Motion to Dismiss, each of their cases involves the same questions presented here regarding whether Twitter's "Continuing Employees" are third-party beneficiaries, whether Twitter's representations to its employees are sufficient to support claims for breach of contract and promissory estoppel, and whether employees fired for not "opting in" to Musk's "hardcore" approach should be treated as resignings. These arguments should be considered together with the Motion to Dismiss.

Granting Proposed Amici motion to intervene would not unduly delay or prejudice the adjudication of the original parties' rights. Twitter has yet to file its reply brief and will have adequate time to respond to Proposed Amici's arguments on the current schedule or a moderately extended schedule.

## III.  IN THE ALTERNATIVE, THE COURT SHOULD COORDINATE BRIEFING ON PLEADINGS MOTIONS IN THE RELATED ACTIONS

Finally, Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of fact or law, the court may: (1) join

for hearing or trial any or all matters at issue in the actions[.]" This action and the Arnold Action involve common questions of law with respect to Twitter's positions in the Motion to Dismiss, which will also be implicated when Twitter responds to the Arnold Complaint. In the interests of judicial economy, the relevant arguments should be heard at the same time to reduce the risk of inconsistent judgments and reduce the burdens on the parties involved in having multiple hearings on issues that overlap. *See Cleveland v. City of Montgomery*, 300 F.R.D. 578, 579-80 (M.D. Ala. 2014) (joining two actions, solely for purposes of a single hearing, because of the "significant value of eliminating unnecessary repetition, reducing the risk of inconsistent adjudications, and conserving judicial resources"). The most efficient and fair manner to proceed is for all parties to have the opportunity to participate in a single hearing for which the briefing has been coordinated. That can be efficiently accomplished either by allowing the Arnold Plaintiffs to submit a brief in opposition to the Motion to Dismiss or by holding in abeyance the hearing on the Motion to Dismiss until briefing on pleadings motions can also be presented in the Arnold Action.

## CONCLUSION

For the reasons set forth above, Proposed Amici respectfully request that the Court permit them to file an amicus brief, allow them to intervene, or coordinate briefing on pleading-stage motions with this action.

Respectfully submitted,

Dated: June 12, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Proposed Amici Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, Andrew Schlaikjer, Isabelle Cannell, Jaime Sena, and James Shobe*

14