# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL ANDRES BARRETO, and BRETT MENZIES FOLKINS,

Plaintiffs,

v.

TWITTER, INC.,

Defendant.

C.A. No. 1:23-cv-00441-CFC

**PROPOSED AMICUS BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING COUNTS I, II AND III OF THE CORNET COMPLAINT, OR, IN THE ALTERNATIVE, STRIKE PLAINTIFFS' CLASS ACTION ALLEGATIONS**

Dated: June 12, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Proposed Amici Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, Andrew Schlaikjer, Isabelle Cannell, Jaime Sena, and James Shobe*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................ii

ARGUMENT .........................................................................................2

   I.   Twitter Employees Have Standing to Enforce the Merger Agreement
       Provisions Governing Their Benefits..................................................2

       A.   The Merger Agreement unambiguously makes the Continuing
           Employees third-party beneficiaries ........................................4

       B.   Only the employees can enforce Section 6.9(a), therefore they have
           standing to do so as third-party beneficiaries. .......................10

       C.   Twitter is equitably estopped from denying employees' status as third-
           party beneficiaries. ...............................................................14

  II.  Twitter's Representations to the Employees Are Sufficient to Support Both
       Breach of Contract and Promissory Estoppel Claims....................16

  III. The Employees Fired After Elon Musk's November 16 Ultimatum Did Not
       Resign...........................................................................................19

CONCLUSION ...................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
   No. CIV.A. 2822-CC, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ............3, 11

*Bromwich v. Hanby*,
   No. CIV.A. S08C-07-008, 2010 WL 8250796 (Del. Super. Ct. July
   1, 2010) ........................................................................................................3

*Burge v. Fid. Bond & Mortg. Co.*,
   648 A.2d 414 (Del. 1994) ..................................................................14

*California Credits Group, LLC v. Briad Restaurant Group, LLC*,
   2022 WL 19263331 (C.D. Cal. May 11, 2022)....................................16

*Comrie v. Enterasys Networks, Inc.*,
   No. CIV. A. 19254, 2004 WL 293337 (Del. Ch. Feb. 17, 2004) ...................5, 8

*Crisco v. Board of Educ. of the Indian River School Dist.*,
   1988 WL 90821, Del.Ch., C.A. No. 9282 ..................................16, 17

*Crispo v. Musk*,
   No. 2022-0666-KSJM, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ........*passim*

*Dolan v. Altice USA, Inc.*,
   No. CV 2018-0651-JRS, 2019 WL 2711280 (Del. Ch. June 27,
   2019) ....................................................................................*passim*

*Fanean v. Rite Aid Corp. of Delaware, Inc.*,
   984 A.2d 812 (Del.Supr. 2009) .......................................................18

*Garcia v. World Sav., FSB*,
   107 Cal. Rptr. 3d 683 (Cal. App. 2d Dist. 2010)................................18

*Guardian Construction Co. v. Tetra Tech Richardson, Inc.*,
   Del.Supr., 583 A.2d 1378 (1990) ...........................................6, 7, 8, 9

*Insituform of N. Am., Inc. v. Chandler*,
534 A.2d 257 (Del. Ch. 1987) .................................................................5, 6, 7, 8

*James v. United Med., LLC*,
2017 WL 1224513 (Del. Super. Mar. 31, 2017)...............................................17

*Kuhn Const., Inc. v. Diamond State Port Corp.*,
990 A.2d 393 (Del. 2010) ..................................................................................11

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
363 F. Supp. 3d 476 (D. Del. 2019)...................................................................15

*Madison Realty Partners 7, LLC v. Ag ISA, LLC*,
No. CIV.A. 18094, 2001 WL 406268 (Del. Ch. Apr. 17, 2001)........................6

*Ndubizu v. Drexel Univ.*,
No. CIV.A. 07-3068, 2009 WL 3459182 (E.D. Pa. Oct. 26, 2009) ..................19

*Pedrick v. Roten*,
70 F. Supp. 3d 638 (D. Del. 2014).......................................................................3

