# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL ANDRES BARRETO, and BRETT MENZIES FOLKINS,<br><br>                Plaintiffs,<br><br>   v.<br><br>TWITTER, INC.,<br><br>                Defendant. | C.A. No. 1:23-cv-00441-CFC |

## DECLARATION OF AKIVA M. COHEN IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*

Dated: July 24, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

Attorneys for Proposed Intervenors

1. I am a Partner at Kamerman, Uncyk, Soniker, & Klein, P.C., counsel to non-parties Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer (collectively, the "Arnold Plaintiffs") along with Jim Shobe, Isabelle Cannell, and Jaime Sena ("Arbitrating Claimants" and, collectively with Arnold Plaintiffs, the "Proposed Amici"). I submit this Declaration in further support of Proposed Amici's Motion for Leave to File Brief As Amicus Curiae, to Intervene for a Limited Purpose or to Coordinate Briefing with Related Case (the "Motion"). I have personal knowledge of the facts set forth herein and could and would testify competently thereto if required to do so.

2. In its opposition, Defendant ("Twitter") complains about the timing of the motion, asserting that Proposed Intervenors "could have sought amicus participation (or intervention) at any time over the last seven months while the Cornet Action has been pending." D.I. No. 90 at 9. However, it was not until Proposed Intervenors reviewed the Cornet Plaintiffs' brief in opposition to Twitter's motion to dismiss and observed the absence of several key arguments and realized that several key arguments had not been included, leaving Proposed Intervenors' rights vulnerable to an adverse decision with respect to the Court's interpretation of the Merger Agreement, that intervention (or submission of an amicus brief) became necessary (or, indeed, useful). Only upon confirmation that

Proposed Amici would have new and important arguments to add on these issues did the Motion make sense.

3. The Cornet Plaintiffs filed their opposition brief on June 7, 2023. On June 8, I emailed counsel for the parties asking if they would consent to our intervention. On June 9, we received confirmation that we would need to make a contested motion and informed the parties that we would do so. The Motion itself was filed on June 12, 2023, the next business day. Plaintiffs have not opposed the Motion.

4. Finally, given Twitter's argument that grant of the Motion, in whatever form, would unduly delay the proceedings in *Cornet*, it is important to point out the extent to which Twitter's expressed concern for speed is newly discovered for tactical advantage on this Motion. Far from seeking the expeditious resolution of claims against it as a matter of principle, Twitter's approach to the claims against it has been marked by a consistent pattern of intentional delay.

5. Although Defendants' form Dispute Resolution Agreement ("DRA") requires employees bound by it to arbitrate with Twitter "according to the then-current JAMS rules," and though JAMS-invoiced case initiation and arbitrator fees are due upon receipt of the JAMS-issued invoice, Twitter has adopted a policy of deliberately delaying the payment of *each* invoice for roughly 30 days if not more.

6. Twitter initially defended its policy of delay on the (incorrect) basis that California law allowed it to delay each payment by up to 30 days. *See Rodriguez v. Twitter, Inc.*, No. 3:22-cv-07222-JD (N.D. Cal.), D.I. 46 at 10, n. 2. But after counsel pointed out that Twitter was simultaneously arguing that California law did not apply to arbitrations from other states where Twitter was also delaying fees, in response to Claimants from those states seeking sanctions under the California statute, Twitter expressly acknowledged that California law provided no such dispensation and that it had simply self-imposed the 30-day delay policy on the theory that payment within 30 days would be "reasonable." Exhibit 1 hereto.

7. As a result, every arbitration is delayed by sixty days *at a minimum* – 30 days for the case-initiation fees and 30 additional days for the initial deposit of fees once the arbitrator in each matter has been selected.

8. Twitter has also adopted a policy of insisting that JAMS decline to administer arbitration demands from employees who did not retain a copy of their own fully executed DRAs, even though Twitter represented to the Northern District of California that it maintained a copy of each DRA in its own files. *See Cornet v. Twitter Inc.*, 3:22-cv-06857 (N.D. Cal.), D.I. No. 18-1. Instead of providing such DRAs to JAMS (or simply not contesting the arbitrability with JAMS of claims Twitter knows for a certainty it agreed to arbitrate at JAMS), Twitter demands – for no reason *other* than delay – that its former employees

separately request and obtain a copy of the fully executed DRA from Twitter's files before JAMS can take jurisdiction.

9. But the deliberate delay gets worse. The process Twitter provided for doing so is for former employees to send an email to [PeopleQuestions@twitter.com](mailto:PeopleQuestions@twitter.com) - a black-hole email alias to which questions get submitted, but from which responses almost never come. At least some of my clients have been trapped in this bad-faith Kafkaesque procedural dodge for months.

10. As a result of these delays, Twitter has utterly frustrated the "speedy and efficient" nature of arbitration. In fact, and due solely to Twitter's intentional imposition of delay, arbitrations my clients filed in February – more than five months ago – still have not advanced to the initial conference.

11. Isabelle Cannell submitted her demand for arbitration on February 24, 2023. Due to Twitter's dilatory payment of her case initiation fees, her arbitration did not commence until May 11, 2023. And Twitter still has not paid the arbitrator appointment fees in her case; as a result, her arbitration is stalled to this day – *five months later*.

12. Jim Shobe, like Isabelle, submitted his demand for arbitration on February 24th. Twitter managed to delay the commencement of his arbitration

5

until May 12, 2023; like Isabelle, Twitter's refusal to pay his arbitrator appointment fees leaves his arbitration unable to proceed.

13. Under the circumstances, the Court should give no attention at all to Twitter's complaint that grant of this Motion might briefly delay the proceedings in *Cornet.* The Motion should be granted.

I declare under penalty of perjury under the laws of the State of Delaware and the United States that the foregoing is true and correct.

Executed this 27th day of July 2023 in Monticello, N.Y.

_____
Akiva M. Cohen