IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS,<br><br>*Plaintiffs*,<br><br>v.<br><br>TWITTER, INC.,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 23-cv-441-TMH<br>)<br>)<br>)<br>)<br>) |

**THE PRESS COALITION'S MOTION TO
INTERVENE AND FOR UNSEALING OF JUDICIAL RECORDS**

**PRELIMINARY STATEMENT**

This proceeding relates to events that have been the subject of much public interest and attention: Elon Musk's acquisition of Twitter, Inc. and the controversial mass layoffs that immediately followed that acquisition. Nonetheless, a significant number of the case's filings are currently shielded from public view. Since November 2024, a total of 26 documents have been filed under seal in their entirety, each time without opposition from either party. *See* D.I. 98 (including attachments), D.I. 108 (including attachments), D.I. 106 (including attachments), D.I. 111 (including attachments), D.I. 114-2, and D.I. 117-2-8. That these documents are under seal in the absence of any meaningful justification is contrary to our legal system's "strong presumption of openness," which "does not permit the routine closing of judicial records to the public." *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) (internal quotation marks omitted).

Non-parties American Broadcasting Companies, Inc. d/b/a ABC News; the Associated Press; Bloomberg L.P. d/b/a Bloomberg News; Cable News Network, Inc. ("CNN"); Dow Jones

& Company, Inc., publisher of *The Wall Street Journal*; Forbes Media; Guardian News & Media Limited; Insider Inc. d/b/a *Business Insider*; NBCUniversal Media, LLC d/b/a NBCUniversal News Group; The New York Times Company; *Wired*, published by Advance Magazine Publishers Inc.; and WP Company LLC d/b/a *The Washington Post* (collectively, the "Press Coalition") now move, pursuant to Federal Rule of Civil Procedure 24(b), to intervene in this proceeding for the limited purpose of vindicating the public's right to access court records.

The Press Coalition seeks to unseal the documents referenced above, each of which was filed in connection with Twitter's still-pending motion to dismiss. Those documents are subject to the common law right of access under which sealing is permissible only upon a judicial finding that the party favoring secrecy has demonstrated, with specificity, that disclosure would cause some serious injury to a recognized interest. That showing has not been made, and, indeed, cannot be made, here. The Press Coalition should be permitted to intervene in this proceeding, and the documents at issue should be unsealed and made immediately available to the public.[1]

## BACKGROUND

### I. THE PUBLIC INTEREST IN TWITTER'S MASS LAYOFFS

The basis and course of this proceeding are matters of substantial public interest. The lawsuit arises out of the mass layoffs at Twitter that immediately followed Mr. Musk's October 2022 acquisition of the company. D.I. 40 ¶¶ 2, 33. The Plaintiffs are former Twitter employees who contend that, after acquiring Twitter, Mr. Musk directed the company to renege on multiple

---

[1] Prior to filing this motion, counsel for the Press Coalition reached out to counsel for the parties to get their positions on the relief being sought. Plaintiffs take no position on the motion. Twitter has retained new counsel for the purposes of a response to this motion, and a response will be forthcoming.

2

promises that any laid-off employees would receive the same severance benefits extended to Twitter employees prior to the acquisition. *Id.* ¶¶ 25-43. Plaintiffs allege that, as a result of these purported broken promises, they and other terminated employees received substantially less in severance than they were due. *Id.* ¶¶ 33-43.

The Twitter layoffs have been the subject of considerable public commentary and attention, much of it focused on the controversy over whether, as alleged in this lawsuit, the laid-off employees were ill-treated under Mr. Musk's leadership, as well as on speculation that Mr. Musk was using the layoffs to fundamentally reorient the powerful social media platform.[2] That public interest continues to this day, especially in light of Mr. Musk's recent activities in relation to the Department of Government Efficiency ("DOGE"), through which he is overseeing a controversial round of mass layoffs within the federal workforce.[3]

