IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL ANDRES BARRETO, and BRETT MENZIES FOLKINS,<br><br>*Plaintiffs*,<br><br>v.<br><br>TWITTER, INC.,<br><br>*Defendant*. | C.A. No. 1:23-cv-441-TMH |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' NOTICES OF SUPPLEMENTAL AUTHORITY**

Dated: April 8, 2025

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

I. Nature and Stage of Proceedings ................................................................................ 1

II. Summary of the Argument........................................................................................... 1

III. Statement of Facts........................................................................................................ 2

IV. Standard of Review...................................................................................................... 4

V. Argument ..................................................................................................................... 5

    A. The Confidential Arbitration Awards Are Entirely Irrelevant to Twitter's Motion to Dismiss................................................................................................... 6

    B. Plaintiffs' Purported "Notices Of Supplemental Authority" Are Procedurally Improper. ........................................................................................... 8

    C. Plaintiffs' Filings Violate The Confidentiality Provisions of the DRA................ 10

    D. Plaintiffs' Filings Constitute An Improper Attempt To Undermine The Confidentiality Provisions Of The DRA............................................................... 12

VI. Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B Street Grill & Bar LLC v. Cincinnati Ins. Co.*,
525 F. Supp. 3d 1008 (D. Ariz. 2021) ...................................................................................9

*Billie v. Coverall N. Am., Inc.*,
2024 WL 4380618 (2d Cir. Oct. 3, 2024)..............................................................5, 12, 13, 14

*Brody v. Hankin*,
145 F. App'x 768 (3d Cir. 2005) ..........................................................................................7

*Cahill v. Insider, Inc.*,
-- F.4th --, 2025 WL 838264 (9th Cir. Mar. 18, 2025) ......................................................14

*Cantu v. Mammoth Energy Servs*,
2023 WL 3681705 (W.D. Tex. Apr. 10, 2023)..................................................................10

*Chandler v. IBM Corp.*,
2023 WL 4987407 (2d Cir. Aug. 4, 2023)...............................................................5, 12, 13

*Cilag GmbH Int'l v. Hospira Worldwide, LLC*,
2023 WL 3203662 (D. Del. May 2, 2023) ...........................................................................6

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
2013 WL 566805 (N.D. Ill. Feb. 13, 2013) .........................................................................6

*Cleveland v. Porca Co.*,
38 F.3d 289 (7th Cir. 1994) ..............................................................................................4, 9

*Dietz v. Bouldin*,
579 U.S. 40 (2016)........................................................................................................4, 6, 8

*Eash v. Riggins Trucking, Inc.*,
757 F.2d 557 (3d Cir. 1985)...............................................................................................4, 6

*Franklin v. Children & Families First*,
2015 WL 4974165 (D. Del. Aug. 19, 2015) ......................................................................5, 9

*Garcia v. Serv. Emp. Int'l Union*,
2019 WL 8750273 (D. Nev. May 23, 2019)......................................................................5, 6

*Gruwell v. Correctional Md. Servs.*,
2010 WL 3909316 (D. Del. Sept. 30, 2010)..........................................................................9

*In re IBM Arbitration Agreement Litig.*,
  76 F.4th 74 (2d Cir. 2023) ................................................................................5, 12, 13

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*,
  566 F.3d 138 (4th Cir. 2009) ..........................................................................................4

*ITT Educ. Servs., Inc. v. Arce*,
  533 F.3d 342 (5th Cir. 2008) ........................................................................................10

*Jarzyna v. Home Props. LP*,
  201 F. Supp. 3d 650 (E.D. Pa. 2016) .............................................................................4

*Kabbaj v. Simpson*,
  2013 WL 867751 (D. Del. 2013) ...................................................................................9

*Laudig v. IBM Corp.*,
  2022 WL 18232706 (N.D. Ga. Dec. 16, 2022) .......................................................10, 11

*Lodi v. IBM Corp.*,
  2023 WL 4983125 (2d Cir. Aug. 4, 2023) ..........................................................5, 12, 13

*Miesen v. Hawley Troxell Ennis & Hawley LLP*,
  2022 WL 1422942 (D. Idaho May 5, 2022) ..................................................................9

