IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) C.A. No. 23-441-TMH ) ) ) ) ) ) ) |

**DEFENDANT'S OPPOSITION TO THE PRESS COALITION'S MOTION TO INTERVENE AND FOR UNSEALING OF JUDICIAL RECORDS**

**I.     INTRODUCTION**

The Press Coalition's Motion to Intervene and for Unsealing of Judicial Records (D.I. 119; "Motion to Intervene") should be denied. The Press Coalition seeks to unseal arbitration awards and related documents concerning fifteen confidential arbitrations for former Twitter employees, *none* of whom are parties to this case or have any involvement in this case at all ("Sealed Documents"). For the reasons explained in full in Defendant's Opening Brief in Support of Its Motion to Strike Plaintiffs' Notices of Supplemental Authority (Dkt. 124; "Motion to Strike"), the Sealed Documents should be stricken because they are entirely irrelevant to Defendant's Motion to Dismiss, Plaintiffs' purported "Notices of Supplemental Authority" attaching the Sealed Documents are procedurally improper, Plaintiffs' filings violate the confidentiality provisions of the Dispute Resolution Agreement ("DRA") pursuant to which the arbitrations were conducted, and Plaintiffs' filings constitute an improper attempt to undermine

the confidentiality provisions of the DRA. *See generally*, *id.*

If the Sealed Documents are not stricken from the record, they should remain sealed for several reasons. *First*, the Sealed Documents are not judicial records because they are irrelevant to the Court's consideration of Defendant's pending motion to dismiss. This Court told Plaintiffs' counsel at a January 16, 2025 hearing that it is "not going to use those arbitration decisions," that it "do[es]n't find them useful," and that Plaintiffs' counsel "should just stop filing them." Declaration of Kenneth Trujillo-Jamison ("Trujillo-Jamison Decl."), Ex. A at 24, 27. Plaintiff's counsel's mere filing of the Sealed Documents on the docket does not make them judicial records. Because the Sealed Documents are not judicial records, the common-law right of access does not attach to them.

*Second*, even if the Sealed Documents are deemed to be judicial records (they should not), applying the presumption of public access to them would not be appropriate here because doing so would not vindicate the purposes of the common-law right of public access. The Third Circuit has explained that the purposes of that right are to "promote[] public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court" and to "cast" a "bright light "upon the judicial process by public observation [to] diminish[] the possibilities for injustice, incompetence, perjury, and fraud." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991). Unsealing the Sealed Documents—which are not relevant to the Court's determination of Defendant's pending motion to dismiss—would run contrary to those purposes. This is particularly so because Plaintiffs' counsel has a track record of improperly filing confidential arbitration awards as exhibits in litigation to circumvent the

confidentiality of those documents. Furthermore, the Press Coalition's interest in the documents is unrelated to promoting public confidence in the judicial system or casting a light on the judicial process. The Court should not apply the presumption of public access to the Sealed Documents.

*Finally*, even if this Court finds the Sealed Documents are judicial records and that applying the presumption in favor of public access is appropriate (it should not), the Sealed Documents still should be sealed because Defendant's and the fifteen former Twitter employees' interest in their secrecy outweigh the public's interest. The Sealed Documents contain an array of private, confidential information related to the employment of former Twitter employees, such as their salary information, medical leave information, employee performance evaluation information, and information related to job searches, job offers, and job rejections. Courts have protected such private information from public disclosure.

