# EXHIBIT A

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE


CORNET, et al.,         )
                        )
      Plaintiffs,       )  C.A. No. 23-441-TMH
                        )
v.                      )
                        )
TWITTER, INC.,          )
                        )
      Defendant.        )



            Thursday, January 16, 2025
            12:06 p.m.
            Courtroom 6B



            844 King Street
            Wilmington, Delaware



BEFORE:  THE HONORABLE TODD M. HUGHES
      United States District Court Judge



APPEARANCES:


      KATE BUTLER LAW, LLC
      BY:  KATHERINE BUTLER, ESQ.

      -and-

      LICHTEN & LISS-RIORDAN, P.C.
      BY:  SHANNON LISS-RIORDAN, ESQ.
      BY:  BRADLEY MANEWITH, ESQ.

                      Counsel for the Plaintiff
```

```
 1   APPEARANCES CONTINUED:

 2
          MORGAN, LEWIS & BOCKIUS, LLP
 3        BY:  JODY BARILLARE, ESQ.
          BY:  T. CULLEN WALLACE, ESQ.
 4
                    Counsel for the Defendant
 5

 6
                 -----------------------------
 7

 8

12:06:38  9         COURT CLERK:  All rise.  Court is now in
12:06:44 10   session.  The Honorable Todd M. Hughes presiding.
12:06:49 11         THE COURT:  Good morning, everybody.  Please be
12:06:51 12   seated.
12:07:05 13         Okay.  Welcome, everybody.  I tend to do these
12:07:15 14   things like I do my appellate arguments just because that's
12:07:18 15   the way I do things.  So I won't put strict time limits on
12:07:23 16   you, but I plan for about 15 to 20 minutes per side.  If you
12:07:29 17   need longer, feel like we have to go over, I've read the
12:07:34 18   papers, I'm pretty familiar with what's going on, but we'll
12:07:39 19   get through it and I'll let you know when I don't need to
12:07:42 20   hear from you anymore.
12:07:44 21         Let's start with the movant.
12:07:51 22         MR. BARILLARE:  Good morning, Your Honor.  Jody
12:07:55 23   Barillare from Morgan Lewis on behalf defendant Twitter.
12:07:59 24   I'm today by my colleague, Cullen Wallace also from Morgan
12:08:01 25   Lewis.  And with Your Honor's permission, Mr. Wallace will
```

```
12:22:36   1                    MR. WALLACE:  Yes, sir.
12:22:37   2                    THE COURT:  So why don't we hear from them now
12:22:42   3      and have some time for rebuttal.
12:22:46   4                    MS. LISS-RIORDAN:  Good morning, Your Honor.
12:22:50   5      Shannon Liss-Riordan for plaintiffs.
12:22:51   6                    So just by way of a little bit of background,
12:22:54   7      which you may or may not know.  I don't know if this all
12:22:58   8      went into your pleadings before you.  Our law firm is
12:23:01   9      currently representing about 2,000 Twitter employees
12:23:04  10      individually in arbitration on these exact same claims.
12:23:07  11      And, in fact, the complaint here in the Cornet case is an
12:23:11  12      exhibit to the 2,000 arbitration demands we've filed.  So
12:23:15  13      it's the exact same claims.  We have, to date --
12:23:18  14                    THE COURT:  Are you representing plaintiffs in
12:23:22  15      any other district, actions in other districts I should know
12:23:26  16      about?
12:23:27  17                    MS. LISS-RIORDAN:  We're representing plaintiffs
12:23:28  18      in more than a dozen class actions around the country, most
12:23:32  19      in California.
12:23:33  20                    THE COURT:  Okay.
12:23:34  21                    MS. LISS-RIORDAN:  Including some cases in
12:23:35  22      California that raise the same claims as this case.
12:23:42  23                    THE COURT:  Okay.  And they're the same kind of
12:23:44  24      class allegations?
12:23:45  25                    MS. LISS-RIORDAN:  Yes.
```

```
12:35:24  1    before the acquisition in 2022.
12:35:26  2              THE COURT:  So you don't think the precedent
12:35:29  3    requires you to show that they actually turned down offers
12:35:32  4    from other employment?
12:35:33  5              MS. LISS-RIORDAN:  No.  As again, I know you
12:35:35  6    don't care about arbitrators, but some factfinders have
12:35:39  7    already found --
12:35:40  8              THE COURT:  I didn't say I didn't care about
12:35:42  9    them, I just understand that they have less weight with me
12:35:46 10    than decisions from other district courts and other even
12:35:50 11    state courts on these issues.
12:35:52 12              MS. LISS-RIORDAN:  Fully understood on the legal
12:35:54 13    issues.  My point is that they have seen full evidentiary
12:35:57 14    records and witnesses and testimony and exhibits, so they
12:36:00 15    have not looked at these matters on a motion to dismiss,
12:36:03 16    they've actually seen the evidence.
12:36:05 17              THE COURT:  Sure.  ==But you understand we're on a==
12:36:07 18    ==motion to dismiss, so I'm not going to use those arbitrator==
12:36:11 19    ==decisions to fill out a factual record that's not in the==
12:36:14 20    ==complaint.==
12:36:15 21              MS. LISS-RIORDAN:  Understood.  All I'm saying
12:36:17 22    is that based on the same complaint we filed in this case,
12:36:20 23    because when we stated the claims in those arbitrations, we
12:36:25 24    attached the complaint in this case as our factual
12:36:27 25    allegations and then discovery and ultimate hearings on the
```

