IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS,<br><br>*Plaintiffs*,<br>v.<br><br>TWITTER, INC.,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 23-441-TMH<br>)<br>)<br>)<br>) |

**THE PRESS COALITION'S REPLY IN SUPPORT OF ITS MOTION TO
INTERVENE AND FOR UNSEALING OF JUDICIAL RECORDS**

The Opposition ("Opp.") filed by Twitter, Inc., D.I. 126, does not provide any legitimate grounds to continue to keep the documents at issue (the "Sealed Documents") under seal. Instead, Twitter seeks to rewrite the law, introducing various tests and considerations that are not part of Third Circuit law governing the common-law right of access to judicial records. Because the Sealed Documents constitute judicial records by virtue of having been filed on the docket in opposition to Twitter's pending motion to dismiss, and because Twitter cannot make the extraordinary showing necessary to overcome the presumption of public access that attaches to such records, the Press Coalition's Motion to Intervene and For Unsealing of Judicial Records ("Mot."), D.I. 119, should be granted.[1]

---

[1] The Press Coalition consists of American Broadcasting Companies, Inc. d/b/a ABC News; the Associated Press; Bloomberg L.P. d/b/a Bloomberg News; Cable News Network, Inc. ("CNN"); Dow Jones & Company, Inc., publisher of *The Wall Street Journal*; Forbes Media; Guardian News & Media Limited; Insider Inc. d/b/a *Business Insider*; National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBCUniversal News Group; The New York Times Company; *Wired*, published by Advance Magazine Publishers Inc.; and WP Company LLC d/b/a *The Washington Post*.

I.  **The Sealed Records' Status As Judicial Records Subject To The Common Law Right Of Access Does Not Depend On Whether The Court Ultimately Deems Them Relevant To Adjudicating Twitter's Motion To Dismiss.**

Twitter's central claim is that the Sealed Documents are not judicial records because, even though they were indisputably filed in connection with Plaintiffs' opposition to Twitter's motion to dismiss, they are not, in fact, relevant to adjudication of that motion. Opp. at 7-9. Even assuming that turns out to be correct as to the relevance of the materials—and, not having seen them, the Press Coalition cannot say one way or another—that is not the correct test for what constitutes a judicial record.

This was definitively laid out in *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir. 1993), which Twitter inexplicably characterizes as supporting its position. *See* Opp. at 7-8 (citing *Leucadia*). In *Leucadia*, the Court stated, without qualification, "there is a presumptive [common law] right of public access ***to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith***." 998 F.2d at 164 (emphasis added). And the Court made clear that this applies generally to "material submitted in connection" with nondiscovery motions, whether those motions are motions "for summary judgment," "for preliminary injunction[s]," or, as relevant here, "motion[s] to dismiss." *Id.* Thus, nothing more is required for the Sealed Documents to be judicial records than that they were filed in opposition to Twitter's motion to dismiss.

Twitter's contention that there is an additional step in the analysis—one that requires the court to determine whether it agrees with the filer's assertion that the document is relevant to adjudication of the motion at issue—rests on a misreading of *North Jersey Media Group, Inc. v. United States*, 836 F.3d 421 (3d Cir. 2016). *See* Opp. at 7-8 (discussing *N. Jersey Media Gr.*). The issue in that case was whether a letter that had been "emailed" to the court constituted a "bill of particulars"—in which case it would be a judicial record subject to the common law right of

2

access—or whether it constituted a "discovery disclosure in a criminal case," in which case it would not be. *N. Jersey Media Grp.*, 836 F.3d at 424-25, 434-36. In answering that question, the Court noted that, while generally, "[t]he act of filing . . . seems to be the most significant consideration" in determining whether a document is a judicial record, that is not true with respect to "discovery motions and their supporting documents," which are not considered judicial records even when "filed with the court." *Id*. at 434-35. The Court then held that, viewing the letter in the context of the role it actually played in the proceeding, it was "properly categorized as pretrial discovery," making it exempt from the common law right of access even on the assumption that its being emailed to the court was the equivalent of its being filed. *Id.* at 435-36.