*Prouty v. Gores Tech. Grp.*,
121 Cal. App. 4th 1225, 1237 (Cal. App. 2004)..................................................8

*Steinberg v. Unemployment Ins. Appeals Bd.*,
87 Cal. App. 3d 582 (Cal. App. 1978)...............................................................20

*Strong v. Cnty. of Santa Cruz*,
15 Cal. 3d 720 (1975) ........................................................................................14

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
840 A.2d 606 (Del. 2003) ..................................................................................16

*Wilmington Housing Authority, for Use of Simeone v. Fidelity &
Deposit Co. of Maryland*,
43 Del. 381 (1946) .......................................................................................*passim*

**Statutes**

Cal. Code Regs. tit. 22 §1256-1(c), (d)....................................................................20

**Other Authorities**

4 *Corbin on Contracts* §779C (1951) .......................................................................8

Non-parties Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer (collectively, the "Arnold Plaintiffs"), and Jim Shobe, Isabelle Cannell, and Jaime Sena (collectively the "Arbitration Claimants" and, collectively with Arnold Plaintiffs, "Proposed Amici"), respectfully submit this proposed Memorandum of Law in opposition to the motion to dismiss filed by Defendant Twitter, Inc. ("Twitter").

Twitter's motion centers around two incorrect legal contentions: first, that its employees lack standing and second, that Twitter's representations to its employees cannot support breach of contract or promissory estoppel claims. Both are wrong.

As to third-party standing, adoption of a "no third-party beneficiaries" clause is not dispositive. *Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at *7 (Del. Ch. Oct. 11, 2022). Where "a provision … cannot be enforced except by a third party," Delaware courts will find that third party has standing. *Id.* Indeed, the provision at issue here unambiguously makes the employees third-party beneficiaries, and Twitter is in any event equitably estopped from denying that.

Second, Twitter's representations about the contents of the merger agreement at issue (the "Merger Agreement") and the protections it provided employees are more than sufficient to support both breach of contract and promissory. Twitter made clear and specific promises to retain its employees through the close of the merger. Employees who remained at Twitter through the

merger accepted Twitter's offer and are entitled to enforce the resulting contract. And, in the alternative, the employees' detrimental reliance supports a promissory estoppel claim.

Finally, Twitter's argument that employees it decided to fire on November 17 actually resigned is legally frivolous. An employer cannot transform a firing into a resignation merely by announcing that it will fire anyone that does not engage in specified conduct and "deem it" a resignation.

## ARGUMENT

### I.   Twitter Employees Have Standing to Enforce the Merger Agreement Provisions Governing Their Benefits

Under Delaware law, third-party beneficiaries may enforce contracts to which they are not parties. In *Wilmington Housing Authority, for Use of Simeone v. Fidelity & Deposit Co. of Maryland*, 43 Del. 381 (1946) ("WHA"), the Delaware Supreme Court confirmed that right exists even if the contract did not specifically provide a right to sue, and laid down two key principles governing third-party beneficiaries' rights:

- *First*, a third-party beneficiary's right to sue does not hinge on whether the contracting parties *say* that they have it; that right is a legal result of the benefit conferred by the contract. *Wilmington Hous. Auth.*, 43 Del. at 390 ("The right to sue usually is a legal result of a relationship determinable by the Court. It arises by reason of a breach of duty and ordinarily not because the parties expressly say so").

- *Second*, where nobody other than the third-party could ever sue to enforce a provision of the contract, "[r]eal justice permits no other course" than

2

allowing the donee to do so. *Id.* at 394.

Those two principles have applied in the 75-plus years since. Thus, Delaware courts consistently reject the argument that the parties' inclusion of a "no third-party beneficiary" clause is determinative. *See*, *e.g.*, *Crispo*, 2022 WL 6693660, at *5 (Del. Ch. Oct. 11, 2022) ("such clauses are not entitled to any special deference … and they do occasionally yield to other contrary language"); *Dolan v. Altice USA, Inc.*, No. CV 2018-0651-JRS, 2019 WL 2711280, at *8 (Del. Ch. June 27, 2019); *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, No. CIV.A. 2822-CC, 2008 WL 4182998, at *5 (Del. Ch. Sept. 11, 2008).