---

[2] *See, e.g.*, Kate Conger *et al.*, *Two Weeks of Chaos: Inside Elon Musk's Takeover of Twitter*, THE NEW YORK TIMES (Nov. 11, 2022), https://www.nytimes.com/2022/11/11/technology/elon-musk-twitter-takeover.html; Alexa Course *et al.*, *Twitter Workers Said to Resign by the Hundreds After Elon Musk Set Employment Ultimatum*, THE WALL STREET JOURNAL (Nov. 18, 2022), https://www.wsj.com/articles/twitter-workers-brace-for-another-round-of-departures-as-musk-ultimatum-looms-11668716881; Joel Rosenblatt, *Twitter Accused of Ducking a Fight Over Musk's Mass Layoffs*, BLOOMBERG (July 3, 2023), https://www.bloomberg.com/news/articles/2023-07-03/twitter-s-legal-fight-over-musk-s-mass-layoffs-blows-up; Lora Kolodny, CNBC (Mar. 4, 2024), https://www.cnbc.com/2024/03/04/former-twitter-execs-sue-elon-musk-and-x-for-128-million-in-severance.htmlhttps://www.nbcnews.com/tech/tech-news/former-twitter-execs-sue-musk-x-128-million-severance-rcna141836; Charlie Moloney, *Elon Musk defends Twitter layoffs, saying staff given three months' pay*, THE Guardian (Nov. 5, 2022), https://www.theguardian.com/technology/2022/nov/05/elon-musk-defends-twitter-layoffs-saying-staff-given-three-months-pay; Victor Ordonez, *Commit 'hardcore' or leave, Elon Musk tells Twitter employees*, ABC NEWS (Nov. 16, 2022), https://abcnews.go.com/Business/commit-hardcore-leave-elon-musk-tells-twitter-employees/story?id=93411363.

[3] *See, e.g.,* Zoë Schiffer, *Elon Musk Is Running the Twitter Playbook on the Federal Government*, WIRED (Jan. 29, 2025), https://www.wired.com/story/elon-musk-twitter-playbook-federal-government/; Derek Saul, *Here's What Happened After Elon Musk Cut 80% Of X's Employees—As He Eyes Reshaping Federal Workforce*, FORBES (Feb. 6 2025), https://www.forbes.com/sites/dereksaul/2025/02/05/heres-what-happened-after-elon-musk-cut-

## II.     THE SEALED DOCUMENTS

This motion concerns multiple sealed documents currently on the court docket.  On May 17, 2023, Twitter filed a motion to dismiss the operative Second Amended Complaint, arguing, *inter alia*, that none of the purported promises regarding severance benefits is enforceable by the former Twitter employees.  D.I. 77-78.  On June 7, 2023, Plaintiffs filed their opposition.  D.I. 82.  While those filings, and Twitter's subsequent reply, D.I. 88, are available for public review and scrutiny, subsequent filings connected to the pending motion to dismiss are not.

On November 26, 2024, Plaintiffs moved for leave to file under seal a Notice of Supplemental Authority in support of their opposition to the motion to dismiss, along with supplemental authority consisting of four arbitration awards obtained by other ex-Twitter employees in parallel actions against Twitter and a sample arbitration demand.  D.I. 99.  Twitter then weighed in to support the sealing, asserting that the "arbitration awards," as well as any documents that "describe the substance of the arbitrations" "should be sealed from public view" because the "arbitrations . . . are subject to confidentiality agreements."  D.I. 100.  The Court granted the unopposed motion to seal.  D.I. 101.

---

80-of-xs-employees-as-he-eyes-reshaping-federal-workforce/; Pranav Dixit, *Trump's government-worker buyouts are feeling a lot like Musk's Twitter in 2022*, BUSINESS INSIDER (Jan. 28, 2025), https://www.businessinsider.com/trump-buyout-offer-government-workers-elon-musk-twitter-layoff-strategy-2025-1; Hannah Natanson *et al.*, *Move fast, break things, rebuild: Elon Musk's strategy for U.S. government*, WASHINGTON POST (Feb. 24, 2025), https://www.washingtonpost.com/technology/2025/02/24/doge-fast-cuts-federal-workers-programs-elon-musk/; Clare Duffy *et al.*, *They lived through Elon Musk's Twitter takeover. Now, they have advice for federal government employees*, CNN (Feb. 5, 2025), https://www.cnn.com/2025/02/05/tech/musk-x-twitter-takeover-us-government-employee-advice/index.html; Matt O'Brien *et al.*, *How the tactics Musk brought to Washington backfired at Twitter*, THE ASSOCIATED PRESS (Feb. 7. 2025), https://apnews.com/article/elon-musk-twitter-takeover-x-doge-government-efficiency-e78ac431e7bbf2ae8513594078f1408b.