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002) ..........................................................................................6

*Qureshi v. United States*,
  600 F.3d 523 (5th Cir. 2010) .........................................................................................4

*Ready Transp. Inc. v. AAR Mfg., Inc.*,
  627 F.3d 402 (9th Cir. 2010) ......................................................................................5, 9

*Santos v. Baca*,
  2013 WL 12425971 (D. Nev. Aug. 8, 2013) .................................................................9

*Sieverding v. Colo. Bar Ass'n*,
  469 F.3d 1340 (10th Cir. 2006) .....................................................................................4

*Short v. Ryan*,
  2010 WL 3926202 (D. Del. 2010) .................................................................................9

*Stafford v. IBM Corp.*,
  78 F.4th 62 (2d Cir. 2023) ...........................................................................5, 10, 12, 13

*Tavenner v. IBM Corp.*,
  2023 WL 4984758 (2d Cir. Aug. 4, 2023) ..........................................................5, 12, 13

*Twin City Fire Ins. Co. v. Del. Racing Ass'n*,
   840 A.2d 624 (Del. 2003) ..................................................................................................7

*United States v. Wright*,
   913 F.3d 364 (3d Cir. 2019)...............................................................................................5

*West Willow-Bay Court LLC v. Robino-Bay Court Plaza LLC*,
   2007 WL 3317551 (Del. Ch. Nov. 2, 2007) ......................................................................7

**Rules**

Federal Rule of Civil Procedure 12 ......................................................................................1, 2, 6

Local Rule 7.1.2(b) ............................................................................................................1, 8, 9

I.  **NATURE AND STAGE OF PROCEEDINGS**

On May 17, 2023, Defendant Twitter, Inc. ("Twitter") moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12 (D.I. 77). During the pendency of that motion, Plaintiffs filed five (5) notices of supplemental authority (D.I. 98-1; D.I. 108-1; D.I. 111-1; D.I. 114-1; D.I. 117-1) seeking to enter into the record fifteen (15) individual confidential arbitration awards issued in arbitrations against Twitter in which Plaintiffs' counsel represented the claimants (D.I. 98-2; D.I. 98-3; D.I. 98-4; D.I. 98-5; D.I. 108-2; D.I. 108-3; D.I. 108-4; D.I. 111-2; D.I. 114-2; D.I. 117-2; D.I. 117-3; D.I. 117-4; D.I. 117-5; D.I. 177-6; D.I. 117-7). Twitter hereby moves to strike the notices of supplemental authority and accompanying exhibits from the record in this action and requests that the Court exercise its inherent authority to preclude Plaintiffs from filing any further individual confidential arbitration awards without prior leave of Court.

II.  **SUMMARY OF THE ARGUMENT**

1. The individual confidential arbitration awards cannot be considered in connection with the pending motion to dismiss under Rule 12 and, in any event, are entirely irrelevant to the questions presented. Because the confidential arbitration awards do not aid the Court in resolving the matter at hand, but rather detract from the Court's ability to rule on the pending motion to dismiss by embroiling the Court in tangential and unnecessary confidentiality disputes, the Court should strike the improperly filed awards from the docket in this action and preclude the filing of any further individual confidential arbitration awards.

2. The mislabeled "notices of supplemental authority" violate Local Rule 7.1.2(b) because they do not provide the Court with citations to subsequent case law or statutory authority, but rather raise arguments outside the pleadings. The Court should exercise its inherent authority to enforce its Local Rules and strike the improperly filed awards from the docket in this action and preclude the filing of any further individual confidential arbitration awards.

3. Filing the individual confidential arbitration awards constitutes a breach of the Dispute Resolution Agreement ("DRA") between Twitter and these individual claimants, which requires arbitration awards to be held in strict confidence. This Court should not allow its docket to be used as a platform to facilitate such an unlawful breach of contract and should strike and remove the improperly filed confidential awards from the docket in this action.

4. Plaintiffs' counsel's apparent purpose in filing the individual confidential arbitration awards is to create a "legal loophole" to the DRA that they believe would allow the documents to be made public. As the Second Circuit has recognized time and time again in response to similar efforts by Plaintiffs' counsel in other matters, this is an improper litigation tactic that should be rejected. The Court should not allow Plaintiffs' counsel to benefit from their improper actions and should prevent further misuse of the Court's docket going forward.