And Defendant will suffer serious injury should the Sealed Documents be unsealed. Defendant and the fifteen former employees whose private information is discussed in detail in the arbitration awards—people who are not involved in this case at all—relied on the confidentiality of those proceedings. Unsealing those documents in a case where those employees are not even parties would be highly inappropriate. Even worse, Defendant and other former Twitter employees continue to participate in hundreds of other arbitrations. Should these documents be unsealed, neither Defendant nor the former employees in those ongoing arbitrations would have any confidence that their arbitrations would remain confidential, undermining the arbitration process altogether. This risk is not hypothetical: Indeed, Plaintiffs' counsel has represented to this Court she represents 2000 former Twitter employees in arbitrations against Defendant. If the Sealed Documents are unsealed, Plaintiffs would have carte

blanche to file additional arbitration awards in this case which could be made public, waging even more injury to Defendant and former Twitter employees. In short, even if the presumption of public access attaches here, unsealing the Sealed Documents would inflict clearly defined, serious injury on Defendant and the fifteen former Twitter employees that outweighs the right of public access.

Thus, this Court should deny the Motion to Intervene.

## II.    BACKGROUND

Plaintiffs filed this action on November 3, 2022. D.I. 1. Plaintiffs filed their Second Amended Complaint ("SAC"), the operative complaint, on December 9, 2022. D.I. 40. Defendant moved to dismiss the SAC on May 17, 2023. D.I. 77–78 ("Motion to Dismiss"). Over a year after briefing was complete, Plaintiffs moved to provisionally seal Notices of Supplemental Authority on November 26, 2024, January 8, 2025, and January 14, 2025. D.I. 98, 108, 111. Those Notices attached arbitration awards issued in certain arbitrations between Defendant and former Twitter employees, none of whom are parties to this case.

On January 16, 2025, the Court heard argument on Defendant's Motion to Dismiss. During the hearing, the Court told Plaintiffs' counsel that it was "not going to use those arbitrator decisions to fill out a factual record that's not in the" SAC. Trujillo-Jamison Decl., Ex. A at 24. The Court went on to state that it "d[id]n't find [the arbitration awards] useful," and that Plaintiffs' counsel "should just stop filing them." *Id*. at 27. Furthermore, during the hearing, Plaintiffs' counsel represented to the Court, "[o]ur law firm is currently representing about 2,000 Twitter employees individually in arbitration on these exact same claims." Trujillo-Jamison Decl., Ex. A at 14. After the hearing, the Court took the matter under submission. Yet despite the Court's admonition to "stop filing" additional arbitration awards, on February 14, 2025 and

March 21, 2025, Plaintiffs filed two additional Notices of Supplemental Authority, attaching arbitration awards for additional non-parties. D.I. 114, D.I. 117.

Plaintiffs' counsel has a track record of improperly filing confidential arbitration awards as exhibits to court filings. As recognized by the Second Circuit in *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024):

> We have [repeatedly] rejected . . . attempts by Stafford's counsel to unseal confidential documents obtained in individual arbitrations by filing them in court. *See In re IBM Arb. Agreement Litig.*, 76 F.4th at 85–86; *Chandler v. Int'l Bus. Machs. Corp.*, No. 22-1733, 2023 WL 4987407, at *1 (2d Cir. Aug. 4, 2023); *Lodi v. Int'l Bus. Machs. Corp.*, No. 22-1737, 2023 WL 4983125, at *1 (2d Cir. Aug. 4, 2023); *Tavenner v. Int'l Bus. Machs. Corp.*, No. 22-2318, 2023 WL 4984758, at *1 (2d Cir. Aug. 4, 2023).