```
12:36:32  1      merits led to rulings in our favor.  So all I'm saying is
12:36:36  2      that additionally bolsters that these are valid claims that
12:36:39  3      should go forward to discovery and building of an
12:36:43  4      evidentiary record and further pursued in this court.
12:36:46  5                THE COURT:  I'm going to ask you the same
12:36:48  6      question I asked to Twitter.  Are you aware -- and I know
12:36:51  7      we're still looking at the complaints, but are you aware of
12:36:54  8      any kind of factual distinction in these plaintiffs'
12:36:58  9      employment relationship with Twitter that would factually
12:37:02 10      distinguish them if we get to discovery and things like that
12:37:05 11      from the Arnold plaintiffs?
12:37:06 12                MS. LISS-RIORDAN:  No.  It's the same factual --
12:37:09 13      it's the same factual underpinning, just different ways that
12:37:14 14      the claims have been stated and argued.
12:37:16 15                THE COURT:  Okay.
12:37:17 16                MS. LISS-RIORDAN:  And again, the Arnold
12:37:18 17      plaintiffs argued essentially we win on the face of the
12:37:22 18      complaint and the merger agreement itself.  And we're not
12:37:25 19      saying that, we're just saying Twitter can't get judgment
12:37:29 20      now based on our allegations which state a claim and because
12:37:32 21      there are clear ambiguities and contradictions.  The case
12:37:36 22      law says that extrinsic evidence needs to be looked at when
12:37:42 23      there are such contradictions, so we're just simply asking
12:37:46 24      for the motion to be denied and allow us to go forward to
12:37:49 25      present the evidentiary record.
```

```
12:39:42   1                MR. WALLACE:  Your Honor, briefly?
12:39:43   2                THE COURT:  Yeah.
12:39:44   3                MR. WALLACE:  Just on the arbitration issue.
12:39:48   4    And I appreciate that Your Honor understands that there's a
12:39:52   5    bunch of stuff being talked about and it's within the four
12:39:55   6    corners of the document that controls and I just want to
12:39:56   7    emphasize that and that's what we cabined our arguments
12:39:59   8    around, that, irrespective of what's happened over two years
12:40:00   9    since everything was filed.
12:40:01  10                But as to plaintiffs' counsel's continual
12:40:06  11    incessant filing of these arbitration decisions, one,
12:40:09  12    they're not helpful, as Your Honor noted, for purposes of
12:40:12  13    the 12(b)(6) motion.  They're also improper because every
12:40:14  14    time they're being submitted, they're being submitted with
12:40:17  15    argument, which is in violation of the local rules.
12:40:19  16                THE COURT:  Have you moved to strike?
12:40:21  17                MR. WALLACE:  We filed a response.  We'll file
12:40:24  18    more responses, but we'll --
12:40:26  19                THE COURT:  I'll sort it out.  Honestly, they
12:40:29  20    have very little weight with me in terms of what I'm going
12:40:32  21    to decide in this case.  So I guess if you keep filing them,
12:40:37  22    you may force me to make a ruling on whether they're
12:40:40  23    permissible or not.  I don't find them useful.  So maybe you
12:40:44  24    should just stop filing them, but if you want to keep filing
12:40:48  25    them, then they can move to strike them and I'll make a
```

```
12:40:51  1   decision on that.
12:40:53  2            MR. WALLACE:  I appreciate that, Your Honor.
12:40:54  3   And one point I want to raise also, to have it on the
12:40:57  4   record, is plaintiffs' counsel just mentioned one of the
12:41:00  5   claimant's name in arbitration.  The arbitrations
12:41:04  6   are confidential.  I think that was inappropriate.  I'm
12:41:07  7   standing here to say I object, because I'm not waiving the
12:41:12  8   confidentiality of the arbitration proceedings.  And that's
12:41:14  9   another we have, obviously, the serial filing of these on a
12:41:16 10   public docket.
12:41:17 11            THE COURT:  Well, I think they're all being
12:41:20 12   filed under seal.
12:41:21 13            MR. WALLACE:  Do date, yes, Your Honor, but as
12:41:25 14   you just heard, the seal is being lifted in open court.
12:41:27 15            THE COURT:  Well, okay.  There's probably --
12:41:31 16            MR. WALLACE:  I understand.  I'm just making the
12:41:34 17   record.
12:41:34 18            THE COURT:  I don't need to deal with this back
12:41:38 19   and forth on these kind of --
12:41:39 20            MR. WALLACE.  Understood, Your Honor.
12:41:42 21            THE COURT:  What I want you to address is their
12:41:45 22   argument about the ambiguity of the merger agreement, about
12:41:48 23   those two clauses.  And I know Judge Burke looked at it and
12:41:52 24   found it not ambiguous, but there is some -- I wouldn't say
12:42:01 25   weight, but there is something to the argument that if you
```