Thus, *North Jersey Media Group* stands for the proposition that, in determining whether a document filed with the court is exempt from the common law right of access on the specific ground that it constitutes discovery material, a court should consider how the document will ultimately be used in the litigation. *See id.* at 436 ("The [l]etter was intended as an aid to the defense, not as an aid to the judge in rendering a decision or for some other judicial purpose."). It does not say that where, as here, a document is indisputably *not* discovery material, a court must nonetheless still analyze the role the document will end up playing in its decision-making to determine if it is a judicial record.

All of this was already explained by the Third Circuit in *Pennsylvania National Mutual Casualty Insurance Group v. New England Reinsurance Corp.*, 840 F. App'x 688 (3d Cir. 2020), which, likewise, involved sealed arbitration materials. It is worth quoting extensively from that case's analysis, as the Court rejected the precise argument Twitter makes here:

3

> Subject to several exceptions mentioned below, "the filing of a document gives rise to a presumptive right of public access," thus making the document a judicial record. . . .
>
> Penn National claims that a different test applies for determining when a document becomes a judicial record. Penn National points to *North Jersey Media Group, Inc.*, 836 F.3d 421 (3d Cir. 2016), where we quoted language from *Pansy* and stated, "[T]he issue of whether a document is a judicial record should turn on the use the court has made of it rather than on whether it has found its way into the clerk's file." *Id.* at 435 (alteration in original) (internal quotation marks omitted) (quoting *Pansy*, 23 F.3d at 783). Use of this language in *North Jersey Media* was dictum: the plaintiffs in that case sought discovery materials, a category of judicial filings that "are generally not 'judicial records' and do not fall within the common law right of access." *Id.*
>
> Furthermore, the quoted language from *Pansy* does not reference our test. That language references the test used by the First Circuit. Under this test, the common-law right of access depended on the "use" made of the document rather than whether the document "found its way into the clerk's file." *Pansy*, 23 F.3d at 783 (explaining test from *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)). We rejected this test. *See id.* Thus, if the document does make its way into the clerk's file, then the common-law right of access ordinarily attaches. . . .
>
> Penn National filed the arbitration award on the docket with the District Court as part of its motion to confirm the award. Thus, according to our precedents, the award became a judicial record subject to the common-law right of access.

*Id.* at 690-91 (citations omitted).

Thus, whether the Sealed Documents constitute judicial records does not depend on whether they end up influencing the Court's adjudication of Twitter's motion to dismiss. Indeed, as the Press Coalition noted in its opening motion, the arbitration materials ultimately unsealed in *Pennsylvania National Mutual* could *not* have influenced any judicial decision because the underlying proceeding was settled before any such decision was made. *See* Mot. at 9 n.4. That did not affect whether the materials constituted judicial records. Nor should it affect the analysis here.

Finally, none of this is changed by Twitter's eleventh-hour filing of a motion to strike. *See* D.I. 124. Twitter does not cite any authority even remotely suggesting that a party can

4

defeat an otherwise meritorious access motion by moving to strike the sealed materials. In addition, it is much too late to put the genie back in the bottle. Twitter consented to the initial sealed filing, *see* D.I. 100, and many of the Sealed Documents had been on the docket for literally *months* before Twitter moved to strike. The motion to strike has no bearing on the analysis under the common law right of access.

II. **Whether Unsealing Would Advance The Broad Purposes Of The Common Law Right Of Access Plays No Role In the Analysis.**

Twitter fares no better in asserting that "applying the presumption of access to those documents would not be appropriate here because doing so would run contrary to the fundamental purposes underlying the common-law right of access." Opp. at 9.

As an initial matter, the Press Coalition profoundly disagrees with the contention that unsealing here would not serve the purposes underlying the common law right of access. Even if the Court *does* ultimately determine that the sealed arbitration materials are not relevant to Twitter's motion to dismiss, the public can only evaluate the Court's determination to that effect if the materials are unsealed. Likewise, unsealing the materials will help the public understand Plaintiffs' strategy and thinking in this high-profile litigation. Thus, no matter how the Court rules, unsealing will help to "'cast' a "bright light" "upon the judicial process," and help "provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.* at 10 (quoting from *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019), and *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991), in identifying the purposes served by the common law right of access).