Instead, courts consider whether the contract at issue evinces the parties' intent to confer a benefit on third parties, as donees or to satisfy an obligation, and as part of the contract's purpose. If so, those third parties are third-party beneficiaries and can enforce. *See*, *e.g. Pedrick v. Roten*, 70 F. Supp. 3d 638, 646 (D. Del. 2014). If the benefit to the third party was merely incidental, however, the third party cannot enforce the contract. *See*, *e.g.*, *Bromwich v. Hanby*, No. CIV.A. S08C-07-008, 2010 WL 8250796, at *2 (Del. Super. Ct. July 1, 2010).

And the second principle operates as a safety net and override: where a contractual promise could only be enforced by the third party it benefits, the donee has third-party beneficiary status *regardless* of anything to the contrary in the parties' contract. Twitter affirmatively represented to its employees that the Merger

3

Agreement protected their severance, inducing them to forgo seeking other

employment opportunities, and it is therefore equitably estopped from denying that

the employees can enforce that provision.

### A. The Merger Agreement unambiguously makes the Continuing Employees third-party beneficiaries

A non-party is a third-party beneficiary if: (1) the contracting parties

intended to confer a benefit on them; (2) the benefit was intended as a gift or in

satisfaction of an obligation to them; and (3) benefiting them was a material part of

the parties' purpose in entering the contract. *Crispo*, 2022 WL 6693660, at *3

(Twitter's stockholders not third-party beneficiaries under the Merger Agreement).

There should be no dispute over the first two elements; the Merger Agreement

expressly confers a benefit on the employees, Cohen Dec. Ex. 2, §6.9(a)-(d),[1]

---

[1] The relevant language provides:

(a) <u>Continuing Employee Benefits</u>. … Parent shall … provide ***for each Continuing Employee*** [compensation and benefits]… substantially comparable … to those provided to such Continuing Employee immediately prior to the Effective Time. … Parent shall provide … severance payments … ***to each Continuing Employee***

which was clearly intended to provide Twitter employees "with the security of [Musk's] promise" that their benefits and severance would remain stable after the merger. *See Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 269 (Del. Ch. 1987) (distinguishing between intended third-party beneficiaries and incidental or instrumental beneficiaries), *quoting* 4 *Corbin on Contracts* §779C at 40-41 (1951) ("If in buying the promise the promisee expresses an intent that [a] third party … receive … the security of the executory promise …"). When a promised performance is made directly to the beneficiary, courts "presume[] the contract was for the beneficiary's benefit." *Comrie v. Enterasys Networks, Inc.*, No. CIV. A. 19254, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004). Twitter fails to identify any party to the contract that the provisions of Section 6.9 were intended to benefit.

Nor should the third element be in question. A benefit conferred on a third party to enable or encourage the transaction is sufficient. *Dolan*, 2019 WL

---

whose employment is terminated during such period that are no less favorable than [previously available].

(b) …***[shall] recognize the service of each Continuing Employee***…

(c) … Continuing Employees ***shall not be required to*** satisfy any deductible … or similar requirements …

(d) … any waiting periods … shall be waived ***with respect to the Continuing Employees*** …

*Id.* (emphasis added).

2711280, at *8 (allegation that benefit was conferred to induce parties to agree to and support the merger was sufficient to meet this element). The provisions at issue must provide a benefit *to the* beneficiary as the intended result, not merely by happenstance and not merely because the benefit in question was also *directly* beneficial to the parties to the contract. For instance, in *Insituform*, from which *Crispo* ultimately derived the "purpose" requirement,[2] the contract was a shareholder's agreement that required shareholders to vote for the incumbent board of directors. *Insituform*, 534 A.2d at 261 (Del. Ch. 1987). After shareholders voted to remove the board, the board sued to enforce the shareholder agreement. *Id.* Holding the board did not have standing, the court explained that the key question was whether the shareholder's agreement was intended to prevent the shareholders from changing their minds:

> If, however, it was not the promisee's intention to confer direct benefits upon a third person, but rather such third party happens to benefit from the performance of the promise … then such third party [sic] beneficiary will be held to have no enforceable rights under the contract. …
>
> The legal question on this motion is then, did the promisees … utilize language that reflects an intention to create rights in the then existing board of INA to continued tenure for the term of Voting Agreement? That is, did it create such rights enforceable by incumbent board

---

[2] *Crispo* cited *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, No. CIV.A. 18094, 2001 WL 406268 (Del. Ch. Apr. 17, 2001). *Crispo*, 2022 WL 6693660 at *3**.** *Madison* cited *Guardian Construction Co. v. Tetra Tech Richardson, Inc.*, Del.Supr., 583 A.2d 1378, 1386-87 (1990), which cited *Insituform* as the source of the third element.

> members without regard to the future desires of the promisees and,
> indeed, even against their wishes?

*Insituform*, 534 A.2d at 269. Because the clear intent was to provide the

shareholders the board that they wanted, the Chancery court held that benefitting

the board was not a material part of the "purpose" of the shareholder agreement's

provisions. *Id.* at 270.

Similarly, relying on *Insituform*, *Guardian Construction Co.* held that a

construction company that prepared a project bid based on incorrect specifications

a design engineer provided to the project owner ("DNREC") could sue for

negligence, but not for breach of the design engineer's contract with DNREC.

*Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super.

Ct. 1990). That the specifications were of *practical* benefit to the construction

company did not mean the bidders were *legally* benefitted by, or intended

beneficiaries of, the design engineer's contract. *Id.* at 1387. Thus, although the

benefit of having the plans was intended by the contract for the plans' creation,

DNREC's motivation was not to confer a legal benefit on the bidders, merely to

complete a step necessary to the full project, and the construction company

therefore was not a third-party beneficiary. *Id.*

Here, in stark contrast, the parties to the Merger Agreement deliberately

crafted a benefit to be provided to Twitter's employees for ***the employees'*** benefit.

The language is unambiguous, reciting that Twitter's performance was to "provide

*for* each Continuing Employee" and "*to* each Continuing Employee" certain benefits. Cohen Dec Ex. 2, §6.9(a). *See also Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1237 (Cal. App. 2004) ("we conclude, as a matter of law, plaintiffs [employees] were intended beneficiaries of the rights extended to them in section 6 of the amendment. They were not barred by section 10.5 [disclaiming third-party beneficiaries] of the [stock sale] agreement from enforcing those rights, and they may continue to do so in this action"). It was intended to give the employees the "security of the promise" that their benefits, and specifically severance, could not be altered by post-merger Twitter, 4 *Corbin on Contracts* §779C at 40-41, a fact made undeniable by Twitter's immediate and repeated communication of that promise to its employees as it attempted to retain them. D.I. 40, ¶¶ 25-30.

Thus, unlike *Guardian Construction*, the relevant provisions here directly benefitted the employees – the performance would be rendered to *and* (expressly) *for* them, not to *or for* anyone else. *Cf. Comrie*, 2004 WL 293337, at \*3. Unlike *Guardian Construction*, where obtaining specifications was an independently necessary step in the completion of DNREC's project, preventing post-merger Twitter from degrading employee benefits is not a necessary element of a merger. Unlike *Insituform*, in which any benefit to the board was merely coincidental, here the benefit to the employees was the entire purpose of the relevant provisions. It is thus abundantly clear the parties' purpose in including §6.9(a) in the Merger

Agreement was to provide a benefit to the third-party employees.[3]

Finally, in these circumstances, analysis of the language of the Merger Agreement's "no third-party beneficiaries" clauses is misplaced and irrelevant. As the Delaware Supreme Court admonished in *WHA*, the legal effect of the Merger Agreement's provisions is for the courts to decide, not the parties to declare by fiat. *Wilmington Hous. Auth.*, 43 Del. at 390:

> Upon analysis, the exception is rather unique. The effect of it is to say that a third party beneficiary cannot sue, unless the contracting parties confer upon him the right to sue. The right to sue usually is a legal result of a relationship determinable by the Court. It arises by reason of a breach of duty and ordinarily not because the parties expressly say so. It seems somewhat anomalous to hold that a person's right to sue in any type of action depends upon an express statement in the contract that he shall have such right of action.