Plaintiffs subsequently moved to file four similar filings under seal, the most recent of which was filed on March 21, 2025. D.I. 109, 112, 115, 118. With the exception of the latest request, which the Court has not yet ruled upon, each time, the Court granted the unopposed sealing request. D.I. 110, 113, 116. Each time, the only rationale for sealing offered was that "Twitter takes the position that arbitration awards and filings are confidential," and that "the arbitral awards contain some personally identifying information." D.I. 109, 112, 115, 118.

At present, the following filings (the "Sealed Documents") are entirely under seal:

- D.I. 98 and attached exhibits, which consist of four arbitration awards against Twitter from parallel proceedings, a related arbitration demand, and Plaintiffs' explanation of the significance of the awards to Twitter's motion to dismiss;

- D.I. 108 and attached exhibits, which consist of four additional arbitration awards against Twitter from parallel proceedings, Plaintiffs' response to Twitter's Response to Plaintiffs' Notice of Subsequent Authority (D.I. 106), a copy of a discovery letter Twitter submitted in one of the arbitrations, and a copy of a Notice of Supplemental Authority Twitter filed in other proceedings relating to one of the arbitration awards;

- D.I. 111 and attached exhibits, which consist of an additional arbitration award against Twitter from a parallel proceeding and Plaintiffs' explanation of the significance of that award to Twitter's motion to dismiss;

- D.I. 114-2, which is an additional arbitration award against Twitter from a parallel proceeding; and

- D.I. 117-2-8, which consist of seven additional arbitration awards against Twitter from parallel proceedings.

Plaintiffs have explained that the sealed arbitration awards support their opposition to Twitter's motion to dismiss because they refute Twitter's assertion that no reasonable factfinder could find in favor of Plaintiffs on their claims for certain severance benefits. D.I. 115-1, 118-1.

The Press Coalition now moves to unseal those filings, each of which was sealed in contravention to the public's common law right of access to judicial materials.

## ARGUMENT

### I. THE PRESS COALITION SHOULD BE PERMITTED TO INTERVENE.

Intervention is the appropriate vehicle for journalists and news organizations to vindicate the right of the public and press to access judicial records. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994). The Third Circuit has "routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings," and that press organizations "may have standing notwithstanding the fact that 'they assert rights that may belong to a broad portion of the public at large.'" *Id.* (citations omitted); *see also, e.g.*, *United States v. Wecht*, 537 F.3d 222, 232 (3d Cir. 2008) (media intervenors had standing to challenge restrictions on access to names of jurors).

Indeed, judges in this District have repeatedly lamented that requests to seal typically come to them unopposed, as the sealing requests did in this case, thus requiring courts to determine whether the extraordinary circumstances justifying sealing are present without the benefit of the adversarial process. *See, e.g.*, *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms., Inc.*, 2019 U.S. Dist. LEXIS 218029, at *1-2 (D. Del. Dec. 19, 2019) (Andrews, J.) (noting the difficulty courts face in "reign[ing]" in the "tendencies" of "corporate parties in complex litigation [to] prefer to litigate in secret" where "there is usually no one opposing whatever [sealing] requests are made"); *In re Storag Etzel GmbH*, 2020 U.S. Dist. LEXIS 12374, at *2 (D.

6

Del. Jan. 23, 2020) (Connolly, J.) (enumerating difficulties of protecting the "public . . . right of access to our filings" in the context of "unopposed motions to seal proceedings").

The Press Coalition should, accordingly, be permitted to intervene for the limited purpose of opposing continued sealing and seeking access to the Sealed Documents.