### III. STATEMENT OF FACTS

Plaintiffs are former Twitter employees who have filed a putative class action complaint against Twitter for breach of contract and promissory estoppel. D.I. 40. Plaintiffs' claims arise out of Twitter's Agreement and Plan of Merger (the "Merger Agreement"), which Plaintiffs allege provides them with an enforceable right to severance benefits. D.I. 40 at 12, 15.

On May 17, 2023, Twitter moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.I. 77. Twitter asserted that Plaintiffs were not third-party beneficiaries to the Merger Agreement and therefore lacked standing to sue for its alleged breach. D.I. 78 at 6-11. Twitter further argued that Plaintiffs failed to state a claim for breach of contract and promissory estoppel because neither the Merger Agreement nor Twitter's subsequent statements to employees conferred an enforceable right to severance benefits. *Id.* at 11-19. Plaintiffs filed an opposition to Twitter's motion, arguing that the Merger Agreement was ambiguous as to whether Plaintiffs were third-party beneficiaries who could state a claim for

benefits. D.I. 82 at 5-11. Twitter submitted a brief in reply (D.I. 88), and the Court held oral argument January 16, 2025. Twitter's motion currently remains pending with the Court.

Concurrently with this action, Plaintiffs' counsel, Lichten & Liss-Riordan, P.C., filed arbitration claims on behalf of numerous other former Twitter employees. *See* D.I. 99 at 2. The arbitrations were brought pursuant to a DRA between Twitter and each of these individual claimants in which the parties mutually agreed to submit certain disputes to binding arbitration "on an individual basis only." D.I. 18-1 at 14. The DRA provided that, "[e]xcept as may be permitted or required by law, as determined by the Arbitrator, ***neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties***." *Id.* at 15 (emphasis added).

Despite this strict and unambiguous confidentiality provision, Plaintiffs filed with this Court ***fifteen (15) individual confidential arbitration awards*** obtained by Plaintiffs' counsel on behalf of their other individual clients.[1] D.I. 98-2; D.I. 98-3; D.I. 98-4; D.I. 98-5; D.I. 108-2; D.I. 108-3; D.I. 108-4; D.I. 111-2; D.I. 114-2; D.I. 117-2; D.I. 117-3; D.I. 117-4; D.I. 117-5; D.I. 177-6; D.I. 117-7. Each time Plaintiffs did so under the cover of a purported "Notice of Supplemental Authority," arguing that the confidential arbitration awards supported their assertion that a "reasonable factfinder" could find in their favor. *See, e.g.,* D.I. 111-1 at 2-3.

Acknowledging the confidential nature of the arbitration awards, Plaintiffs moved to file their submissions under seal. D.I. 98, D.I. 108, D.I. 111, D.I. 114, D.I. 117. Twitter opposed

---

[1] Plaintiffs similarly attempted to submit five of these confidential arbitration awards via a proposed *amicus* brief in *Arnold v. Twitter*, a related matter currently pending before this Court. Case No. 1:23-cv-528-JLH-CJB (D. Del.), D.I. 115, D.I. 125. This Court rejected their attempts to do so in the *Arnold* case. *Id.* at D.I. 131.

3

Plaintiffs' submissions as improper but agreed that, to the extent they were permitted to remain on the docket, they should be kept under seal. D.I. 100, D.I. 106.

Although Plaintiffs' "notices of supplemental authority" and the confidential arbitration awards remain under seal, Plaintiffs' motions to seal the documents were posted to the public docket. As Plaintiffs' counsel almost certainly knew (or planned) would occur, the media took notice. On March 25, 2025, a conglomerate of media organizations filed a motion to intervene and unseal the confidential arbitration awards. D.I. 119. Plaintiffs took no position on the media organizations' motion. *Id.* at n.1. Twitter's opposition to the media's motion is forthcoming.