*Stafford*, 78 F.4th at 70. Indeed, courts have repeatedly admonished Plaintiffs' counsel for improperly filing arbitration awards. *See Billie v. Coverall N. Am., Inc.*, No. 23-672-CV, 2024 WL 4380618, at *3 (2d Cir. Oct. 3, 2024) (holding "the presumption of access to judicial documents is outweighed . . . by the interest in confidentiality and because [plaintiff's] apparent purpose in filing the materials publicly is to launder their confidentiality through litigation."); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 85 (2d Cir. 2023), *cert. denied sub nom. Abelar v. Int'l Bus. Machines Corp.*, 144 S. Ct. 827, 218 L. Ed. 2d 33 (2024) (holding that "the FAA's mandate requiring enforcement of arbitration agreements according to their terms favors maintaining these documents under seal . . . [because] [p]rotecting this confidentiality interest is particularly important when the stated objective of Plaintiffs' motion to unseal is to circumvent the Confidentiality Provision to assist plaintiffs in other proceedings—including Plaintiffs' counsel's other clients.") (cleaned up); *Chandler v. Int'l Bus. Machs. Corp.*, No. 22-1733, 2023 WL 4987407, at *1 (2d Cir. Aug. 4, 2023) (same conclusion); *Lodi v. Int'l Bus. Machs. Corp.*, No. 22-1737, 2023 WL 4983125, at *1 (2d Cir. Aug. 4, 2023) (same); *Tavenner v. Int'l Bus. Machs. Corp.*, No. 22-2318, 2023 WL 4984758, at *1 (2d Cir. Aug. 4, 2023) (same).

On March 25, 2025, the Press Coalition filed its Motion to Intervene. D.I. 119. The Press Coalition contends this case "relates to events that have been the subject of much public interest and attention: Elon Musk's acquisition of Twitter, Inc. and the controversial mass layoffs that immediately followed the acquisition." *Id.* at 1. The Press Coalition contends "[t]he Twitter layoffs have been the subject of considerable public commentary and attention" which "continues to this day." *Id.* at 3.

### III.     LEGAL STANDARD

"[T]he common law presumes that the public has a right of access to judicial materials." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "The right of access includes the right . . . to inspect and copy public records and documents, including judicial records and documents." *Id.* (cleaned up). "Whether the common law right of access applies to a particular document or record turns on whether that item is considered to be a judicial record." *Id.* (cleaned up). "Once a document becomes a judicial record, a presumption of access attaches." *Id.*

"[T]he common law right of access is not absolute. The presumption of access is just that, and thus may be rebutted." *Id.* (cleaned up) (internal citations omitted). "The party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption." *Id.* (cleaned up). "The movant must show that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (cleaned up).

## IV. ARGUMENT

### A. The Sealed Documents Should Remain Sealed

#### *1. The Sealed Documents Are Not Judicial Records, and Therefore the Common-Law Right of Public Access Does Not Apply to Them*

The Press Coalition argues the Sealed Documents are part of the judicial record because Plaintiffs filed them "in opposition to a motion to dismiss." Motion to Intervene at 8. Not so. As explained in full in Defendant's Motion to Strike, the Sealed Documents are irrelevant to Defendant's Motion to Dismiss, and their filing was procedurally improper. Motion to Strike at 6–9. The Sealed Documents thus have not been properly presented to the Court to be considered in connection with Defendant's Motion to Dismiss. Indeed, as the Third Circuit has recognized "that the filing of a document does not, on its own, bring that document within the common law right of access." *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 435 (3d Cir. 2016). "The fact of filing is *one point to consider* but it cannot be the *sole* basis for applying the right of access." *Id.* (emphasis added). For instance, in *Leucadia*, the Third Circuit recognized that the common law right of access does not extend to discovery material filed with discovery motions. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 163-65 (3d Cir. 1993). There, the Court reasoned that discovery was not publicly accessible at common law, so they should not be made available "merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. *Id.*

Because context matters, the Third Circuit has counseled away from rigid application of the common law right of access to any filing. For example, in *North Jersey Media Group*, the Court declined to unseal a pretrial discovery letter submitted to the Court because it was not submitted "as an aid to the judge in rendering a decision or for some other judicial purpose." 836 F.3d at 436. The Court recognized the Third Circuit has taken a more contextual approach:

> [W]hether a document is a judicial record should turn on the *use* the court has made of it rather *than on whether it has found its way into the clerk's file*. To be considered a judicial record, to which the common law right of access properly attaches, the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.