Regardless, nothing in Third Circuit case law makes the question of whether the presumption of access applies turn on a case-by case analysis of whether the purposes underlying

the common-law right would be served. On the contrary, the presumption of access categorically applies to *all* judicial records, which, as discussed above, are simply nondiscovery materials filed in court. *See supra* at 2-5; Mot. at 8-10. Twitter has added an extra step to the analysis that the Third Circuit does not require.

Finally, Twitter's many arguments impugning the motives of Plaintiffs' counsel, *see* Opp. at 2-3, 5, 10, are similarly irrelevant. The motion to unseal in this case was filed by the Press Coalition, not Plaintiffs' counsel. It is not clear what about her conduct could be relevant to the Press Coalition's assertion of its and the public's access rights. Regardless, the Third Circuit has stated in no uncertain terms that "a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access." *Avandia*, 924 F.3d at 677. That governs here.

### III. Twitter Cannot Overcome The Common Law Right Of Access.

Twitter is also incorrect in asserting that it can overcome the common-law presumption of access that applies to the Sealed Documents.

First, to the extent Twitter is claiming that arbitration materials, by their very nature, raise special confidentiality considerations capable of overcoming the presumption of public access, *see* Opp. at 11-12, that argument has already been decisively rejected by both the Third Circuit and courts in this District. *See* Mot. at 9-11 (discussing *Pennsylvania National Mutual*, 840 F. App'x at 689-91, and *In re Storag Etzel GmbH*, 2020 U.S. Dist. LEXIS 97953, at **19-25, 44-83 (D. Del. Mar. 25, 2020)). It is telling that the only case Twitter cites in support of its position that arbitration materials merit special solicitousness comes from a different circuit. *See* Opp. at 11 (citing a Second Circuit case). The Third Circuit has held differently.

Second, Twitter's invocation of the privacy interests of the former Twitter employees whose claims were the subject matter of the arbitrations also cannot justify sealing. At most,

such privacy interests could justify narrowly targeted redactions. Twitter does not propose any such redactions, and, instead, seeks the wholesale sealing of the material. That is improper. *See* Mot. at 11 (citing *Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, 2017 U.S. Dist. LEXIS 137678, at *7 (D. Del. Aug. 28, 2017) for proposition that the existence of *some* confidential information in a document cannot justify sealing it in its entirety). Twitter's attempt to use the purported privacy interests of its former employees to justify wholesale sealing speaks volumes about what interests it is seeking to protect.

Moreover, Twitter is not the proper party to be asserting the privacy interests of those former employees. They are represented in the arbitration proceedings by the same counsel representing Plaintiffs here, a fact Twitter repeatedly invokes in its Opposition as a purported reason to deny access. *See* Opp. at 3, 10. If those former employees wish to advocate in favor of continued sealing, they can do so through Plaintiffs' counsel. Yet, Plaintiffs' counsel did not oppose the Press Coalition's motion. Twitter should not be permitted to get what it wants— wholesale sealing—by invoking the interests of parties for whom it has no right to speak.

## CONCLUSION

As set forth above, and in the Press Coalition's opening motion, the Sealed Documents are judicial records, and the presumption of public access that attaches to such records cannot be overcome under the circumstances of this case. Accordingly, the Press Coalition respectfully requests that (1) it be permitted to intervene in this proceeding, and (2) the Court unseal and make publicly accessible the following docket entries: D.I. 98 (including attachments), D.I. 108 (including attachments), D.I. 106 (including attachments), D.I. 111 (including attachments), and D.I. 114-2.

Dated: April 11, 2025

| OF COUNSEL | BALLARD SPAHR LLP |
|---|---|
| Kaitlin Gurney* <br> Paul J. Safier* <br> BALLARD SPAHR LLP <br> 1735 Market Street, 51st Floor <br> Philadelphia, PA 19103-7599 <br> Tel:  (215) 665-8500 <br> gurneyk@ballardspahr.com <br> safierp@ballardspahr.com <br><br> * *admitted pro hac vice* | /s/ *Beth Moskow-Schnoll* <br> Beth Moskow-Schnoll (# 2900) <br> Ballard Spahr LLP <br> 919 N. Market Street, 11th Floor <br> Wilmington, DE 19801 <br> Tel: (302) 252-4447 <br> moskowb@ballardspahr.com <br><br> *Counsel for the Press Coalition* |