Even assuming the parties to the Merger Agreement did not want to allow the employees to sue to enforce the promises made for their benefit, the Court should be no more solicitous of that attempted exclusion of the right to sue than *WHA* was when parties attempted such an exclusion by silence. Where a contract is

---

[3] As such, it is no response to claim the parties were the ultimate intended beneficiaries of the increased employee retention they expected to result. *Dolan*, 2019 WL 2711280 at *8. That was an expected *practical* result, but §6.9(a) did not create any legal right to it; if every single Twitter employee had resigned the day after the contract was signed that would not have breached §6.9(a). Twitter is thus in the inverse position of the project owner in *Guardian Construction*. There, the legal benefit was limited to the parties to the contract, though practical benefits were expected to flow to downstream third parties. Here, the legal benefit of §6.9(a) was provided to the third-party employees, and any practical benefits to the contracting parties were downstream and legally uncertain.

ambiguous about whether it provides the required benefit to a third party, a "no third-party beneficiaries" clause can be evidence the parties lacked intent to benefit any third party. But that purported lack of intent must bow to the clear evidence of what the parties *actually did* in the Merger Agreement: Require post-merger Twitter to provide a particular performance *to* its employees*, for their benefit*. Under Delaware law, that is sufficient to confer standing.

### B. Only the employees can enforce Section 6.9(a), therefore they have standing to do so as third-party beneficiaries.

Separately, the employees have standing for an independently sufficient reason: they are the only parties who could ever enforce §6.9(a). Since *WHA*, Delaware courts have found that a contractual provision creates a third-party beneficiary when only the third party beneficiary could ever enforce it. That was an express concern of the Delaware Supreme Court in *WHA*:

> we are simply requiring the defendant to abide by the terms of its contract, for which it received consideration. Real justice permits no other course. Wilmington Housing Authority, being beyond reach of judicial process, has sustained and can sustain no actual loss by defendant's refusal to pay this use-plaintiff and would therefore be entitled only to nominal damages if suit were brought solely in its name. Accordingly, under the minority rule, there would be no way to compel a defendant to abide by its contract. Under the majority rule now adopted by us, 'the remedy is made as broad as the contractual obligation.'

43 Del. at 394. *See also Dolan*, 2019 WL 2711280, at *2 (refusing to dismiss on the basis of 'no third-party beneficiaries' clause in merger agreement where

10

"Section 6.4 expressly contemplates that Altice will have performance obligations that extend well beyond closing. And, by its terms, Section 6.4 is clear that the beneficiaries of Altice's commitment to operate News12 according to the News12 business plan … could only enforce that commitment as third-party beneficiaries"); *Amirsaleh*, 2008 WL 4182998, at *5 (disregarding "no third party beneficiaries" clause where "there is little legitimate question that the members of NYBOT were intended beneficiaries … because the Agreement manifests an unambiguous intent to benefit [them]"). *Cf. Crispo v. Musk*, 2022 WL 6693660 at *7 ("*Amirsaleh* can also be praised for its practical approach to the law ... Had the court denied third-party beneficiary status … neither the contracting party nor anyone else would have been positioned to enforce the plaintiff-member's election rights under the merger agreement"), *8 ("had the *Dolan* court dismissed the plaintiffs' claims on the basis of a lack of third-party standing, no one else was positioned to enforce the contractual language at issue").