**II.    THE SEALED DOCUMENTS SHOULD BE UNSEALED UNDER THE COMMON LAW RIGHT OF ACCESS.**

This Court should also order the unsealing of the Sealed Documents, which is mandated by the common law right of access. It is well settled that "the common law presumes that the public has a right to access to judicial materials." *Avandia*, 924 F.3d at 672. This "common law right of access" encompasses the right "to inspect and copy public records and documents, including judicial records and documents." *Id.* (internal quotation marks omitted). As the Third Circuit has emphasized, this "right of access is not a mere formality—it 'promotes public confidence in the judicial system'; 'diminishes possibilities for injustice, incompetence, perjury and fraud'; and 'provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness.'" *Id.* at 677 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)); *see also MED-EL Elektromedizinische Gerate Ges.m.b.H. v. Advanced Bionics, LLC*, 2024 U.S. Dist. LEXIS 32015, at **5-6 (D. Del. Feb. 26, 2024) ("Motions to seal judicial records are a big deal. They seek to shield from public view information that judges consider when rendering their decisions. Sealing orders deprive the public of information that it can use to assess a judge's ruling, and they deprive lawyers and parties of information they can use to distinguish or analogize a case—a fundamental part of the development of the law.").

Now-Chief Judge Connolly aptly summarized the law in this area as follows:

> The District Court is not a star chamber. We are a public institution in a democratic republic and the public has a right of access to our filings. This right is founded in the common law and "antedates the Constitution." The public's right of access is not absolute; but it is strongly presumed, and it can be overcome

7

only if a party demonstrates that public disclosure of a filing will result in a "clearly defined and serious injury."

*Etzel*, 2020 U.S. Dist. LEXIS 12374, at *2 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986), and *Avandia*, 924 F.3d at 672); *see also Genentech, Inc. v. Amgen Inc.*, Civ. No. 17-1407, 2020 U.S. Dist. LEXIS 54775, at *11 (D. Del. Mar. 30, 2020) (same). In this case, the common law right of access requires unsealing of the materials at issue.

### A. The Sealed Documents Are "Judicial Records," Subject to the Common Law Right of Access.

First, the Sealed Documents unquestionably constitute "judicial records," subject to the common law right of access. Under Third Circuit precedent, a document constitutes such a "judicial record" if it has been "filed with the court" in the context of "pretrial motions of a nondiscovery nature." *Avandia*, 924 F.3d at 672 (quoting *In re Cedant Corp.*, 260 F.3d 183, 192-93 (3d Cir. 2001)). That applies to the Sealed Documents—each was filed with the Court in opposition to a motion to dismiss. *See, e.g., id.* at 675 ("It is undisputed that each of the challenged documents are 'judicial records' subject to the common law right of access because the parties filed the documents on the District Court's public docket in support of, or in opposition to, GSK's motion for summary judgment.").

That the judicial records here are "creatures of contract," as Twitter has previously argued, does not alter this result. *See* D.I. 100 at 1-2 (asserting that, "[u]nlike litigation in federal courts, '[a]rbitration is fundamentally a creature of contract' that is dictated by the parties agreed-upon terms") (quoting *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 169 (3d Cir. 2009)). While it is true that arbitrations, because they are rooted in private contractual arrangements, are not themselves subject to any rights of public access, once

8

materials from an arbitration proceeding are filed in court, they become presumptively public judicial records.

For instance, in *Pennsylvania National Mutual Casualty Insurance Group v. New England Reinsurance Corp.*, 840 F. App'x 688, 689-91 (3d Cir. 2020), the Third Circuit affirmed an order unsealing an arbitration award that was filed in support of a confirmation petition. In opposing unsealing, the party that filed the arbitration award made essentially the same argument Twitter has made here, asserting that, as an "arbitration award," the sealed filing was "not a judicial record to which the common-law right of access applies." *Id.* at 690. The Third Circuit disagreed. The Court explained, in terms equally applicable here, that the fact that the arbitration award was filed with the court outside the context of a discovery motion was itself sufficient to render it a judicial record for these purposes.[4] *Id.* at 691 ("Penn National filed the arbitration award on the docket with the District Court as part of its motion to confirm the award. Thus, according to our precedents, the award became a judicial record subject to the common-law right of access."); *see also In re Storag Etzel GmbH*, 2020 U.S. Dist. LEXIS 97953, at \*\*19-25, \*44-83 (D. Del. Mar. 25, 2020) (common law right of access required unsealing of arbitration awards

---

[4] The Court in *Pennsylvania National Mutual* reached this conclusion even though, by the time the third-party motion to unseal was filed, the matter had been settled and the petition to confirm the arbitration award had been withdrawn. 840 F. App'x at 689. In other words, the filing of the arbitration award on the court's docket automatically rendered it a judicial record, subject to the common law right of access, regardless of whether the filing ended up being pertinent to any past or future judicial action.