## IV. STANDARD OF REVIEW

As the Supreme Court has long recognized, district courts enjoy "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash Ry. Co..*, 370 U.S. 626, 630-31 (1962)). This inherent power provides the Court with "the ability to do whatever is reasonably necessary to deter abuse of the judicial process," as well as the authority to "manage its caseload, control its docket, and regulate the conduct of attorneys before it." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Pursuant to this inherent power, district courts have the discretion to strike impermissible filings from their docket. *See, e.g., Jarzyna v. Home Props. LP*, 201 F. Supp. 3d 650, 662 (E.D. Pa. 2016); *accord Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009) (affirming district court's decision to strike improper filings under its "inherent authority"); *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) (same). Similarly, the Court has the "inherent power 'to regulate the activities of abusive litigants by imposing carefully

tailored restrictions [on future filings] under appropriate circumstances.'" *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006) (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989)); *see also Qureshi v. United States*, 600 F.3d 523, 525-26 (5th Cir. 2010). The exercise of these inherent powers is entrusted to the Court's discretion. *United States v. Wright*, 913 F.3d 364, 369 (3d Cir. 2019).

V.   **ARGUMENT**

The individual confidential arbitration awards are entirely irrelevant and, moreover, submitted in violation of both this Court's rules and the DRA. This, standing alone, justifies striking the filings from the record. *See, e.g., Garcia v. Serv. Emp. Int'l Union*, 2019 WL 8750273, at *1 (D. Nev. May 23, 2019) (striking filings that "had no bearing on the issues at hand"); *Franklin v. Children & Families First*, 2015 WL 4974165, at *2 & n.3 (D. Del. Aug. 19, 2015) (striking filings submitted in violation of Local Rules); *Ready Transp. Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 403 (9th Cir. 2010) (noting that district courts have "the inherent power to strike an improperly filed confidential document").

But here, the need to strike the filings and prevent further improper submissions is even more pronounced, considering Plaintiffs' counsel's improper use of the Court's docket as a means to their own ends. By flooding the docket with irrelevant and procedurally improper filings containing individual confidential arbitration awards, Plaintiffs' counsel is attempting to create a "legal loophole" to the DRA that they anticipate will allow the documents to be made public. Notably, Plaintiffs' counsel employed this ***same tactic*** in courts across the Second Circuit, necessitating ***six different orders*** from the Circuit Court rejecting Plaintiffs counsel's improper tactics. *See Billie v. Coverall N. Am., Inc.*, 2024 WL 4380618 (2d Cir. Oct. 3, 2024); *Stafford v. IBM Corp.*, 78 F.4th 62 (2d Cir. 2023); *In re IBM Arbitration Agreement Litig.*, 76 F.4th 74 (2d

5

Cir. 2023); *Chandler v. IBM Corp.*, 2023 WL 4987407 (2d Cir. Aug. 4, 2023); *Lodi v. IBM Corp.*, 2023 WL 4983125 (2d Cir. Aug. 4, 2023); *Tavenner v. IBM Corp.*, 2023 WL 4984758 (2d Cir. Aug. 4, 2023).

Quite simply, enough is enough. This Court need not, and should not, allow its docket to "become a vehicle for improper purposes." *In re IBM Arbitration Agreement Litig.*, 76 F.4th at 86. Nor should the Court allow Plaintiffs' counsel's gamesmanship and dogged pursuit of their own self-interest distract from the matter at hand. *Dietz*, 579 U.S. at 47 ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"). The Court should strike the individual confidential arbitration awards from the docket in this action and prevent any further attempts to place confidential arbitration awards on the docket without obtaining prior express leave to do so from the Court. Only then will the Court be able to "get[] on with the business of deciding cases" without the constant and unnecessary distractions that inevitably flow from Plaintiffs' counsel's improper tactics. *Eash*, 757 F.2d at 567.

    **A.    The Confidential Arbitration Awards Are Entirely Irrelevant to Twitter's Motion to Dismiss.**

Courts have the inherent authority to strike documents that are irrelevant or otherwise not properly considered by the court. *See, e.g., Garcia*, 2019 WL 8750273, at *1 (striking filings that "had no bearing on the issues at hand"); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *12 (N.D. Ill. Feb. 13, 2013) (striking documents that could not be considered on a motion to dismiss). That is precisely the case here.