*Id*. at 435–36 (cleaned up; emphasis added; internal citations omitted); *see also Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 70 (2d Cir. 2023), *cert. denied,* 144 S. Ct. 1011 (2024) (holding that "[i]n order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (same).

Following *Leucadia* and *North Jersey Media Group*, the Sealed Documents are not judicial records for which there is a common law right of public access because they are not relevant to this Court's consideration of Defendant's Motion to Dismiss, nor are they useful in the judicial process. The Court has stated that, in deciding Defendant's Motion to Dismiss, it is "not going to use those arbitrator decisions to fill out a factual record that's not in the complaint," that it "d[id]n't find them useful," and that Plaintiffs' counsel "should just stop filing them." Trujillo-Jamison Decl., Ex. A at 27. Indeed, Plaintiffs did not properly submit them to be considered in connection with Defendant's Motion to Dismiss, because they are not properly subject to judicial notice, they were filed in violation of the Court's Local Rules, and as non-binding, non-precedential awards issued in confidential arbitrations between Defendant and non-parties, they are not appropriate "authorities." *See* Motion to Strike at 7–9. The Sealed Documents, which were not submitted to the Court in a procedurally proper fashion, are not "relevant to the performance of [a] judicial function" nor are they "useful in the judicial process." *N. Jersey Media Grp.*, 836 F.3d at 435. Thus, they are not judicial records and the common-law right of public access does not attach to them.

The Press Coalition's reliance on the Third Circuit's unpublished, non-precedential

decision in *Pennsylvania National Mutual Casualty Insurance Co. v. New England Reinsurance Corp.*, 840 F. App'x 688, 689–91 (3d Cir. 2020), is misplaced. There, Pennsylvania National filed a petition to confirm an arbitration award and "filed the arbitration award on the docket with the District Court *as part of its motion to confirm the award*." *Id.* at 691 (emphasis added). The Court found an arbitration award in this context was a judicial record and declined to apply the recognized exceptions to the common law right of access, such as the exception noted in *North Jersey Media Group*. Here, by contrast, Plaintiffs—not Defendant—filed the Sealed Documents as procedurally improper notices of supplemental authority. Plaintiffs did not file them with their complaint, nor did they attach them to their opposition brief to Defendant's Motion to Dismiss. Plaintiffs have not requested that the Court take judicial notice of them, nor have they attempted to demonstrate they would comply with the requirements for judicial notice. All Plaintiffs did was attach the Sealed Documents to the ancillary notices, despite that the Court having stated it would not use them in connection with Defendant's Motion to Dismiss. *Pennsylvania National* thus does not require this Court to treat the Sealed Documents as judicial records.

In sum, the Sealed Documents are not judicial records, and the common-law right of public access does not apply to them.

### 2. *Applying the Common-Law Right of Access to the Sealed Documents Would Not Be Appropriate*

Even if the Court finds the Sealed Documents are judicial records (it should not), applying the presumption of access to those documents would not be appropriate here because doing so would run contrary to the fundamental purposes underlying the common-law right of access. As the Third Circuit has stated, "application of the presumption [of the common-law right of public access]" is "appropriate" because:

> [t]he public's exercise of its common law access right in civil cases promotes public confidence in the judicial system . . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*Republic of Philippines*, 949 F.2d at 660.

Unsealing the Sealed Documents would undermine the purposes underlying the common-law right of public access. Even after the Court told Plaintiffs' counsel to "stop filing" these arbitration awards, Plaintiffs nonetheless filed additional arbitration awards on the docket. Should the Unsealed Documents be unsealed, Plaintiffs would have carte blanche to file even more irrelevant arbitration awards on the docket. That risk is very present here—Plaintiffs' counsel also is counsel of record for over 2,000 arbitrations involving former Twitter employees. Trujillo-Jamison Decl., Ex. A at 14. Plaintiffs' counsel also has a track record of improperly filing confidential arbitration awards as exhibits to court filings, for which counsel has been repeatedly admonished. *See* Section II, *supra*; *see also* Motion to Strike at 12–15. Should the Court unseal the Sealed Documents, it would "create a legal loophole allowing parties to evade confidentiality agreements simply by attaching documents to court filings." *In re IBM Arb. Agreement Litig.*, 76 F.4th at 86. That would, among other things, undermine "public confidence in the judicial system"—directly contrary to one of the fundamental purposes of the right of public access. *See In re Avandia Mktg.*, 924 F.3d at 672.