And this makes sense. It is well-settled that courts may not read provisions of the agreement out of the contract. *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010). And reading a "no third-party beneficiaries" clause as preventing *any* party from enforcing a provision of a contract essentially reads that provision out of the contract entirely. *Dolan*, 2019 WL 2711280, at *9. Here, nobody other than the employees could ever sue to

enforce §6.9(a); as in *Dolan*, Section 6.9(a) of the Merger Agreement requires Twitter (and X Holdings I) to engage in particular *post-merger* conduct. Because Twitter and its parent company obviously are not going to sue themselves, only the employees could ever enforce those provisions. Thus, accepting Twitter's reading of the contract would dramatically rewrite Section 6.9(a):

> (a) … Parent ~~shall~~, … may, if it would like to do so, provide for each Continuing Employee (i) at least the same base salary and wage rate … Parent ~~shall~~ may, if it chooses, provide, or ~~shall~~ may, if it chooses, … provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period ~~that are no less favorable than those applicable to the Continuing Employee immediately prior to the Effective Time under the Company Benefit Plans~~.

That simply cannot be squared with the language of the Merger Agreement. Nor does Twitter's invocation of the "customized" nature of the 'no third-party beneficiaries' clause change that. To the contrary, the clause at issue in *Dolan* was "customized," carving out certain individuals and provisions as third-party beneficiaries and as having rights as third-party beneficiaries. *Dolan*, 2019 WL 2711280, at *8 ("Section 9.8 is specific in identifying who is and who is not intended to be a third-party beneficiary").

Moreover, neither of the two "no third-party beneficiaries" clauses in the Merger Agreement purport to disclaim the parties' intent to *confer a benefit* on the employees, merely to declare that conferring that benefit will, somehow, not confer *rights*. §6.9(e), which is specific to the employee benefits provisions of §6.9,

12

provides that "[n]othing contained in this Section 6.9, expressed or implied, shall … (ii) give any Company Service Provider (including any beneficiary or dependent thereof) or other Person any third-party beneficiary or other rights." Cohen Dec., Ex. 2, §6.9(e). And the more general provision in §9.7 likewise disclaims an intent to create third-party beneficiary rights. *Id.*, §9.7 (the agreement was "not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder"). But the Delaware test turns on whether the parties intend to confer a *benefit* on third parties, not on whether the parties intend to confer *rights* on a third party, and rights as a third-party beneficiary flow as a legal consequence of that conferral of benefit. *WHA*, 43 Del. at 394. Thus, while a "no third-party beneficiaries" clause can help resolve an ambiguity about whether the parties intended to confer a benefit, it cannot change a provision that *expressly requires* Twitter to provide specific benefits "to" and "for" non-parties to the contract into one that confers no benefit on them at all.[4]

---

[4] In *Dolan*, the court found that the mere presence of an otherwise unenforceable post-merger provision rendered ambiguous whether the parties intended to confer a benefit on third parties given the existence of the customized "no third-party beneficiaries" clause. 2019 WL 2711280, at *8. But in *Dolan*, unlike here, the provision at issue did not specifically identify any recipient of the performance, merely provided that Altice would operate News 12 in a particular way that *practically* would benefit the plaintiffs. *Id.* at *4. Here, §6.9(a) unambiguously confers a benefit on the employees.

### C. Twitter is equitably estopped from denying employees' status as third-party beneficiaries.

Finally, Twitter cannot contest its former employees' third-party beneficiary status because its representations to them that the Merger Agreement protected their severance equitably estops it from raising such a challenge. "[A] person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Strong v. Cnty. of Santa Cruz*, 15 Cal. 3d 720, 725 (1975).[5] The elements of equitable estoppel are: (1) the party to be estopped must know the facts and (2) intend that his conduct be relied on, and (3) the party asserting the estoppel must be ignorant of the true facts and (4) rely on the misrepresentation to his detriment.[6] *Id.*

Here, Twitter made representations to its employees about the severance that would be available to them if terminated after the merger. D.I. 40, ¶¶ 25-30. But Twitter did not just make representations about the severance standing alone: in the "Acquisition FAQ" document it circulated to employees, it expressly represented to them that the Merger Agreement "provides special protection for Tweep compensation and benefits for one year following the closing of the transaction."

---

[5] Because Twitter's representations emanated from its California corporate headquarters, the Court should apply California law.

[6] The elements are similar in Delaware. *See Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 420 (Del. 1994).