9

filed with the court), *R.&R. adopted in relevant part*, *In re Storag Etzel GmbH*, 2020 U.S. Dist. LEXIS 97836 (D. Del. June 3, 2020).

The Sealed Documents are, thus, judicial records, subject to the common law right of access.

### B. The Common Law Right of Access That Attaches to the Sealed Documents Cannot be Overcome.

Second, the presumption of public access that attaches to the Sealed Documents as judicial records cannot be overcome in this case. The Third Circuit has explained that "the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access." *Avandia*, 924 F.3d at 676. This strong presumption of public access can be overcome only if the party in favor of sealing can demonstrate that "the material is the kind of information that courts will protect and that the disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 672 (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). Crucially, "concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *Id.* at 676. Nor can the presumption of access be defeated with "[b]road allegations of harm, bereft of specific examples or articulated reasoning." *Id.* at 673 (quoting *In re Cendant Corp.*, 260 F.3d at 194). Ultimately, to uphold a request to seal judicial records, a "District Court must articulate 'the compelling, countervailing interests to be protected,' [and] make 'specific findings on the record concerning the effects of disclosure.'" *Id.* at 672 (quoting *In re Cendant Corp.*, 260 F.3d at 194).

The continued sealing of the Sealed Documents cannot be justified in accordance with these standards. As explained above, the Third Circuit has already squarely rejected the argument that arbitration materials, once filed in court, constitute "the kind of information that

10

courts will protect." *See supra* at 9 (discussing *Pennsylvania National Mutual Casualty Insurance*). That is the sole justification for sealing Twitter has offered. As for Plaintiffs, all they have done, beyond deferring to Twitter's non-specific invocations of confidentiality, is note that "the arbitral awards contain some personally identifying information." D.I. 99, 109, 112, 115. If that does create a sufficient privacy interest to justify some continued sealing—and the Press Coalition, having not seen the awards, cannot definitively say one way or the other—that is easily addressed through narrowly targeted redactions. *See Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, 2017 U.S. Dist. LEXIS 137678, at *7 (D. Del. Aug. 28, 2017) ("A document is not sealed in its entirety simply because it contains trade secrets or confidential information, rather, the protection sought must target the specific secrets and confidential information."). Neither party has pointed to any "clearly defined and serious injury" that would come close to justifying wholesale sealing of the materials.

The continued sealing of the Sealed Documents cannot be justified under the common law right of access. To the extent either party offers additional grounds for sealing in oppositions to this motion, the Press Coalition reserves the right to respond in reply.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that (1) it be permitted to intervene in this proceeding; and (2) the Court unseal and make publicly accessible the following docket entries: D.I. 98 (including attachments), D.I. 108 (including attachments), D.I. 106 (including attachments), D.I. 111 (including attachments), D.I. 114-2, and D.I. 117-2-8.

11

Dated: March 25, 2025

| OF COUNSEL | BALLARD SPAHR LLP |
|---|---|
| Kaitlin M. Gurney* <br> Paul J. Safier* <br> BALLARD SPAHR LLP <br> 1735 Market Street, 51st Floor <br> Philadelphia, PA 19103-7599 <br> Tel: (215) 665-8500 <br> gurneyk@ballardspahr.com <br> safierp@ballardspahr.com <br><br> * *pro hac vice motion forthcoming* | /s/ *Beth Moskow-Schnoll* <br> Beth Moskow-Schnoll (# 2900) <br> BALLARD SPAHR LLP <br> 919 N. Market Street, 11th Floor <br> Wilmington, DE 19801 <br> Tel: (302) 252-4447 <br> moskowb@ballardspahr.com <br><br> *Counsel for the Press Coalition* |