6

The arbitration awards are not properly subject to judicial notice, and therefore cannot be considered on a motion to dismiss.² *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). As the Third Circuit has explained, district courts are prohibited from considering even the mere existence of an arbitration award on a motion to dismiss unless the award is incorporated into the complaint. *Brody v. Hankin*, 145 F. App'x 768, 773 (3d Cir. 2005) (finding that the district court erred by "notic[ing] the existence of [an arbitration] award" where the plaintiffs "did not rely on the award in their complaint"). Because Plaintiffs' complaint—which *predates* the confidential arbitration awards by two years—does not incorporate the awards, there is no basis for the Court to consider either the existence or the substance of the awards.

Even if the arbitration awards were subject to consideration (which they are not), these individual arbitration awards would still be entirely irrelevant to resolving Twitter's motion to dismiss. Plaintiffs do not claim that the arbitration awards have a preclusive effect. D.I. 108-1 at n.1. Plaintiffs do not even ask the Court to apply the reasoning in the confidential arbitration awards, which is largely fact-based, based on an informal resolution in a setting lacking many of the procedural and evidentiary safeguards attendant to legal proceedings, and, in any event, unpersuasive. Plaintiffs merely argue that the confidential arbitration awards demonstrate that a "reasonable factfinder" could find in their favor. *See, e.g.,* D.I. 111-1 at 2-3; D.I. 117-1 at 2.

But arguments concerning what a purportedly "reasonable factfinder" has done in an entirely separate, non-judicial action says nothing about the legal sufficiency of Plaintiffs' allegations in this case, which is the only question currently pending before the Court. That

---

² While certain challenges under Rule 12(b)(1) may be resolved by looking to external evidence, Twitter raised a "facial" challenge based purely on the language of the contract, which is analyzed under the same standard as a motion under Rule 12(b)(6). *Cilag GmbH Int'l v. Hospira Worldwide, LLC*, 2023 WL 3203662, at *2 (D. Del. May 2, 2023).

7

question, moreover, turns largely on the interpretation of the Merger Agreement, which must be determined without reference to external evidence. *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003). Plaintiffs' reliance on external evidence to support their argument that the Merger Agreement is subject to differing interpretations is improper and without legal basis. *See West Willow-Bay Court LLC v. Robino-Bay Court Plaza LLC*, 2007 WL 3317551, at *1 (Del. Ch. Nov. 2, 2007) ("extrinsic evidence may not be used in determining whether the contract is ambiguous.").

At bottom, the confidential arbitration awards are at best a distraction. They cannot alter the Court's legal determination, but they force the Court to shift its attention away from the merits in order to resolve unnecessary and tangential confidentiality disputes. Thus, striking the confidential arbitration awards from the docket and preventing further submissions will help to ensure "the efficient and expedient resolution" of this matter, which has already been pending for two and a half years. *Dietz*, 579 U.S. at 47.

### B. Plaintiffs' Purported "Notices Of Supplemental Authority" Are Procedurally Improper.

Plaintiffs' purported "Notices of Supplemental Authority" are procedurally improper and violate this Court's Local Rules. Specifically, under L.R. 7.1.2(b), "[e]xcept for the citation of subsequent authorities, no additional papers [following a response brief] shall be filed absent Court approval."

Plaintiffs' filings, despite being self-entitled "Notice of Supplemental Authority," do not introduce the Court to any "authorities" whatsoever. Plaintiffs' filings cite no new statutes or case law. Rather, they consist entirely of non-binding, non-precedential awards issued in confidential arbitrations between Twitter and various individual third-parties.

8

Even if the confidential arbitration awards could be considered appropriate "authorities," Plaintiffs' submissions go well beyond merely providing "citation of [these] authorities." Instead, Plaintiffs' submissions raise arguments on the merits, even going so far as to discuss arbitration awards that were not provided to the Court. *See, e.g.,* D.I. 98-1 at 2-3; D.I. 108-1 at 3-7 & n.3; D.I. 111-1 at 2 & n.2; D.I. 117-1 at 2. Plaintiffs may not introduce additional argument under the guise of a notice of supplemental authority, and instead must seek leave to file a sur-reply. Because Plaintiffs have failed to do so here, their submissions violate this Court's local rules.