Unsealing the Sealed Documents also would not vindicate the fundamental purposes of the common-law right of access, because the Press Coalition's attempt at unsealing them has nothing to do with instilling "public confidence in the judicial system," "cast[ing]" a "bright light" "upon the judicial process," or "provid[ing] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.*; *Republic of*

*Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991). Indeed, the Press Coalition contends the Sealed Documents should be "made immediately available to the public" because it argues "Elon Musk's acquisition of Twitter, Inc. and the [allegedly] controversial mass layoffs that immediately followed that acquisition" "are matters of substantial public interest," and that "[t]he Twitter layoffs have been the subject of considerable public commentary and attention" which "continues to this day." *Id.* at 1–3. Even if the Press Coalition's assertions are true, those reasons are unrelated to the purposes of the common-law right of access, which focuses on public oversight of the *judicial* system. Unsealing the Sealed Documents merely because of the public's interest in the acquisition of Twitter, Inc. and certain of its former employees would not vindicate those purposes.

      **3.**      ***Defendant's and the Fifteen Former Twitter Employees' Interest in the Sealed Documents' Secrecy Outweighs the Presumption of Public Access***

           a.      <u>The Sealed Documents Contain Information the Courts Protect</u>

Even if the Sealed Documents are deemed to be judicial records (they should not be) and the Court finds that the presumption of access attaches to them (it should not), the Court still should keep the Sealed Documents under seal because Defendant's and the fifteen former Twitter employees' interest in their secrecy outweighs the presumption in favor of public access. *See In re Avandia Mktg.*, 924 F.3d at 672.

The Sealed Documents are the "kind of information that courts will protect." *Id.* The Sealed Documents contain arbitration awards and related documents issued after confidential arbitrations. Courts have repeatedly recognized that the Federal Arbitration Act reflects Congress's determination that there is a strong interest in the confidentiality of arbitral proceedings where parties have agreed to keep them confidential. *See, e.g.*, *Stafford*, 76 F.4th at 86 (noting "the FAA's strong policy protecting the confidentiality of arbitral proceedings"). The

FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

Here, each of the claimants in the arbitrations whose awards the Press Coalition seeks to unseal voluntarily signed a DRA. Declaration of Walter Gilbert ("Gilbert Decl.") ¶ 2. The DRAs signed by the claimants contain the following provision:

> The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties.

*Id*. Defendant and the claimants—again, who are not parties to this lawsuit—participated in arbitration proceedings relying on the understanding that, absent legal requirements or the written consent of all parties, the "existence, content, or results" of their arbitrations would remain confidential. *See id.*

The Sealed Documents also contain highly private sensitive information regarding the fifteen former employees who filed those arbitrations. They contain, among other things, information related to:

- Salary information for each claimant, including yearly bonuses earned, healthcare received, promotions, pay raises, and pay cuts;
- Medical leave information, including reasons, compensation and status of leaves taken under the Family and Medical Leave Act;
- Employee performance evaluation information, including observations and assessments made by supervisors and managers; and

- Job searches, job offers, and job rejections, including offered compensation and the current employment and compensation of several of the claimants.