Cohen Dec. Ex. 2. It did so specifically to induce employees to remain with Twitter pending the merger, satisfying the second element. D.I. 40, ¶ 25. *Cf. Arnold*, D.I. 1 at ¶¶ 72-97, 153. To the extent Twitter now argues the Merger Agreement provided no such protections because the parties to that agreement did not intend to provide the employees with any enforceable rights with respect to their compensation or benefits, Twitter is affirmatively alleging that it knew the "true facts" at the time of its representation, satisfying the first element.[7] That Twitter proffers a complex (and, as shown above, incorrect) legal argument for why the Merger Agreement does not actually do what Twitter represented to its employees that the agreement was intended to do only confirms that the employees were justifiably ignorant of those "true facts," satisfying the third element. And the employees sufficiently allege that they detrimentally relied on Twitter's representation that the Merger Agreement protected their severance and benefits, *see, e.g.*, D.I. 40, ¶ 31, satisfying the fourth element.[8]

---

[7] Twitter's *defense*, in essence, is that it intentionally defrauded its employees.

[8] The Court should disregard Twitter's footnoted argument, D.I. 78 at 15 n. 5, that in some states refraining from seeking other employment may not be sufficient detrimental reliance. *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 497 (D. Del. 2019) ("Courts traditionally do not consider arguments presented entirely in the footnotes").

## II.    Twitter's Representations to the Employees Are Sufficient to Support Both Breach of Contract and Promissory Estoppel Claims

Twitter's argument that its representations to its employees were insufficient to support a contract or promissory estoppel are similarly misplaced.

### A. Twitter's promises can support a breach of contract claim

To survive a motion to dismiss a breach of contract claim, a complaining party need only plead facts that plausibly establish: (1) the contract's existence; (2) breach of an obligation imposed by it; and (3) damages from the breach. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). That is true regardless of which state's law would apply under a choice of law analysis. *Cf. California Credits Group, LLC v. Briad Restaurant Group, LLC*, 2022 WL 19263331 at *3 (C.D. Cal. May 11, 2022).

Delaware law has consistently recognized that an employer's promises in official communications can create contractual rights. *L.H. Doane Assocs v. Seymour*, Del.Supr., Del. Supr. 172, 1984, Horsey, J. (April 23, 1985) (Order); *Crisco v. Board of Educ. of the Indian River School Dist.*, 1988 WL 90821, Del.Ch., C.A. No. 9282, Berger, V.C. (Aug. 29, 1988). In *Crisco*, promises in an employee handbook created a binding, unilateral contract supported by the consideration of the employee continuing to work there when the employee did not have to. *Id*. at *4 ("We see no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted

16

by the employee through his continuing to work when he is not required to do so")
(cleaned up). The message, not the medium, controls; whether the promise is
communicated to employees through a handbook or, as in this case, a company-
wide email, a promise is a promise, and promises supported by acceptance and
adequate consideration form binding and enforceable contracts.

    The Chancery Court, in determining whether the contract had been created
in *Crisco*, first assessed whether the language was specific enough to constitute an
offer. *Crisco*, 1988 WL 90821 at *4, *citing Campbell*, 512 So.2d at 733-34. If the
language is specific and actually communicated to the employee, the courts next
ask whether the employee accepted the offer by continuing employment. *Id*., *citing
Campbell*, 512 So.2d at 735. The employee's actual performance supplies
consideration and creates the binding agreement. *Id*. Here, Twitter made specific
promises to employees that the Merger Agreement would protect their severance
and benefits, and, separately, specific promises to employees about what that
severance would consist of. Cohen Dec. Ex. 2. And the employees have alleged
that they accepted those offers by continuing their employment. The law requires
nothing more.

    Finally, to the extent Twitter argues that its promises to the employees were
pre-empted by the Merger Agreement or subsequently changed by other, post-
employment formal agreements, those questions of fact cannot be decided at this

stage of the litigation. *See James v. United Med., LLC*, 2017 WL 1224513 at \*6 (Del. Super. Mar. 31, 2017). In any event, the argument is frivolous. Even were Twitter correct in its claim that the Merger Agreement *did not* protect the employees severance or benefits on its own terms, that would not prevent Twitter from separately contracting with (or representing to) its employees that the terms of the Merger Agreement *would be* sufficient to do so. To the extent that the Merger Agreement did not provide the employees with a right to enforce its terms, Twitter's separate contract with its employees would fill that gap and provide the right to enforce the Merger Agreement.