Courts regularly exercise their inherent authority to strike documents submitted in violation of their Local Rules. *See, e.g., Proca Co.*, 38 F.3d at 297 (affirming decision to strike impermissible response to a reply brief); *Miesen v. Hawley Troxell Ennis & Hawley LLP*, 2022 WL 1422942, at *11 (D. Idaho May 5, 2022) (striking a notice of supplemental authority that did not "notify the Court of new authority, or even useful authority"); *B Street Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d 1008, 1013 (D. Ariz. 2021) (striking notices of supplemental authority that the parties "improperly" used "as an opportunity to further their arguments"). Courts in this district are no exception, and regularly strike filings submitted in violation of Local Rule 7.1.2(b). *See, e.g., Kabbaj v. Simpson*, 2013 WL 867751, at *5-6 (D. Del. Mar. 7, 2013) (striking a brief that was filed without leave of court but functioned as a sur-reply); *Franklin*, 2015 WL 4974165, at *2 (striking sur-reply filed without leave of court); *Gruwell v. Correctional Med. Servs.*, 2010 WL 3909316, at *5 (D. Del. Sept. 30, 2010) (same); *Short v. Ryan*, 2010 WL 3926202, at *1 (D. Del. Oct. 1, 2010) (same). The same is warranted here, particularly considering Plaintiffs' repeated violations.

### C. Plaintiffs' Filings Violate The Confidentiality Provisions of the DRA.

Courts have the inherent power to strike documents that are filed in violation of confidentiality agreements. *See, e.g., Ready Transp., Inc.*, 627 F.3d at 403 (noting that district courts have "the inherent power to strike an improperly filed confidential document"); *Santos v. Baca*, 2013 WL 12425971, at *1 (D. Nev. Aug. 8, 2013) (striking documents that were filed in violation of confidentiality agreement). Here, Plaintiffs' submissions clearly violate the DRA. The DRA states, in no uncertain terms, that, "[e]xcept as may be permitted or required by law," the parties may not "disclose the ***existence, content, or results of any arbitration hereunder*** without the prior written consent of all parties." D.I. 18-1 at 15.

Contrary to Plaintiffs' assertions, the law does not permit them to file confidential arbitration awards obtained through counsel's *other* clients simply because they believe doing so would confer a strategic benefit. The Fifth Circuit's reasoning in *ITT Educational Services, Inc. v. Arce*, 533 F.3d 342 (5th Cir. 2008), is instructive. In *Arce*, as here, a plaintiff's attorney sought to enter into evidence prior arbitration awards obtained on behalf of her other clients in separate matters involving the same defendant. *Id.* at 343-44. The Fifth Circuit enjoined her from doing so, noting that the terms of the underlying arbitration agreement required the prior arbitration awards to be held as confidential. *Id.* at 347-48. Similarly, in *Stafford v. IBM Corp.*, 78 F.4th 62 (2d Cir. 2023), the Second Circuit criticized Plaintiffs' counsel's attempts to make confidential arbitration awards available to other plaintiffs, noting that it was nothing more than an "improper effort" to "evade the confidentiality provision to which [the claimant] agreed in [the] arbitration agreement."

*Id.* at 66, 71. The law therefore prohibits, rather than permits, the use of confidential arbitration awards obtained on behalf of third parties to benefit other clients.[3]

Plaintiffs nonetheless assert that they can file the confidential arbitration awards because "Twitter agreed that materials from any arbitration and/or lawsuit between Twitter and any individual represented by Plaintiffs' counsel could be used in any other proceeding between Twitter and any other individual represented by Plaintiffs' counsel." D.I. 108-1 at 5. Tellingly, Plaintiffs' counsel did not provide the Court with any such "agreement," despite the DRA's requirement that such an exception to the confidentiality agreement be made in writing. The reason for this is simple: No such agreement exists.[4] Twitter did not, and does not, consent to waive the bargained-for right to confidentiality that it relied on when entering into the DRA and obtaining awards from individual arbitrators.