Courts protect the confidentiality of this sort of information. *See Peters v. Univ. of Pittsburgh*, C.A. No. 2:18-732-PJP, 2019 WL 109402, at *3 (W.D. Penn. Jan. 4, 2019) ("annual salary information satisfies the first element for sealing" because "[e]mployee compensation may constitute confidential business information"); *Barrett v. McDonald*, C.A. No. 14-742-LPS, 2015 WL 237165, at *1 (D. Del. 2015) (granting motion to seal affidavit containing "personal medical information"); *Hernandez v. Off. Of Comm'r of Baseball*, C.A. No. 18-9035-JPO, 2021 WL 1226499, at *12 (S.D.N.Y. Mar. 31, 2021) (granting motion to seal employment performance evaluations); *Ecolab, Inc. v. Ridley*, C.A. No. 22:50-TRM-SKL, 2023 WL 11762683, at *4 (E.D. Tenn. July 13, 2023) (sealing in redacted form documents containing salary offers).

In sum, the Sealed Documents are "the kind of information that courts will protect." *See In re Avandia Mktg.*, 924 F.3d at 672.

      b.    <u>Defendant Will Suffer Clearly Defined and Serious Injury if the Sealed Documents Are Unsealed</u>

Unsealing the Sealed Documents "will work a clearly defined and serious injury" to Defendant *See In re Avandia Marketing*, 924 F.3d at 672 (cleaned up) (internal citations omitted). Unsealing those documents will violate the agreed-upon confidentiality of the arbitrations that are the subject of the Sealed Documents, which both sides relied upon in conducting those arbitrations. *See* Motion to Strike at 10–15. Even worse, if the Sealed Documents are unsealed, Defendant and the other approximately 2,000 former Defendant employees represented by Plaintiffs' counsel who are still participating in ongoing arbitrations will have no confidence that their arbitrations will remain confidential. Gilbert Decl. ¶ 3. That would cause serious injury to Defendant, as it would fundamentally frustrate the core purpose of

the arbitration process—to resolve their disputes privately, as both Defendant and the former employees agreed to do. *Id*. ¶ 4. This risk is not hypothetical: If the Sealed Documents are unsealed, nothing will prevent Plaintiffs from continuing to file additional awards in this case, which the Press Coalition may seek to unseal. The Court should not permit Defendant to suffer a clearly defined and serious injury, particularly where the Sealed Documents are not "relevant to the performance of the judicial function [or] useful in the judicial process." *N. Jersey Media Grp. Inc*, 836 F.3d at 435.

Unsealing the Sealed Documents also would cause serious injury to the fifteen former X employees who participated in the subject arbitrations. As noted above, the Sealed Documents contain private, personal information about their compensation, job performance, medical information, and other sensitive topics. And there is no indication that the claimants consented to having their arbitration awards filed in this case. *See* Motion to Strike at 12. Like Defendant, the interests of the fifteen former Twitter employees in keeping their private information from being made public outweighs the Press Coalition's interest in accessing the Sealed Documents.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny the Press Coalition's Motion to Intervene and seal Plaintiffs' notices of supplemental authority (D.I. 98, 108, 111, 114, and 117) and their accompanying exhibits (D.I. 98-1 through 98-6, 108-1 through 108-7, 111-1 through 111-2, 114-1 through 114-2, and 117-1 through 117-8).

|  |  |
|---|---|
| | ASHBY & GEDDES, P.A. |
| | |
| | */s/ Brian A. Biggs* |
| | Catherine A. Gaul (#4310) |
| | Brian A. Biggs (#5591) |
| | 500 Delaware Ave. 8th Floor |
| | Wilmington, DE 19899 |
| | (302) 654-1888 |
| *Of Counsel*: | cgaul@ashbygeddes.com |
| | bbiggs@ashbygeddes.com |
| Kenneth M. Trujillo-Jamison | |
| (*pro hac vice* pending) | *Attorneys for Defendant* |
| WILLENKEN LLP | |
| 707 Wilshire Blvd., Suite 4100 | |
| Los Angeles, CA 90017 | |
| (213) 955-9240 | |
| ktrujillo-jamison@willenken.com | |

Dated: April 8, 2025