### B.  Twitter's promises support promissory estoppel.

In the alternative, the same representations and communications would support the employees' claims for promissory estoppel. The elements of a promissory estoppel claim are: (1) a promise was made; (2) the promisor reasonably expected the promisee to take action or forbearance; (3) the promisee reasonably relied upon the promise and took action or forbearance to her detriment; and (4) injustice may be avoided by enforcement of the promise. *See Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812, 822 (Del.Supr. 2009), *citing Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024 (Del. 2003). To be enforceable under the doctrine of promissory estoppel, a promise need only be so definite that a reviewing court may determine the scope of the duty

and the limits of performance. *See Garcia v. World Sav., FSB*, 107 Cal. Rptr. 3d 683, 696 (Cal. App. 2d Dist. 2010).

Twitter's promises to its employees were clear and specific. Twitter intended its promises to induce reliance by the employees, as alleged in the operative complaint and Proposed Amici's actions, and were Twitter to dispute that allegation it would be improper for the Court to resolve that factual dispute on a motion to dismiss. And continuing employment rather than seeking other jobs can be sufficient detrimental reliance to support an estoppel. *See*, *e.g.*, *Ndubizu v. Drexel Univ.*, No. CIV.A. 07-3068, 2009 WL 3459182, at *4 (E.D. Pa. Oct. 26, 2009) ("Plaintiff provides a sufficient basis at this stage, for his promissory estoppel and fraud claims to survive a futility challenge. Plaintiff asserts, with his promissory estoppel claim, that he decided not to pursue employment at another university in reliance on Drexel's promise to provide him a chaired professorship …").[9]

### III.   The Employees Fired After Elon Musk's November 16 Ultimatum Did Not Resign

Finally, the Court should reject Twitter's argument that employees who did

---

[9] It is no argument to claim that some jurisdictions may require more. If even one Twitter employee had sufficient detrimental reliance to estop Twitter from negatively changing its severance policy, then enforcement of that promise – as would be the result of the estoppel – would require Twitter to provide the promised severance to *all* affected employees. *See Arnold*, 1:23- cv- 00528, at D.I. 1, ¶¶ 319-330.

not "click the link" in Twitter's November 16, 2022 email "voluntarily resign[ed]." D.I. 78 at 6. At no point did any affected employees indicate their unwillingness to continue in their jobs; rather, Twitter announced that it would terminate anyone who did not "opt in" to Elon Musk's proposed "hardcore" work environment, and then did so. That is a firing. *See*, *e.g.*, *Steinberg v. Unemployment Ins. Appeals Bd.*, 87 Cal. App. 3d 582, 585 (Cal. App. 1978) (employee's voluntary action, even one he knows or should have known could jeopardize his job, does not represent a voluntary resignation unless it makes it impossible for the employer to utilize his services); Cal. Code Regs. tit. 22 §1256-1(c), (d) (employer that prohibits a willing and able employee from continuing to work has fired them). Twitter's "one neat trick" attempt to evade its severance obligations to the employees it decided to fire on November 17, 2022 is ineffective, and must be rejected.[10]

## CONCLUSION

For the reasons set forth above, the Court should find that the employees have standing to enforce the merger agreement, that Twitter's representations to its employees can support breach of contract and promissory estoppel claims, and that the employees fired for not "clicking the button" did not thereby resign.

---

[10] Proposed Amici take no position on whether the complaint sufficiently alleges that Mr. Folkins was willing and able to continue to work.

Respectfully submitted,

Dated: June 12, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*
forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN
P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Proposed Amici*
*Wolfram Arnold, Erik Froese, Tracy*
*Hawkins, Joseph Killian, Laura Chan*
*Pytlarz, Andrew Schlaikjer, Isabelle*
*Cannell, Jaime Sena, and James Shobe*

21