---

[3] Plaintiffs' cases are not to the contrary. D.I. 108-1 at 6-7 (citing *Cantu v. Mammoth Energy Servs*, 2023 WL 3681705, at *1-2 (W.D. Tex. Apr. 10, 2023) and *Laudig v. IBM Corp.*, 2022 WL 18232706, at *8 (N.D. Ga. Dec. 16, 2022)). *Cantu* considered whether a defendant could refuse to produce an arbitration award, despite the fact that the defendant had already agreed to produce such awards and the plaintiff needed the award to support her collateral estoppel argument. 2023 WL 3681705, at *2. *Cantu* is therefore focused on the right to *obtain* documents through the discovery process and says nothing about the right to *file* confidential arbitration awards that are neither necessary nor useful to the underlying action. And *Laudig* simply held that filing a confidential arbitration award in connection with a petition to vacate the award was permissible where the terms of the "arbitration agreement *specifically provide[d]*" that the materials could be disclosed "*in connection with . . . a judicial challenge to an award or its enforcement*[.]" 2022 WL 18232706, at *5 (emphasis in original). Thus, far from providing a basis to ignore the terms of the DRA, *Laudig* supports Twitter's position that confidentiality provisions within arbitration agreements should be enforced according to their terms.

[4] Twitter and Plaintiffs' counsel did agree that *discovery* could be used across matters; specifically, for example, that deposition testimony from a witness could be re-used, rather than having a witness be re-deposed, and that the same responsive documents produced by a party would not have to be re-produced. This agreement regarding re-using discovery had no application to awards issued by an arbitrator.

11

Nor is there any indication that the claimants in the underlying arbitrations consented to having their arbitration awards filed in Court. Indeed, Twitter previously questioned whether Plaintiffs' counsel had permission to file their arbitration clients' confidential awards, which Plaintiffs' counsel conspicuously failed to address. *See Arnold v. Twitter*, No. 23-cv-528 (D. Del.) D.I. 119 at 11-12 (noting that Plaintiffs' motion for leave to file an *amicus* brief seemed to "suggest that they did not obtain [the arbitration claimant's] consent prior to filing" his confidential arbitration award); D.I. 125 at 6-7 (addressing Twitter's other arguments without responding to the assertion that they did not obtain claimant consent). Plaintiffs' counsel's deafening silence on this matter raises serious ethical questions about whether their clients are aware that they are subjecting them to liability for breach of contract by misusing their personal documents.

The Court should not allow its docket to be implicated in the breach of the DRA, particularly given concerns that the breach was procured through improper means. The offending filings should be stricken from the docket and further filings prohibited.

> **D.   Plaintiffs' Filings Constitute An Improper Attempt To Undermine The Confidentiality Provisions Of The DRA.**

For all these reasons, Plaintiffs' submissions are unhelpful, unauthorized, and improper. Plaintiffs' counsel is well aware of this fact. Indeed, after Plaintiffs filed their first three "notices of supplemental authority," the Court told Plaintiffs' counsel on the record at the motion to dismiss hearing that it did not "find [the arbitration decisions] useful" and could not substantively consider them on a motion to dismiss, ultimately stating to Plaintiff's counsel "maybe you should just stop filing them." D.I. 122 at 24, 27. After receiving this message from the Court, however, Plaintiffs proceeded to submit ***eight (8) more confidential arbitration awards***. D.I. 114-2; D.I. 117-2; D.I. 117-3; D.I. 117-4; D.I. 117-5; D.I. 117-6; D.I. 117-7; D.I. 117-8. Plaintiffs' counsel's pattern of conduct in this and other cases reveals an intentional strategy to evade the terms of the DRA.

Indeed, Plaintiffs' counsel has a long history of improperly filing confidential arbitration awards on a court's docket with the express purpose of transforming the awards into "judicial records" subject to the common law presumption of access so that they might be made publicly accessible. These improper tactics have been the subject of condemnation in no less than **six (6) Second Circuit opinions** blocking Plaintiffs' counsel's conduct. *See, e.g., Stafford*, 78 F.4th at 70 (collecting cases where the Second Circuit "rejected similar attempts by [Plaintiffs' counsel] to unseal confidential documents obtained in individual arbitrations by filing them in court"); *see also Billie*, 2024 WL 4380618 at *1.

For example, in *In re IBM Arbitration Agreement Litigation,* Plaintiffs' counsel submitted a premature motion for summary judgment that included several confidential arbitration documents obtained through Plaintiffs' counsel's representation of other clients. 76 F.4th at 78. Despite the fact that the court did not, and could not, consider the procedurally improper filings, Plaintiffs' counsel moved to unseal the filings, arguing that they should be made public so that they can be used in other litigations. *Id.* at 85. In upholding the district court's decision to keep the confidential documents under seal, the Second Circuit rejected Plaintiffs' counsel's attempt to "create a legal loophole allowing parties to evade confidentiality agreements simply by attaching documents to court filings." *Id.* at 86. The court noted the "impropriety" of Plaintiffs' counsel's tactics, holding that "Plaintiffs' counsel may not end-run the Confidentiality Provision by filing protected materials" on the court's docket. *Id.*; *see also Chandler*, 2023 WL 4987407 at *1 (adopting and incorporating the reasoning in *In re IBM Arbitration Agreement Litig.*); *Lodi*, 2023 WL 4983125, at *1 (same); *Tavenner*, 2023 WL 4984758, at *1 (same).

Similarly, in *Stafford*, Plaintiffs' counsel sought to confirm and unseal a confidential arbitration award, even after the award was satisfied. 78 F.4th at 66. The Second Circuit observed

13

that Plaintiffs' counsel's "apparent purpose in filing the [confidential arbitration] materials publicly is to launder their confidentiality through litigation," and refused to sanction this "improper effort to evade the confidentiality provision of the [arbitration] Agreement." *Id.* at 66, 71. Plaintiffs' counsel again employed these same tactics in *Billie*, filing a confidential arbitration award that had already been satisfied alongside a petition to confirm the award. 2024 WL 4380618, at *1. The Second Circuit again emphasized that "counsel's intention to use the arbitration award (if unsealed) in the litigation of similar claims against the defendant in lawsuits by other plaintiff-employees was an improper effort to evade the [arbitration agreement's] confidentiality provision" that should be prevented. *Id.* at *3.

The pattern is too clear to ignore. Plaintiffs' counsel has a documented history of using the court's docket for their own gain, filing confidential arbitration awards for no other purpose than to turn around and make them public. And this case is no different. Plaintiffs' counsel's insistence on continuing to file irrelevant, improper, and confidential arbitration awards is nothing more than a misguided attempt to end-run the DRA by transforming the awards into "judicial records" subject to the common law presumption of public access. *See, e..g,* D.I. 119 at 8-9 & n.4 (asserting that "the filing of the arbitration award on the court's docket automatically rendered it a judicial record, subject to the common law right of access, regardless of whether the filing ended up being pertinent to any past or future judicial action").

The Court need not allow its docket to be used as a platform for Plaintiffs' counsel's improper conduct. The Court can, and should, exercise its inherent authority to "correct that which has been wrongfully done by virtue of its process" by striking the improper filings and precluding any further attempts to impermissibly file confidential arbitration awards. *See Cahill v. Insider,*

14

*Inc.*, -- F.4th --, 2025 WL 838264, at *4 (9th Cir. Mar. 18, 2025) (quoting *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 146 (1919)).

## VI.   CONCLUSION

Twitter regrets that it has become necessary for it to file this motion, as it is confident on the merits of its pending motion to dismiss and does not wish to divert the Court's time and attention away from those merits. But Plaintiffs' counsel's improper tactics have deprived Twitter of the benefit of its bargain and hampered the efficient resolution of this case—and threaten to continue doing so unless the Court puts a stop to it. Without the Court's intervention, these improper filings will unfortunately continue. For the foregoing reasons, Twitter respectfully requests that this Court strike Plaintiffs' notices of supplemental authority and accompanying exhibits (D.I. 98-1 through 98-6; D.I. 108-1 through 108-7; D.I. 111-1 through 111-2; D.I. 114-1 through 114-2; D.I. 117-1 through 117-8) from the docket and preclude any further filings of confidential arbitration awards without prior leave of Court.

Dated: April 8, 2024                                             **MORGAN, LEWIS & BOCKIUS LLP**

  */s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant*

15